# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

NO. 26-1648 (L) & No. 26-1694
(1:25-CV-00075-JPJ-PMS)

COURTHOUSE NEWS SERVICE; LEE ENTERPRISES, INCORPORATED; LEE BHM, LLC, Publisher of the Richmond Times-Dispatch, The Roanoke Times, Bristol Herald Courier, Lynchburg News and Advance, Fredericksburg Freelance Star and The Daily Progress

    Plaintiffs - Appellees

v.

EDWARD JEWETT, in his official capacity as Clerk of the Circuit Court for the City of Richmond, Virginia; BRENDA HAMILTON, in her official capacity as Clerk of the Circuit Court for the City of Roanoke, Virginia; KELLY FLANNAGAN, in her official capacity as Clerk of the Circuit Court for the City of Bristol, Virginia

    Defendants - Appellants

and

KARL R. HADE, in his official capacity as Executive Secretary of the Office of Executive Secretary of the Supreme Court of Virginia

    Defendant - Appellant

_____

## APPELLEES' REPLY IN SUPPORT OF MOTION TO EXPEDITE
_____

DABNEY J. CARR, IV
LAUREN H. MILLER
TROUTMAN PEPPER LOCKE LLP
Post Office Box 1122
Richmond, Virginia 23218
(804) 697-1238

*Counsel for Appellees*

ROGER MYERS
RACHEL MATTO-BOEHM
BRYAN CAVE LEIGHTON PAISNER LLP
Three Embarcadero Center, 7th Floor
San Francisco, California 94111
(415) 675-3400

*Counsel for Appellees*

On June 9, 2026, former Virginia Tech Board of Visitors Rector John Rocovich filed a complaint in Montgomery County Circuit Court alleging that Gov. Abigail Spanberger unlawfully removed him from the board in May.

But because of the Dissemination Restriction at issue, Appellees CNS and Lee[1] and other media were unable to inform the public about the allegations in the lawsuit until June 11.[2] As one reporter posted to X on June 10, "Godspeed to the statehouse reporters trying to get a copy." x.com/gmoomaw. Another noted it would take 3½ hours to drive the 196 miles from Richmond to the Montgomery Courthouse to get the complaint:



A less-restrictive alternative to the Dissemination Restriction would have allowed reporters to call a subscriber to Virginia's Officer of the Court Remote

---

[1] Terms used in Appellees' Motion to Expedite also apply here for Plaintiffs-Appellees Courthouse News Service ("CNS"), Lee Enterprises, Incorporated, and Lee BHM LLC ("Lee"), Defendant Karl Hade ("Appellant Hade") and Defendants Edward Jewett, Brenda Hamilton and Kelly Flannagan ("Appellant Clerks").

[2] *See, e.g.,* E. Hunt, "Former Virginia Tech Rector John Rocovich sues Gov. Abigail Spanberger over removal," *Roanoke Times*, June 11, 2026; T. Englander, "Former VT Rector John Rocovich sues Spanberger," WRIC, June 11, 2026.

Access ("OCRA") to get information from the complaint or a copy – as long as the subscriber disclosed no Personally Identifiable Information ("PII") – so they could inform the public about the lawsuit days earlier. This illustrates the harm to First Amendment rights and the public interest from the delay adjudicating the validity of the Dissemination Restriction caused by Appellants' interlocutory appeal.

Contrary to Appellants' contentions, requiring reporters to travel 392 miles and 7 hours roundtrip to get a complaint from the court does not mitigate the harm to CNS' and Lee's newsgathering from delay adjudicating the Dissemination Restriction's prior restraint on OCRA subscribers' speech, which was the subject of ***virtually no discovery*** in CNS' first lawsuit that focused on the Access Restriction upheld in *Courthouse News Serv. v. Smith*, 126 F.4th 899 (4th Cir. 2025).

Neither the transcript of the May 5 hearing nor the June 2 district court order granting Appellant Clerks' motion to certify two other issues for interlocutory appeal preclude expediting this appeal with opening briefs due July 31. Despite Appellant Hade telling the court reporter the transcript was not needed until August 10, it will be available July 8. And this Court may decline to certify the Clerks' other issues for interlocutory appeal, as it did in *Fannin v. CSX Transp., Inc.*, 873 F.2d 1438, 1989 WL 42583 (4th Cir. 1989), because, *inter alia*, those issues are not "completely dispositive of the litigation." *Id.* *5. If they are certified, the Clerks can file a separate opening brief, after which the Court can consolidate the appeals.

**ARGUMENT**

Appellants argue that neither the First Amendment rights of CNS and Lee nor the public interest will be harmed by the delay from handling this appeal in the normal course, that they will be harmed by expediting it, and that "significant legal issues" in this case counsel against expedited review of this appeal. Clerks Resp. 8. As none of these dogs will hunt, the motion to expedite should be granted.

**A.     This Court has Expedited Review in Cases Challenging Restrictions on Speech About Pending Litigation Because They Impair News Gathering**

Appellants err in arguing against expediting this appeal because, they say, CNS' and Lee's "'right to gather news' is unimpaired" under this Court's ruling in *Smith*, Hade Resp. 1, 7-8, and thus this interlocutory appeal is no different than any other in that delay of discovery and deciding the merits – here, of the validity of the Dissemination Restriction – "is the normal outcome." Clerks Resp. 7.

That theory rests on an obvious misreading of *Smith*, which never addressed the Dissemination Restriction's restraint on OCRA subscribers because CNS' challenge to the Access Restriction – which bars all media from subscribing to OCRA – was denied. Here is the full passage that Hade only partially excerpts:

> The Dissemination Restriction does not impose any restraint on Courthouse News's speech, because it applies only to individuals with remote online access to court records. Courthouse News does not currently have such access, and we have determined it is not constitutionally entitled to receive that access.

*Smith*, 126 F.4th at 917. The majority did not address that Restriction's impact on

3

CNS' right to gather news from OCRA subscribers because CNS had not identified a subscriber "'willing to convey the information'" and thus lacked standing. *Id.*[3]

*Smith* was not the first time this Court has recognized restraints on sources can "interfere[] with [the media's] right to receive newsworthy information from willing speakers," a right "which derives from the First Amendment." *Overbey v. Mayor of Baltimore*, 930 F.3d 215, 227-29 (4th Cir. 2019); *In re Wall Street Journal*, 601 F. App'x 215, 218 (4th Cir. 2015). When those restraints interfere with the media's right to gather news from those with information about pending litigation, the "normal outcome" is not to delay deciding the restraints constitutionality. Clerks Resp. 7. Rather, this Court has "promptly ordered expedited review." *In re Murphy-Brown, LLC*, 907 F.3d 788, 793 (4th Cir. 2018); *accord Wall Street Journal*, 601 F. App'x at 217-18.[4]

As illustrated by the lawsuit against the Governor while this appeal was pending, and as CNS and Lee allege in detail, Comp., ¶¶ 11-12, 43, 77-85, the Dissemination Restriction impairs the media's ability to gather news from OCRA

---

[3] As before, citations to internal quotations are omitted unless otherwise noted, emphasis in **bold italics** are added and those in *italics* were in the original.

[4] The mandamus petition in *Murphy-Brown* arose from a gag order in an ongoing civil case, the one in *Wall Street Journal* from a gag and sealing order in a criminal case. In the latter, the media intervened in the district court, then petitioned to this Court. *Wall Street Journal*, 601 F. App'x at 217. In the former, the media did not have a chance to intervene, *see Murphy-Brown,* 907 F.3d at 792, so 11 media outlets joined the Reporters Committee for Freedom of the Press as amici.

subscribers about ongoing litigation in courts too remote for reporters to reach, at least on any sort of timely basis.  But the "'news' is not even 'news' if it is not timely," *Courthouse News Serv. v. Planet*, 947 F.3d 581, 594 (9th Cir. 2020), and "once documents have been filed in judicial proceedings, a presumption arises that the public has the right to know the information they contain." *Id.* at 592.  The "press and public thus have an important interest in reasonably contemporaneous access" to information in complaints, *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 328 (4th Cir. 2021), and other civil court records.  *Doe v. Pub. Citizen*, 749 F.3d 246, 272-73 (4th Cir. 2014).  "'To delay or postpone disclosure,'" *Planet*, 947 F.3d at 594 – or to "delay[] making a determination" on the validity of restrictions on disclosure, *Doe*, 749 F.3d at 272 – "undermines the benefit of public scrutiny and may have the same result as complete suppression.'"  *Planet*, 947 F.3d at 594.

The harm to CNS' and Lee's First Amendment right to gather news, and the public interest, is not mitigated by the discovery in CNS' first case or by Hade's threat that, if Appellants lose, clerks across the Commonwealth may stop making nonconfidential civil court pleadings available on OCRA.  Hade Resp. 2, 8-9, 11.

As Appellant Hade is well aware, the first case focused on CNS' challenge to the Access Restriction so it could subscribe to OCRA.  Not surprisingly, ***all*** the interrogatories to Hade and ***all but one*** request for production focused on the Access Restriction (and the one RFP for policies relating to the Dissemination

Restriction resulted in a citation to Va. Code ¶ 17.1-293 and five emails).[5]  In short,

discovery on the Dissemination Restriction itself and ways to protect PII that are

less-restrictive of speech than banning OCRA subscribers from providing the press

any information in nonconfidential court records on OCRA – as opposed to the

extent of any PII in those records – awaits conclusion of the interlocutory appeals.

Given the many less-restrictive means available to do so,[6] the statutory

requirement that parties redact the most sensitive PII before filing, Va. Code

§ 8.01-420.8, the tens of thousands of dollars clerks spent to use OCRA, and the at

least "$286,034.49 in lost revenue from OCRA fees" clerks will suffer if they stop

offering OCRA, https://rga.lis.virginia.gov/Published/2018/RD526/PDF at 8-11,[7] it

seems inconceivable the 112 courts now on OCRA would "choose to discontinue

OCRA access" if the current Dissemination Restriction falls.  Hade Resp. 11.

---

[5] Similarly, **no** interrogatories to the Clerk of the Prince William Court, and **none save one** of the requests for production, focused on the Dissemination Restriction (and that one yielded a citation to the statute and an application to subscribe). Copies of the discovery to Hade and the Clerk are attached as Exhs. A-B.

[6] For example, OCRA and the subscriber agreements could prevent subscribers from publicly disclosing any PII in any court record, or any court records that have any PII unless and until that information is redacted.  This less-restrictive alternative was not considered in the first case, where defendants justified the Access Restriction as necessary to prevent data mining of PII by subscribers that attorneys can be disciplined for attempting or allowing.  *Smith*, 126 F.3d at 913-15.

[7] This estimate was included in a 2018 report (based on the lower number of courts then on OCRA) to the legislature by a working group of clerks, directed by Hade's Office of the Executive Secretary ("OES") and including Appellant Jewett.

**B.      Appellants' Assertions of Harm from Expediting Equally Lack Merit**

Appellants' argument that the motion to expedite was premature, and expediting would prejudice them, because they do not have a transcript of the hearing below, Clerks Resp. 2; Hade Resp. 6-7, is now moot; the court reporter has confirmed the transcript will be available July 8 (Doc 96).  CNS and Lee made those arrangements after the court reporter told them, on July 2, that Hade's counsel had "just" informed her the transcript could wait until August 10.[8]

Appellant Hade also complains CNS and Lee waited until June 29 to seek expedited treatment of the Eleventh Amendment appeals noticed May 19 and 20 (Docs. 75, 78).  Hade Resp. 6.  But he neglects to note Appellants moved to stay the proceedings below May 29 (Doc. 82), and the Clerks moved to certify an interlocutory appeal June 4 (Doc. 87), both of which CNS and Lee needed to address in the district court before moving to expedite in this Court.[9]

---

[8]  Contrary to his assertion that he did not seek to expedite the transcript, Hade Resp. 7, Appellant Hade submitted a Transcript Order Form June 1 requesting a 14-day turnaround (Doc. 84).  On June 29, counsel for CNS and Lee emailed the court reporter inquiring about that order and requesting an expedited copy.  On July 2, the day Appellants filed their Responses objecting to expediting review because they would not have a transcript until August 10, CNS and Lee again emailed the court reporter, who reported back that "I just spoke with [Hade's counsel] and she said she's fine waiting until 8/10."  CNS and Lee then filed a Transcript Order Form requesting a 3-day turnaround (Doc. 93), and it will be ready by July 8.

[9]  Given Hade's June 1 request for a transcript within 14 days, CNS and Lee also expected to have the transcript the week of June 15.  When it did not arrive, they prepared the motion to expedite then emailed the court reporter June 29 to inquire.

Similarly, the district court's decision to grant the Clerks' motion to certify (Doc. 95) does not support denial of expedited treatment of this appeal. The Clerks have 10 days from July 2 to file a petition in this Court under 28 U.S.C. § 1292(b) to show denial of their motions to dismiss is among the "carefully 'limited group of orders'" that overcomes "'the congressional policy against piecemeal appeals.'" *Fannin*, 873 F.2d 1438, *2. That would leave nearly three weeks to brief sovereign immunity before the date CNS and Lee proposed for opening briefs, July 31. And Hade, who did not seek discretionary interlocutory review, would have a month.

Moreover, this Court can and does decline to certify appeals under § 1292(b) despite a district court's certification. *See, e.g., id.*; *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 340 (4th Cir. 2000). If it declines to certify here – or even if it does – there is no obvious reason why Appellants could not file opening briefs on the single sovereign immunity issue by July 31.

If the Clerks are allowed to pursue an interlocutory appeal on the non-dispositive issues they moved on below, the deadline for their opening brief can be separate from this appeal. The appeals can then be consolidated. This approach minimizes the "'harm through delay and additional expense if the[] order[ is] to be subjected to interlocutory review.'" *Clayton v. Warlick*, 232 F.2d 699, 705 (4th Cir. 1956); *Johnson v. Jones*, 515 U.S. 304, 309 (1995) ("interlocutory appeals can cause harm" by "threatening th[e] proceedings with delay" and "adding costs").

8

**C.     This Appeal Does Not Present Issues That Preclude Expedited Review**

Appellants' contention that the Court should deny the motion to expedite because "the constitutionality of a Virginia statute is on the line," Clerks Resp. 8, overlooks that determining whether the Dissemination Restriction violates the First Amendment is not on the line in this interlocutory appeal and cannot be addressed until this appeal ends.  It also overlooks that the only ruling at issue in here – denial of Appellants' motions to dismiss on Eleventh Amendment sovereign immunity grounds – should not detain this Court long both because it is consistent with the same result reached by another district court in *Courthouse News Serv. v. Hade*, 580 F. Supp. 3d 289 (E.D. Va. 2022) ("*Hade I*"), and by the Eighth Circuit in *Courthouse News Serv. v. Gilmer*, 48 F.4th 908, 912 (8th Cir. 2022), and because the Clerks enforce the Dissemination Restriction through the agreements they require OCRA subscribers to sign.  Comp., ¶¶ 58-60, Exhs. 3-5; *see* Motion 14-15.

Appellant Hade's attempt to portray himself as having no involvement with OCRA or enforcement of the Dissemination Restriction, Hade Resp. 4-5, 9-10, has carried no weight with two courts and should carry none with this Court, either.

That OCRA gives clerks "discretion" to deny access to OCRA "to ensure compliance with" the Dissemination Restriction, Va. Code § 17.1-293(H); Hade Resp. 4, hardly means Hade has not and cannot influence and even dictate how that discretion is exercised.  *See* MTD Order 8 (citing *Hade I*, 580 F. Supp. 3d at 294-

95). As in *Hade I*, the complaint "contains many factual allegations … contrary" to Hade's claim that he has "no special relation to the challenged statutes here" – i.e., the Access and Dissemination Restrictions – "and never acted or threatened to enforce them," 580 F. Supp. 3d at 294, including that Hade's OES "requires circuit court clerks include the Dissemination Restriction in OCRA subscription agreements." MTD Order 8; Comp., ¶ 60.[10] Even the limited discovery in the first case revealed OES provided clerks the "original version of OCRA's Terms and Conditions" for their subscriber agreements, Req. for Jud. Not, Exh. 4 at 2 (Doc. 50-4), which explains why the agreements incorporate a stricter version of OCRA's Dissemination Restriction in virtually identical language. Comp., Exhs. 3, ¶ 8(e), & 4-5, ¶ 6(e); *see id.*, Exh. 6 at 3 & 9 (clerk complaining OES controls OCRA).

The two issues Appellant Clerks seek to certify also offer no reason not to expedite this appeal to allow district court to address the constitutionality of the Dissemination Restriction as quickly as possible. Neither issue presents "a narrow question of pure law whose resolution will be completely dispositive of the litigation," nor the "'substantial ground for difference of opinion' with respect to the applicable legal principles" required for certification. *Fannin*, 873 F.2d 1438,

---

[10] As illustrated by this ruling and the allegations it cites from the complaint, neither the court below nor Appellees "sidestepped the issue of the enforcement of the Dissemination Restriction." Hade Resp. 5.

*2 & 5 (quoting 28 U.S.C. 1292(b)).[11]

### CONCLUSION

As it did in *Wall Street Journal*, the Court should "grant[] … [CNS' and

Lee's] Motion for Expedited Consideration … given the substantial First

Amendment issues at stake."  601 F. App'x at 217-18.

Dated: July 6, 2026

| | |
|---|---|
| BRYAN CAVE LEIGHTON PAISNER LLP | TROUTMAN PEPPER LOCKE LLP |
| By: */s/ Roger Myers* | By: */s/ Dabney J. Carr IV* |
| Roger Myers | Dabney J. Carr IV |
| Rachel Matteo-Boehm | Lauren H. Miller |
| 3 Embarcadero Center, 7th Floor | P.O. Box 1122 |
| San Francisco, California 94111 | Richmond, Virginia 23218 |
| Tel: (415) 675-3400 | Tel: (804) 697-1238 |
| roger.myers@bclplaw.com | dabney.carr@troutman.com |
| rachel.matteo-boehm@bclplaw.com | lauren.h.miller@troutman.com |

*Counsel for Plaintiffs-Appellants Courthouse News Service,*
*Lee Enterprises, Incorporated, and Lee BHM LLC*

---

[11] The ruling on the motions to dismiss applied the governing legal principles to the facts alleged.  MTD Order 11-12 ("'[A] person qualifies as a willing speaker if she would be willing to provide information on a matter of public significance to the news media but chooses not to because she does not want to violate a settlement agreement with the government.'") (quoting *Overbey*, 930 F.3d at 228), 14-15 ("Prior restraints are 'administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur.'") (quoting *Alexander v. United States*, 509 U.S. 544, 550 (1993)).

As *Hade I* and *Smith* show, reversal on either ruling would not be dispositive.  Any dismissal for lack of standing would be "without prejudice" to CNS and Lee identifying another willing speaker.  *Smith*, 126 F.3d at 917.  And if the Dissemination Restriction was held not to constitute a prior restraint, that only impacts the standard of scrutiny to be applied.  *Hade I*, 580 F. Supp. 3d at 295-96.