**Nos. 26-1648(L), 26-1694 & 26-2043**

# United States Court of Appeals
# for the Fourth Circuit

COURTHOUSE NEWS SERVICE; LEE ENTERPRISES, INCORPORATED; LEE BHM, LLC, Publisher of the Richmond Times-Dispatch, The Roanoke Times, Bristol Herald Courier, Lynchburg News and Advance, Fredericksburg Freelance Star and The Daily Progress,

*Plaintiffs-Appellees,*

– v. –

EDWARD JEWETT, in his official capacity as Clerk of the Circuit Court for the City of Richmond, Virginia; BRENDA HAMILTON, in her official capacity as Clerk of the Circuit Court for the City of Roanoke, Virginia; KELLY FLANNAGAN, in her official capacity as Clerk of the Circuit Court for the City of Bristol, Virginia KARL R. HADE, in his official capacity as Executive Secretary of the Office of Executive Secretary of the Supreme Court of Virginia,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA AT ABINGDON

## JOINT APPENDIX
## VOLUME III OF III (Pages 548 – 744)

Peter Askin
John P. O'Herron
William Daniel Prince IV
THOMPSON MCMULLAN P.C.
100 Shockoe Slip, 3rd Floor
Richmond, Virginia 23219
(804) 649-7545

*Counsel for Appellants Edward Jewett, Brenda Hamilton and Kelly Flannagan*

John Gilbody
*Assistant Attorney General*
Erin R. McNeill
*Senior Assistant Attorney General*
OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA
202 North 9th Street
Richmond, Virginia 23219
(804) 786-4319

*Counsel for Appellant Karl R. Hade*

Dabney J. Carr, IV
Lauren Miller
TROUTMAN PEPPER LOCKE LLP
P.O. Box 1122
Richmond, Virginia 23218
(804) 697-1238

Rachel E. Matteo-Boehm
Roger Myers
BRYAN CAVE LEIGHTON PAISNER, LLP
Three Embarcadero Center, 7th Floor
San Francisco, California 94111
(415) 675-3400

*Counsel for Appellees*

COUNSEL PRESS
A Proceed Service
The Appellate Experts®
(800) 4-APPEAL • [816633]

# TABLE OF CONTENTS

## VOLUME I OF III


Order of the Honorable James P. Jones
Re: Denying Defendants' Motions to Dismiss and Denying Plaintiffs' Motion for Leave to Amend Complaint and Request for Judicial Notice
filed May 5, 2026 .......... JA1


## VOLUME II OF III


District Court Docket Sheet .......... JA17

Complaint
filed December 9, 2025 .......... JA28

Exhibit 1: Order Dismissing Claim without Prejudice .......... JA60

Exhibit 2: Joint Stipulations of Fact .......... JA62

Exhibit 3: Application for Remote Access to Richmond CC OCRA .......... JA78

Exhibit 4: Application for Remote Access to Roanoke CC OCRA .......... JA84

Exhibit 5: Application for Remote Access to Bristol CC OCRA .......... JA92

Exhibit 6: Report – Access to Public Records in VA Courts .......... JA100

Defendant Hade's Motion to Dismiss Pursuant to Rule 12(b)(1)
filed February 5, 2026 .......... JA112

Defendant Hade's Motion to Dismiss Pursuant to Rule 12(b)(6)
filed February 5, 2026 .......... JA114

Defendant Hade's Memorandum of Law in Support of Rule 12(b)(1) and 12(b)(6) Motion to Dismiss
filed February 5, 2026 .......... JA116

Clerk Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1)
filed February 5, 2026 .......... JA143

Clerk Defendants' Memorandum in Support of Motion to Dismiss Pursuant to Rule 12(b)(1)
filed February 5, 2026 .................................................................. JA146

Clerk Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6)
filed February 5, 2026 .................................................................. JA175

Clerk Defendants' Memorandum in Support of Motion to Dismiss Pursuant to Rule 12(b)(6)
filed February 5, 2026 .................................................................. JA178

Plaintiffs' Omnibus Opposition to Defendants' Motions to Dismiss
filed March 5, 2026........................................................................ JA195

Exhibit 1: Declaration of Steve Poulos ............................................... JA253

Plaintiffs' Motion for Leave to Amend
filed March 5, 2026........................................................................ JA256

Exhibit 1: Email Correspondence.......................................................... JA261

Exhibit 2: Email Correspondence.......................................................... JA267

Exhibit 3: Email Correspondence.......................................................... JA284

Exhibit 4: Email Correspondence.......................................................... JA295

Plaintiffs' Request for Judicial Notice in Support of Plaintiffs' Omnibus Opposition to Defendants' Motions to Dismiss
filed March 5, 2026........................................................................ JA304

Exhibit 1: OCRA Login Website............................................................ JA311

Exhibit 2: Declaration of Jonathan E. Ginsberg.................................... JA313

Exhibit 3: Memorandum Opinion of the Supreme Court of Virginia ... JA324

Exhibit 4: Email Correspondence.......................................................... JA353

Defendant Hade's Reply in Support of Rule 12(b)(1) and 12(b)(6)
Motion to Dismiss
filed March 19, 2026 .................................................................. JA359

Defendant Hade's Reply in Support of Rule 12(b)(1) and 12(b)(6)
Motion to Dismiss
filed March 19, 2026 .................................................................. JA374

Exhibit 1: SCC Records for Lee Enterprises LLC ................................ JA389

Exhibit 2: SCC Records for Lee BHM Corp ....................................... JA394

Exhibit 3: *Conlon v. Baber* Pleading .................................................. JA406

Exhibit 4: Criminal Docket for *USA v. Ruiz* ........................................ JA410

Exhibit 5: Emergency Petition filed in *In re: Public Access to November Transfer Hearing* ................................................................ JA420

Exhibit 6: *Brubaker v. Epps* pleading .................................................. JA479

Clerk Defendants' Reply in Support of Motion to Dismiss
Pursuant to Rule 12(b)(1)
filed March 19, 2026 .................................................................. JA485

Clerk Defendants' Reply in Support of Motion to Dismiss
Pursuant to Rule 12(b)(6)
filed March 19, 2026 .................................................................. JA498

Plaintiffs' Sur-Reply
filed March 31, 2026 .................................................................. JA511

**VOLUME III OF III**

Transcript of Motions Hearing before
The Honorable James P. Jones
on April 10, 2026 ...................................................................... JA548

Defendant Hade's Notice of Appeal
filed May 19, 2026 ...................................................................... JA625

Clerk Defendants' Motion to Certify Order for Interlocutory Appeal
filed June 4, 2026 .......... JA627

Clerk Defendants' Memorandum in Support of Motion to Certify Order for Interlocutory Appeal
filed June 4, 2026 .......... JA631

Plaintiffs' Opposition to Defendants' Motions to Certify and Stay
filed June 12, 2026 .......... JA646

Clerk Defendants' Reply in Support of Motion to Certify Order for Interlocutory Appeal and Motion to Stay
filed June 4, 2026 .......... JA669

Order of the Honorable James P. Jones
Re: Granting Defendants' Motion to Stay and Motion to Certify Appeal
filed July 2, 2026 .......... JA682

Clerk Defendants' Petition for Permission to Appeal Pursuant to 28 U.S.C. § 1292(b)
filed July 13, 2026 .......... JA694

Order of the U.S. Court of Appeals for the Fourth Circuit
Re: Granting Clerk Defendants' Petition for Permission to Appeal Pursuant to 28 U.S.C. § 1292(b)
filed August 4, 2026 .......... JA696

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

- - - - - - - - - - - - - - - - - -

| | |
|---|---|
| COURTHOUSE NEWS SERVICE, et al,<br><br>Plaintiffs,<br><br>v.<br><br>KARL R. HADE, et al<br><br>Defendants. | CIVIL ACTION NO. 1:25cv75 |

- - - - - - - - - - - - - - - - - -

TRANSCRIPT OF PROCEEDINGS

(MOTIONS HEARING)

Abingdon, Virginia

April 10, 2026

BEFORE: THE HONORABLE JAMES P. JONES
Senior United States District Judge

APPEARANCES:

COUNSEL FOR THE PLAINTIFFS:

BRYAN CAVE LEIGHTON PAISNER, LLP
By: Roger Myers
3 Embarcadero Center, 7th Floor
San Francisco, CA 94111

TROUTMAN PEPPER LOCKE, LLP
By: Dabney Jefferson Carr, IV
P.O. Box 1122
Richmond, VA 23218

APPEARANCES CONT.

COUNSEL FOR THE DEFENDANTS:

OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA
By: Erin Rose McNeill
John David Gilbody
202 North Ninth Street
Richmond, VA 23219

THOMPSON MCMULLAN, P.C.
By: Peter Scott Askin
William Daniel Prince, IV
100 Shockoe Slip, Third Floor
Richmond, VA 23219

(Proceedings commenced at 9:59 a.m.)

THE COURT: We're ready to go, as far as I know, in our case today involving -- the full style is Courthouse News Service, et al v -- is it Ha-dee or Hade?

MS. MCNEILL: Hade.

THE COURT: Hade. Sorry. Versus Hade, et al. It's 1:25cv75.

Initially, I want to apologize to counsel for the abrupt change in our method of presenting argument. I've come down with a bad spring cold, and I didn't want to go to the courthouse to help me but also not infect my staff. I appreciate counsel's indulgence in this method. I'm alert. I've got cough drops nearby and liquid, so I'm ready to go.

Has counsel discussed or do they have individual views on how they wish to present argument today?

MR. CARR: Your Honor, this is Dabney Carr from Troutman Pepper representing the plaintiffs, and also for the plaintiffs we have Roger Myers from Bryan Cave who will be doing most of the argument on our behalf.

We have not discussed how to take the motions today, but I think on our side we've been assuming that you would hear the Motions to Dismiss first, and then to the extent you wanted to hear argument on the two motions we filed, the Motion for Leave to Amend and a Request for Judicial Notice, we would take those up after the Motions to Dismiss.

THE COURT: All right. Let me hear from counsel on the other side. I guess we have Mr. Askin. Are you present there?

MR. ASKIN: Yes, Your Honor. Peter Askin on behalf of the clerk defendants. We have spoken with Ms. McNeill of the Attorney General's office who represents Mr. Hade and agreed that she would go first and that I would follow.

THE COURT: Ms. McNeill, is that okay with you?

MS. MCNEILL: Yes, Your Honor. We do agree that we thought the Motions to Dismiss would be appropriate to be heard first because they really set the table for the context on the Motion to Amend and the Motion for Judicial Notice.

THE COURT: And you're to go first on that issue?

MS. MCNEILL: Yes, Your Honor.

THE COURT: And Mr. Myers, is that all agreeable to you?

MR. MYERS: Yes, that's fine, Your Honor.

THE COURT: All right. Ms. McNeill, if you're ready, we'll hear argument on the Motions to Dismiss. Why don't I go in this manner: We'll hear from Ms. McNeill and then from plaintiffs' counsel. I assume that will be Mr. Myers. Then Mr. Askin and then Mr. Myers again. Then we'll allow brief rebuttal from the defendants in the same order. Then we'll take up the other two plaintiffs' motions.

So, Ms. McNeill, if you'll begin.

MS. MCNEILL: Thank you, Your Honor. Erin McNeill representing Karl Hade in this matter. As we said in our brief, we believe this case is not about free speech but profitable speech.

Virginia statutory scheme relies on practical obscurity to make it unprofitable to harvest litigants' personal information from court records. This stops all kinds of credit card fraud, identity theft, and other kinds of privacy violations and criminal use of the information, but it does impact the bottom line of news publishers who make a profit from disseminating information in a very legal and legitimate way. The First Amendment does permit Virginia to --

THE COURT: Ms. McNeill, if I can interrupt. I guess I'm bound by the Fourth Circuit's opinion on those basic issues, aren't I?

MS. MCNEILL: Absolutely, Your Honor. We do think Smith is dispositive in this case. Where Smith held that CNS does not have a right to standing to litigate the dissemination restriction to vindicate its own rights because it simply doesn't have any rights to vindicate with regard to that dissemination restriction, at best they could assert some kind of derivative standing as a potential listener or consumer of speech.

That is why they brought this case back alleging

some additional facts that weren't present in the first iteration of this litigation that happened in the Eastern District that got up to the Fourth. And the additions here that are material are those additional allegations regarding lawyer Davis Lacy, who has OCRA access in several jurisdictions, including the jurisdictions of the three clerks here, Richmond, Roanoke, and the City of Bristol.

They've alleged that when called by reporters, Mr. Lacy has refused to download and e-mail complaints from OCRA. He's also refused to provide verbal or e-mailed summaries of what he's read from complaints on OCRA. He says that he could but for the dissemination restrictions and the OCRA user agreements.

That's their attempt to cure the standing problem that was identified in the Fourth Circuit, but we don't think that those allegations are sufficient to cure that standing problem because Hade is not a speaker under those allegations.

In order to be a speaker, you have to either publish original content or exercise some degree of editorial control over what is published. They haven't alleged that he curates, edits, or selects what complaints would be sent. He's not publishing a blog post or an e-mail newsletter. He's not acting as a freelancer for their reporting services.

They're calling him up and asking him to send a

specific pleading, and that's just transmitting a PDF file. He's not exercising any kind of editorial control or speech element over the content that he's sending out. Therefore, he's not acting as a speaker in this case.

THE COURT: Let me interrupt you again. Is it agreed or understood that he's not providing this or wouldn't provide this except on request of Courthouse?

MS. MCNEILL: Correct. That's their allegation.

THE COURT: Well, if he's their lawyer, you mean he can't see a case and think that his intelligent client would understand the case better? He says, Dear client, here is a really interesting case that may pertain to be your business. Here it is. Please read it and we can talk later. That's okay? That's prohibited? What's the situation?

MS. MCNEILL: That's not the allegations in this case. That would make him a speaker if he did that kind of curating that could be in a marketing e-mail, for example, but that's not what they've alleged. They've alleged --

THE COURT: But would that be all right under the statute?

MS. MCNEILL: Under the statute he should not do that, but it's in the discretion of the clerks how they would handle something like that. Under the clerks' discretion, they could revoke his access for doing something like that, attaching a pleading and e-mailing it out as part of a

marketing effort to his newspaper clients, but it would be up to them how they felt about that behavior.

THE COURT: Well, it's not just marketing. I mean, I practiced law for 25 years, and I would be on the lookout for matters that were of interest to my clients because they had a similar case or they had a business practice that may be affected by this case and I want them to know about it. So it's part of my legal services to my client to keep them informed of a business perhaps, let's assume that.

You're saying that the clerk could in fact withdraw the lawyer's or my ability to do that, to obtain any online copies, right?

MS. MCNEILL: They could under the plain language of the statute. The pleadings on OCRA are digital files that are uniquely vulnerable to data exploitation; therefore, you either have to redact the seven categories of information that are listed in the statute under B, 17.01-293(B). You have to redact those -- I'm sorry, six types of information if you're going to make the pleading publicly accessible over the internet, or you have to get it directly from the courthouse.

When you get it from a courthouse, you either view it on the public access terminal on the screen, or you would get a paper copy that then you could scan in if you wanted a PDF to mail out, which is allowed.

So it's not about restricting the dissemination of the information. You could read a pleading on OCRA that you thought was important to your client and say, Hey, there has been a new case involving Courthouse News Services filed out in Abingdon. I think it raises some important issues about your business model. Give me a call, and we can discuss it. But you shouldn't attach the complaint.

What this is specifically addressing is that you shouldn't disseminate the data files themselves because the electronic files are more vulnerable to data exploitation.

If you are an OCRA user, as Judge Hudson noted, it is simply common sense that -- common sense and logic support the notion that if any individual with electronic access to all nonconfidential court records could freely sell posts or redistribute such data to third parties, it could jeopardize citizens' privacy and security as well as the orderly and efficient administration of its justice system.

THE COURT: What if it was permitted for certified lawyers to do that?

MS. MCNEILL: I'm sorry?

THE COURT: Why can't lawyers do that, though?

MS. MCNEILL: Because the exception would swallow the rule. If a lawyer who got access because of their credentials as a licensed Virginia lawyer could send out pleadings to an entity like CNS that has a case portal, CNS

can then put the pleading on their case portal where anybody can access it, any of their subscribers.

So once you open that door, the clerks no longer have control over those data PDF files that can be exploited by bots and that make the information vulnerable to these nefarious uses that supported the decision in Smith.

When you look at Smith, the access restriction was upheld as supporting a substantial state interest. There was no dispute there that this is a substantial state interest in protecting litigants' information while promoting the efficient administration of justice but that --

THE COURT: I don't know to what extent I'm bound from thinking of things like this by the Smith case, but, you know, if I was on the state Senate Judiciary Committee, or Courts of Justice Committee as it's called, as I was years and years ago, I would say, well, let's say that a lawyer consented to a copy of a pleading in the course of the lawyer's practice, and only in the course of the lawyer's practice, provided that the lawyer ensures that there will be no further dissemination, wouldn't that be better?

MS. MCNEILL: That would be a public policy question you'd have to take up with the General Assembly. I do think that's an appropriate question for the General Assembly.

As you know, here on the court side of the system, we have to apply the law as written and the public policy as

the General Assembly has written it. They did create an exception for lawyers to share it with their clients when their clients are parties to the litigation, but they did not create an exception for lawyers to share it with their clients unless they are parties. So if the General Assembly --

THE COURT: Wait. I'm sorry to bombard you but has there -- I'm not privy to what's going on in the General Assembly, and I would just be interested.

Has there been any effort to amend the statute to correct or, you know, to adopt my suggestion or to change it in any way that would make this case moot? You know, if there has been, it doesn't necessarily affect this case, but I would just be interested in that.

MS. MCNEILL: I haven't heard any suggestion that they've considered that, but I don't know that anybody has floated the idea to them. Someone can certainly advocate for that and contact their representative and make that suggestion and get the law changed, but as far as I know, there are no efforts underway at this time.

There are always discussions about finding the tension between public access to court records over the internet and the safety and security of litigants' personal information given the prevalence of bots.

And now we have AI, which makes processing huge

amounts of information even easier. So it's even easier to take huge databases of records and synthesize them and repackage them and use that information in a new way. You hear more and more about how people are looking to get these large databases of records, put them in AI, and then generate novel court pleadings for pro se litigants and things like that.

So there is a growing tension between how much we want to make information accessible but also secure and prevent it from being misused or create that into an AI that would then lead people to generate these court pleadings that have ghost citations to cases that don't exist. So there is that growing tension between those two interests. That is at the heart of this case.

THE COURT: All right. Go ahead. I'll let you go without interrupting you anymore for at least a while.

MS. MCNEILL: Oh, I welcome the interruptions, Your Honor. There is a lot of material here in this case. There are a lot of things to think about, and I would love to concentrate on the places that you're interested in or that you have questions. I was one of the counsel that was in the trenches on the first Hade case, so I am particularly well positioned on this one.

I do want to make sure that we hit on the point that Hade has sovereign immunity here, and he's probably not a

proper party. Under Will v. Michigan Department of State Police, of course state employees or state officials can't be named typically in a 1983 action simply because they're representatives of the state. They can only be named if they actually are alleged to have done something that infringed on the plaintiff's constitutional or civil rights.

THE COURT: Well, who would be the proper governmental employee?

MS. MCNEILL: We do think -- and I don't want to step on Mr. Askin's toes here. I'm sure he has plenty to say. But we do think if you want a prospective injunctive relief, you have to name the clerk to get it.

We think that they named Hade in an effort to get a statewide injunctive relief, but that's simply not possible under Virginia law because each clerk is an independently elected constitutional officer with authority to control the records of the circuit court of that jurisdiction. There is simply no way to get a statewide injunction because, of course, you can't name the Commonwealth in a federal lawsuit either.

But I will say, Your Honor, in the previous case in Smith, once Hade was dismissed as a party, the Commonwealth did intervene to defend the constitutionality of the statutes. We are passionate about this one. We think that the efficient administration of court justice is supported by

having OCRA access for attorneys, but we are also very concerned about information privacy and security for our litigants, so those databases should not be open to the general public and not available for resell by information brokers like the case portal system.

So these are important state interests that we're committed to litigating, and that's why if Hade were dismissed, the Commonwealth would intervene to defend the constitutionality of the statute. But under the law, we do not have statutory authority to intervene as long as there is a state officer as a defendant. We just don't.

THE COURT: That reminds me of another question I had. I believe that there is a federal statute that requires constitutionality of state statutes notice be given to the Attorney General. Has that been done in this case, or is it moot because you're here with us?

MS. MCNEILL: Because Hade was listed as a party, we got notice that way.

THE COURT: All right. There is no procedural problem there?

MS. MCNEILL: We don't believe so. Or if so, we're willing to waive it because we do have notice through Hade.

THE COURT: All right. Go ahead.

MS. MCNEILL: But that is exactly the purpose of that statute. It would allow us to intervene to defend the

constitutionality of the statute if there were not a state officer defendant. In this case, however, Hade doesn't have any enforcement authority, and this is a particularly important point in this case because we're looking only at the dissemination restriction.

In the previous litigation between CNS and Hade, the access restriction and the dissemination restriction were at issue, and there were some questions about OES's role in providing access because they provide that infrastructure for the OCRA systems. So there was some question about the logins and, you know, just the logistics of it that let it get past the Motion to Dismiss stage.

But on the dissemination restriction it is black and white law. It's in the statute. Subsection 8 says that only the clerk in his discretion can deny secure remote access to ensure compliance. No other entity is named in 8 with any enforcement authority.

And in this case the plaintiffs incorporated stipulations of facts that the parties crafted after discovery and immediately prior to making their cross Motions for Summary Judgment, and they attached that to the compliant in this case. So we're positioned in this post-discovery world where the parties have done discovery on how this all works and how these state agencies interact and what OES's role is.

There is another state agency, the Virginia Information Technology Agency, VITA, that's involved, and those were in those stipulations of facts. I think it's Exhibit B to the complaint, if I'm not mistaken.

Those facts make it very clear that Hade has no -- Hade or OES have no authority to revoke access that the clerk has granted. They don't review applications. They simply provide the infrastructure by which the clerks can implement their decisions made pursuant to their statutory authority to control these records.

So for that reason, Hade doesn't have that special relationship to the statute or enforcement authority that's necessary to invoke the Ex parte Young exception.

THE COURT: Well, if I dismissed your client, Hade, would the Commonwealth then move to intervene?

MS. MCNEILL: Yes, we would.

THE COURT: Okay. So is that really a problem? I mean, we'll see what the other side says about that.

MS. MCNEILL: Probably -- I understand it's not really a problem from our perspective, but I feel that Mr. Hade would sleep better at night if it were the Commonwealth on the line instead of his personal name.

I would still be in the case. The Attorney General would still be the attorneys. We would still defend the constitutionality of the case. I think CNS and Lee

Enterprises would get what they wanted in terms of it would have a statewide effect. But just as a matter a logistics, it would get Mr. Hade out of the case, and he wouldn't be personally involved. So it matters to Mr. Hade, even if perhaps on paper to us attorneys it feels very much the same.

THE COURT: Well, nobody likes to be sued, even if they're a government employee.

MS. MCNEILL: That's correct.

THE COURT: All right. We need to move along. I'm sorry that I keep interrupting you. Go ahead.

MS. MCNEILL: So my next point is that, as I said, we don't think that they've alleged that Lacy is a speaker, but even if he were a speaker, his rights would not have been violated by the statute because the dissemination restriction is constitutional.

They have pleaded it as a prior restraint on free speech. For the same reasons, we don't think this is a prior restraint on speech. This is a regulation of conduct that has only an incidental impact on speech.

For that we cited 360 Virtual Drone Services v. Ritter, a Fourth Circuit case decided in 2024. They did an analysis of when a regulation is aimed at conduct or if it's really aimed at regulating speech as speech. They said the test there is whether the speech carries some sort of economic, legal, public safety, or health-related

consequences, whether the speech takes place in a traditionally public space, and whether the regulation seeks to quell unpopular or dissenting speech.

In this case, the data files at issue do carry economic, legal, and public safety consequences because they are legal documents. They're necessary for the efficient administration of the court system, but if we don't provide adequate protections of the information therein from bots and data mining and AI, there are going to be economic and public safety implications if this information isn't carefully safeguarded. So it passes that test.

That speech takes place in -- it isn't a traditionally public space. It's the internet, so it's not a traditional space at all, but the courthouse is a traditionally public space. It is available at the courthouse, so the traditional public space is not affected by this statute, only this new space of the internet, although the internet is relatively public, but it has a lot of private controls on it or private actors in that space.

Then the regulation, does it seek to quell unpopular or dissenting speech? The answer there is no because this is a content-neutral regulation. It is looking at the data files themselves, the movement of the actual PDFs that are downloaded off of OCRA.

The very same content is available at the courthouse

in traditional format of paper or viewed on a screen where you can take notes. The only thing being regulated here is the movement of actual data files and not the contents of those files. It's the medium, not the method.

So there is no way this regulation would quell unpopular dissenting speech because we are not regulating the content at all or restricting the dissemination of information about court files, just the files themselves. So in this case we think that clearly passes the Ritter test making this a regulation of conduct with an incidental impact on speech.

Therefore, you would apply a relaxed intermediate scrutiny, which is the same level of scrutiny applied in Smith by the Fourth Circuit to that access restriction, and it is even a lower standard than what was applied by Hudson in his decision on the cross-Motions for Summary Judgment, and that is it's a content-neutral time, place, and manner regulation.

It is narrowly tailored because it only restricts the sharing of these unredacted files that are downloaded off OCRA. It doesn't restrict files that were properly redacted pursuant to Subsection B, and I think Alexandria is a jurisdiction that has that kind of scheme in place where they have redacted files that are publicly available. And it doesn't restrict any information actually obtained at the

courthouse, which has been how we've done things since the First Amendment was written. So it is narrowly tailored.

The Smith court found that the Commonwealth's evidence shows it has actually tried or considered less restrictive alternatives and found them inadequate to serve its interests in the Smith case. So the regulation is narrowly tailored here.

And, again, as Hudson found, under common sense and logic, you have to close that loophole. Otherwise, as CNS said in its pleading, it would simply hire a Virginia licensed attorney to download pleadings for it. It would make a Virginia licensed attorney one of its reporters so that it could subscribe to OCRA and download any pleading that it wanted.

So if you didn't close that loophole, you would be able to hire attorneys to do by proxy what you can't do directly, and it would create an exception that swallows the access rule, which is a constitutional restriction on time, place, and manner. Therefore, following that Smith opinion, this is a constitutional dissemination restriction.

I'll reserve the rest of my comments for rebuttal, Your Honor.

THE COURT: All right. Let's see. We're going to hear Mr. Askin also now.

MR. MYER: Your Honor, I think you suggested that

perhaps I should address Ms. McNeill before Mr. Askins takes the podium. There was a lot here to address, so it might be good to take it piecemeal.

THE COURT: Very good. My cold made me forget what I ruled.

MR. MYERS: Completely understandable, Your Honor.

THE COURT: Go ahead, Mr. Myers.

MR. MYERS: Thank you, Your Honor. Roger Myers from Bryan Cave Leighton Paisner on behalf of the plaintiffs, Lee Enterprises, Lee BHM, LLC, and Courthouse News Service.

Your Honor, I think your questions about the dissemination restriction and why it's not narrower illustrates why the dissemination restriction is unconstitutional, and at the very least illustrates why at the Motion to Dismiss stage the plaintiffs cannot carry their burden of presenting evidence to show that it's narrowly tailored to even survive intermediate scrutiny. What that means is that the Court --

The defendants have spent a lot of time arguing why the dissemination restriction is not a prior restraint and why it's not subject to strict scrutiny. They're wrong. It clearly is a prior restraint. It restricts speech by OCRA subscribers before it happens. It's content based, and it gives the defendants complete discretion to enforce it. But it doesn't matter for purposes of this motion because under

intermediate scrutiny they still have to show that it's narrowly tailored, and their own argument --

They're attempting -- Hade's counsel is attempting to rewrite the statute to say that it only restricts dissemination of unredacted materials, the materials from which the items in 293(B) have not been redacted. That's not what 8 says. 8 prohibits the dissemination of any data whatsoever that's taken from OCRA, any information.

So in your example, the attorney could not call up Courthouse News or Lee and say, Hey, there has been a complaint filed you might want to know about. Here is the lawyers. Here is what it alleges. They can't say that. OCRA prevents it.

That's not necessary to protect the interest they're trying to protect. The dissemination restriction could be narrowed to just saying you can't disseminate any confidential data as defined, and it could define what that confidential data is. It could be the items listed in 293(B). But it doesn't do that. It says any data.

So a lawyer cannot communicate to a reporter or to his client, Hey, there has been a complaint filed. Would you like to know about it? Here is what it says. Here is the key allegations. That is much broader than it needs to be to protect the interest that Hade's counsel has identified and that the Smith court identified. For that reason alone, on

the merits, the Motion to Dismiss should be denied, and you don't need to deal with the prior restraint issue.

THE COURT: Let me ask you this: What about my hypothetical that if I was a legislator in the Courts of Justice Committee offering an amendment that any attorney -- again, attorneys are subject to sanctions and they're supervised and so on -- any attorney who disseminated an opinion not in the course of his ordinary practice -- you know, that might include an advertising-type of thing, so it could even be narrower -- is that okay?

MR. MYERS: No. I think that would still create a problem with journalists wanting to be able to get access to information at remote courts that they cannot get to physically. That's the real issue here for both Lee and Courthouse News.

I think your hypothetical with just a small change would be fine, and that would be that lawyers, because they are subject to professional discipline, the restriction could be modified and limited to preventing them from disclosing confidential information.

Most of what's on OCRA -- remember, the records on OCRA are nonconfidential court records. They're the same records available at the courthouse. So the concern about making it too easy to disseminate personally identifiable information that's listed in Subsection B can be easily

addressed by limiting the dissemination restriction to preventing attorneys from disseminating that material that's listed in 293(B), the financial account information, the social security information.

Most of that has been redacted out anyway. It's not really a problem. But even if it was in a record, the restriction could just say, Attorneys, you can tell people what's in these records, you can provide copies, but you can't tell them any of the confidential information. If you provide a copy, you have to make sure it doesn't contain that, and if it does, you have to redact it before you send it out.

That's not what the dissemination restriction does, but it could be modified to do just that, and that would make it constitutional; but because it doesn't, it's unconstitutional.

THE COURT: All right. So you're talking about, as you said, social security numbers, addresses, personal addresses, perhaps?

MR. MYERS: Perhaps, you know, the legislature could determine what it wants to identify there. The information that's in 293(B) includes things like dates of birth and the maiden name of certain people. A lot of that, again, is redacted. Virginia law allows filers to redact dates of birth, for example, if there is a health or safety reason to

do that.

Without doubt, the restriction could be modified to prevent the dissemination just of confidential data, and whatever constitutes confidential data could be defined in the statute. If it did that, we wouldn't be here today.

The problem is that when a journalist wants to find out information on deadline about a new case that's been filed in a court that it can't get to before deadline, they can't do it. They don't have a way that they can call up an attorney who has an OCRA subscription and say, Can you tell me what's in this document? The lawyer can't do it.

I'm going to jump ahead a little bit and deal with the standing issue because that does dovetail to this. All the arguments that Hade's counsel raised today about why Mr. Lacy is not a speaker don't apply.

The test here is the Overbey test. What she's talking about is the Communications Decency Act, which is a federal statute that limits tort liability for certain speech made on the internet. That's not what we're talking about here.

We're talking about the willing speaker test under Fourth Circuit law. Basically, Overbey says as long as there is someone who is willing to provide you the information but says they can't do it because of the restriction that you're suing over, they're a willing speaker, and you have standing

to file a suit saying that that restriction is preventing you from exercising your First Amendment right to gather news, to gather speech from a willing speaker.

For that reason, by the way, that also addresses the ripeness argument that they've raised, which as Cooksey points out, in a First Amendment case standing and ripeness go more or less hand in hand.

If there is a willing speaker who said I'm willing to provide this information to you but I can't do it because of OCRA, which we've alleged has happened on numerous occasions, that also means the case is ripe because the speaker is recognizing that they are bound by the restriction, and it's right now preventing Courthouse News and Lee from being able to exercise their right to gather information by contacting an OCRA subscriber to get information about a new pleading that's been filed in a court that they can't get to on deadline.

Now, with respect to Mr. Hade's sovereign immunity argument, Judge Hudson dealt with this argument at the Motion to Dismiss stage in the first Hade case and rejected the argument there because the complaint alleged that Hade does have a special relationship to OCRA and does have the ability to enforce OCRA.

There was enough that was alleged in the complaint in the record there to show that, at least at a plausible

level for a Motion to Dismiss, and that's more than true here with the dissemination restriction because our complaint doesn't just limit itself to alleging OES's control and creation of OCRA and the fact that it gets paid $1.2 million by the clerks to maintain OCRA. It specifically alleges that Hade's OES directed the clerks to include the dissemination restriction in the subscription agreements.

So Hade's OES instructed the clerks to enforce the dissemination restriction, and it includes -- the complaint includes allegations from clerks themselves, this is in Exhibit 6, saying that OES and its software are like the Wizard of Oz because it controls everything with respect to OCRA. For purposes of a Motion to Dismiss, that's more than enough to plausibly allege that Hade has a special relation to OCRA and has the ability to enforce it.

The fact that the clerks have discretion to deny or revoke access doesn't mean that no one else has the ability to participate in the decisions about how to enforce the dissemination restriction, and clearly Hade's office has done that, at least as we've alleged in the complaint, which is more than enough to put Hade under sovereign immunity for purposes of a Motion to Dismiss.

THE COURT: Your opposing --

MR. MYERS: I want to -- go ahead, Your Honor.

THE COURT: Your opposing counsel says that the

Commonwealth, if Mr. Hade was not a party, they would move to intervene as a party. Is that okay with you?

MR. MYERS: No. We think that actually because Mr. Hade and OES are behind all of this, and we think, and the clerks have essentially told us in what we put in the complaint, that they are pulling the strings on OCRA, that we think Hade and OES should be in the case, that Hade should be a defendant in the case. But it's not --

Really, we get to choose our plaintiff as long as they fall within Ex parte Young, and Mr. Hade clearly falls within Ex parte Young, and that's what Judge Hudson ruled in the first Hade case. We ultimately let him out on a stipulation, but that stipulation doesn't say that he has no ability to communicate with the clerks about how to enforce the dissemination restriction. It doesn't say that he doesn't do that.

So the stipulation is not a basis for him to be able to get out on a Motion to Dismiss. And in retrospect, we have decided that that was probably a mistake and that we should not have dismissed him from that case because we do think that OES controls OCRA and would have a say in enforcing the dissemination restriction and already has by requiring that it be included in the subscription agreements.

Now, as to the -- with respect to counsel's arguments about Ritter and how the dissemination restriction

somehow is only a regulation of professional conduct that is only subject to relaxed scrutiny, I want to point out, as we noted in our sur-reply, they did not make this argument in their reply brief.

Their reply brief cited Ritter and said that it should be treated as a professional conduct regulation but didn't do any of the analysis as to how the dissemination restriction fits within the box of a professional conduct regulation. So we didn't have a chance to even address it in our sur-reply.

We cited the Grayson case in our reply on the Motion for Leave to Amend pointing out that they don't get to not develop an argument in their briefs and then raise it at oral argument, which is what they're trying to do now. So we don't even think the Court should consider the argument, but if it does, the argument fails on the merits.

If you read Ritter -- part of the problem here is Ritter admits that this issue is a thicket, and it says it's trying to provide some guideposts through the thicket. They didn't address any of those guideposts in their papers. They're trying to raise them now, and it's too late.

Part of the reason why it's too late is because they don't give a complete picture of what Ritter says. Ritter, for example, quotes the Supreme Court's decisions in National Institute of Family and Life Advocates and Planned Parenthood

v. Casey, which said that a statute regulates professional conduct where is regulates speech only as part of the practice of medicine or here as the practice of law.

That's not what the dissemination restriction does. It's not even limited to attorneys. OCRA access can be given to government officials and employees. This is not in any way a professional responsibility restriction on lawyers per se. It's not part of a lawyer's licensing scheme. This is not something that the State Bar of Virginia has invoked.

This is a restriction that doesn't incidentally burden speech; it's only focused on speech. It prevents the dissemination of any information obtained from OCRA to anyone who might disseminate it to the public; not just complaints that have personally identifiable information, but any information at all.

If the statute said what Hade's counsel wants it to say, it would be a different situation and it might be narrowly tailored, but it doesn't. And the Court can't rewrite it to say only that. That's for the legislature to do. All the Court can do is say the statute as written, at least for purposes of a Motion to Dismiss, is not narrowly tailored.

And on that point of narrowly tailoring, I should point out that the Fourth Circuit has specifically said they have to present evidence. Smith said they presented evidence

with respect to the access restriction, but Smith did not address the dissemination restriction and especially did not address the dissemination restriction in this context where Courthouse News and Lee do not have access themselves to OCRA but only have the ability to contact a lawyer who has access to ask for information or records from OCRA.

That's why what the Fourth Circuit said in its cases applying time, place, and manner scrutiny are applicable here. They said that the burden of proving narrow tailoring requires the government to prove that it actually tried other methods to address the problem before enacting the speech restricting law. That's Billips quoting Reynolds, and it's quoted at page 45 of our opposition.

Obviously, on a Motion to Dismiss, Smith didn't deal with this issue because it didn't deal with the dissemination restriction. And on a Motion to Dismiss, the defendants have not and cannot present that kind of evidence. They can't make that sort of evidentiary showing.

And they can't rely on the decision in Hade II because it did not apply Billips and Reynolds. It did not apply this test, and it was reversed by the Fourth Circuit on standing grounds and sent back down. And now we're in a different context where the dissemination restriction is not being analyzed from the standpoint of Courthouse News or Lee having access to OCRA but only having access to a lawyer who

has access to OCRA.

On that point, I want to come back to the data mining point in the case portal argument. Once again, there has been a misrepresentation made about what case portal is and what it allows. We put in our opposition papers a link to the case portal terms of service. It doesn't allow data mining.

So there is no world in which a complaint that Mr. Lacy sent to Courthouse News that got put on the case portal could be subject to data mining because Courthouse News doesn't allow it in their terms of use, and they monitor it to make sure that that doesn't happen.

There is also -- in Smith the Fourth Circuit said that the access restriction is narrowly tailored because it only allows attorneys to have access, and attorneys can be subject to professional discipline if they violate whatever the restrictions on that access is.

So if the dissemination restriction is modified, as it should be, to limit it to just preventing the dissemination of confidential personally identifiable information, any violations of that by the attorneys can be subject to professional discipline.

And the dissemination restriction could be modified to say that the lawyers have to ensure that if they're going to provide it to someone, they have to tell them that -- you

know, they have to redact out any of the personally identifiable information before they provide it. That would solve the problem entirely and it's narrowly tailored.

Case portal is not -- Courthouse News is not a data mining company, it's not an information broker. It's a news company. And the fact that Lee and Courthouse News may make a profit is not relevant to the First Amendment analysis, and there is clear case law on that.

But beyond that, this isn't about making a profit or having more profitable speech. This is a situation where there are numerous areas in Virginia where the reporters cannot get to the courthouse at all in order to cover court cases that are filed there. So it's a matter not of whether there is more profitable coverage but whether there is any coverage at all, and that's what we've alleged in our complaint.

THE COURT: All right. Thank you, Ms. Myers.

Ms. McNeill, any brief rebuttal?

MS. MCNEILL: Your Honor, again, I'm sorry, but I thought you said you were going to have Mr. Askin argue and then we would -- and then Mr. Myers could get to rebut Peter Askin's argument, and then Peter and I would present our rebuttals.

THE COURT: You-all have caught me again.

MR. MYERS: I'm not sure -- I don't know if the

court reporter could tell us. I'm not sure it matters. That's not how I understood it. I understood that we deal with Hade's arguments, and then we turn to the clerks' arguments.

So Ms. McNeill would respond to me, and then we turned to Mr. Askin. It doesn't make a whole lot of sense to turn to Mr. Askin, have a back and forth with me on that, and then have Ms. McNeill jump in at the end again to have the final word.

I thought that the way it was going to work was she would present her argument, I'd address it, she'd get brief rebuttal, if she wants it, and then we turn to Mr. Askin.

THE COURT: Well, thank you, Mr. Myers. You're my counsel in this case, I guess.

MR. MYERS: Happy to be of service, Your Honor.

THE COURT: Yes, sir, unpaid.

I think that's better, Ms. McNeill, if you don't mind.

MS. MCNEILL: I don't mind.

THE COURT: I apologize, but if you could go ahead.

MS. MCNEILL: Happy to, Your Honor. Mr. Myers has raised a few points. First, I would like to take up the specific language in the statute where it discusses the restriction on disseminating any data.

This was well covered during briefing, the meaning

of data. CNS or the plaintiffs are arguing that data means information in any format of any kind, and, therefore, it restricts even David Lacy from answering a reporter's question over the phone. Our position is that data means electronic files, and we've cited dictionary definitions on that.

I think that's easily resolved, Your Honor, by the cannon of constitutional conservatism where if you can avoid a constitutional conflict in the definition use of a word, you should. In this case, the title of the statute is Posting and Availability of Information on the Internet. The entire statute deals with sharing information on the internet, and then they use this term data that says, "Nothing in this section should be construed to permit any data access via secure remote access to be sold or posted on any other website or in any way redistributed to any third party."

In that context of the whole statute, that's regulating sharing electronic court records on the internet. Data refers to those digital court records, not the information in the records, because, of course, the information in the records is publicly available at the courthouse. It wouldn't make any sense for that to refer to any information about the cases at all because that's not what's being regulated in this statute, and that information

is publicly available.

So clearly data has to mean the digital files themselves, which is supported by the plain language meaning of data, the dictionary definition of data, the statutory scheme as a whole, and to the degree this is even a close question, we should adopt the definition of data that avoids a constitutional conflict, not one that creates one.

That's why we do think that Mr. Lacy could answer questions from a reporter about a pleading he's read on OCRA. He could send out e-mails saying there's a new complaint out, call me to discuss. He couldn't send out the PDF file, but he could write his own original summary. He could advise clients about it. He can discuss pleadings he's read. Nothing about the statute attempts to control that kind of conversation or blogging or any of that sort of speech.

I think Mr. Myers's argument reveals what's really being challenged here, Your Honor, and that is the access restriction. CNS and Lee want access. They argue that they don't have access if this dissemination restriction is enforced.

They want to use this dissemination restriction as a backdoor way of defeating the access restriction. They can't get OCRA access directly because the Fourth Circuit said they couldn't in Smith, and now they want to use the dissemination restriction to get access through proxy because they can't

get it directly.

They're making an argument that if the dissemination restriction is upheld, they won't have access to these remote courthouses, but the Smith court upheld the access restriction, that this was a reasonable time, place, and manner.

They do have access at those courthouses. They could hire reporters in Bristol and in Abingdon. In these remote places, they could get student interns. I think it's not profitable to hire reporters to sit by every remote courthouse or ride the circuit in these more remote courthouses, so that's why it is about profitability.

It's not profitable to hire journalists to sit in small jurisdictions and monitor local pleadings physically in person, and that's why they want to be able to do it more cheaply and efficiently, have fewer reporters cover a larger geographic area through this remote access, but Smith upheld they're not entitled to access through the OCRA databases.

The information does have to be redacted under Subsection B if it's going to be publicly accessible. The plaintiffs argue that H should be rewritten so that a lawyer could disseminate files off OCRA if he then does the redacting that's required under Subsection B, but that's simply not the scheme that the General Assembly crafted.

I think that's because the clerks are

constitutionally mandated with control over court records to safeguard Virginia litigants' information. So the General Assembly vested the clerks with that responsibility to determine who should get access and to what and vested in them the duty to ensure the redactions are properly done if the public is going to get access to these records. They did not give it to lawyers more generally that any lawyer could perform this redaction and disseminate the records to the public or to disseminate them to CNS who will disseminate them to the general public.

I respect that CNS has their own user agreement and that they're doing their best to prevent data mining, but you and I both know, all of us sitting here know, that even PACER is regularly subject to data mining. I think I just got an alert that my password on PACER needs to be changed because it's been found in a hacking scheme. These databases are regularly subject to hacking attempts and data mining attempts, and we did put on that evidence, and the Smith court recognized that we did.

If you look to Judge Hudson's opinion in the Hade on the cross-Motions for Summary Judgment, he found that that evidentiary standard was met by common sense and logic, that common sense and logic tell you that if an individual with access is allowed to sell or redistribute the files he has access to, that defeats the access restriction.

That's all the evidence you need. Your own common sense will tell you that the evidentiary standard is met. You don't have to put on evidence of what is common sense or logical. And that is in the Hudson opinion when he analyzed the dissemination restriction in light of the information we put on about how other state databases that host court information or public information are subject to regular attacks by bots and data mining and that other --

THE COURT: Ms. McNeill, I'm going to stop you now. We need to move on.

MS. MCNEILL: Yes, Your Honor.

THE COURT: We're ready for Mr. Askin's argument.

MR. ASKIN: Good morning, Your Honor. Peter Askin from the law firm Thompson McMullan on behalf of the three clerk defendants here.

OCRA is not available to the public, and plaintiffs can read the court records they seek at the courthouse. These undisputed facts mean the dissemination restriction is not a prior restraint and that plaintiffs have not suffered a First Amendment injury.

Now, before I dive into the specifics of those points in my argument, I want to clarify the clerks' legal position here today. We just heard a lot of back and forth between the Attorney General's office and Mr. Myers about what scrutiny standard applies and then whether the statute

satisfies that scrutiny standard and getting into some of the nuances of OCRA and the statute itself.

The clerks are going to defer to the Attorney General's arguments on those points for the most part, but the Court doesn't have to get there. This Court does not have to wade into the very complex doctrine at all because the complaint has several pleading, bread and butter pleading and procedural defects. These include, and as we briefed, standing, ripeness, the Eleventh Amendment, and whether they've even alleged a prior restraint to begin with.

The briefing and back and forth on those points is very complex. We have lots of different arguments there. For purposes of today and this hearing, I just want to focus on two issues in a logical order.

The first is is the dissemination restriction a prior restraint of an attorney's or OCRA's subscriber speech? Then second, even if it is, have plaintiffs suffered a First Amendment injury because of that prior restraint? We would argue that the answer to both questions is no, and I'll start with the first.

The dissemination restriction is not categorically or definitionally a prior restraint. And I want to start with where we should be starting on a 12(b)(6), which is the complaint. Not the briefs, but what does the complaint say, the four corners of it?

If you turn to Count I on page 30 in paragraph 87, it says the dissemination restriction, quote, "is a prior restraint." That is the sole claim that has been pled in the complaint. And you can see that in paragraph 13, which is in the introduction, as well. Their entire theory in the complaint is that the dissemination is a prior restraint and, therefore, we've pled a First Amendment claim.

The briefing raises a ton of other issues that my clients were not aware were on the table until the briefing occurred. So while the briefing discusses news gathering, overbreadth, all these other things, all these other levels of scrutiny, that's not in the complaint. So there is a threshold issue here, which is has Count I pled a prior restraint? Is the dissemination restriction a prior restraint?

So we first turn to what is the definition of a prior restraint? What are the aspects and elements of that? There are three of note that I want to point out. A prior restraint is generally an order for an injunction, or at least an authority to issue one. This most often comes up where a judge has issued a gag order under the penalty of imprisonment and contempt or the government is seeking an injunction against speech.

Throughout all the briefing in this case, plaintiffs have failed to identify how my clients, the clerks, have any

authority to issue an order, issue an injunction, or seek either of those here. The statute doesn't allow it. So if there is no order of injunction here, there is no prior restraint; there is no prior restraint, there is no claim. That is an easy way to resolve this case.

The second typical batch of cases with prior restraints is where there is a licensing regime. I want to be specific about what this doctrine says. These licensing regimes are licenses to speak. They are not licenses to access information.

I think historically, you know, a lot of prior restraint doctrine comes from Colonial America in British times where the Crown, the government, if you wanted to print something, you had to get a license from the government. That's not what the United States has anymore.

OCRA is not a license to speak. It is a license to access information. That's it. It's no different than any sort of database that the government maintains for lots of different things. For instance, I do a lot of federal employment work, and I have access to EEOC pleadings and records via a log-in. When I do that, there are terms and conditions of that log-in. That's not a license for me as an attorney to speak; it's a license for me to read.

Then the third hallmark aspect of a prior restraint is that it stops speech before it occurs. That's the whole

point. You don't get to do your political parade down Main Street until you get a permit, right? So you don't even get to speak until you get the permit at all.

That's not what we have here. Hypothetically, if Mr. Lacy, the plaintiffs' attorney, did convey an OCRA access court record to his clients, that communication would occur. There is nothing in the statute that the clerks can do to prevent that before it happens.

While there might be a subsequent punishment for that, which is revocation of OCRA access for Mr. Lacy, that is a distinct concept. We've cited authority in our briefs that courts are very hesitant to overextend prior restraint to include subsequent punishments.

I think there is some authority we cite in our brief too where there is criminal penalties for communications. There's lots of financial disclosure felonies, other disclosures where somebody has communicated something to someone, fraudulent statements, for example.

Courts have repeatedly held that a felony punishment for a communication is not a prior restraint. If a criminal penalty can't constitute a prior restraint, I don't see how this statute which doesn't even impose any sanction at all, just revocation of access. There is no money that exchanges. There is no injunction. There is not perspective relief allowed by the statute. So if a felony isn't a prior

restraint, I just don't see how the disseminate restriction can access this as a prior restraint here.

I don't think the Court has to take my word for it because we have case law that supports this argument. The Seattle Times case, that's a SCOTUS case regarding a protective order that we cite in our brief, like a civil discovery protective order that federal courts issue all the time. SCOTUS held that that order was not a prior restraint, and it said specifically because the press can, quote, "Gain the same information independent of the court's processes, independent of a discovery order."

In other words, the press can seek information -- although the press can't seek information from the attorneys who are subject to the protective order, they can still go out and talk to witnesses on the ground. And that's what we have here. There is nothing that stops plaintiffs from going to the physical courthouse and accessing the same records. It just categorically can't be a prior restraint if plaintiffs can actually get the same records that they seek in an alternative route.

In addition, Judge Hudson in the prior litigation, although his decision was appealed, he did hold that the dissemination restriction was, A, not a prior restraint -- I don't even know if that was raised by the plaintiffs there -- and that it was constitutional. So you don't have to take my

word for it. This statute is not a prior restraint, and if it's not a prior restraint, there is nothing left in the complaint. There is nothing left in Count I.

The word "news gather" does not appear in Count I. In fact, it only appears once in the entire complaint at all, and I believe that's in paragraph of 62 of the complaint as a passing reference. So the Court can stop there. If this is not a prior restraint, then there is no claim that's been pled, and the Court can dismiss the case.

That brings me to my second point that even if hypothetically the dissemination restriction is a prior restraint, we have another question to ask. Does the prior restraint of Mr. Lacy's speech invade a third party to that, which is the plaintiffs here, their First Amendment injury. The answer to that question is no, for four independent reasons.

The first is the Fourth Circuit has already held that there is no direct First Amendment injury to the plaintiffs here by the dissemination restriction. The Fourth Circuit held the dissemination restriction does not apply to plaintiffs or the members of the public generally. It said, quote, "The dissemination restriction does not apply to Courthouse News' speech." That's at page 917 of that argument. I don't see how plaintiffs can say that they have a First Amendment injury if the First Amendment doesn't even

apply to the dissemination restriction directly.

The second point is that plaintiffs don't have any sort of derivative injury. I want to clarify what the Fourth Circuit held here. In holding that the plaintiffs had no direct First Amendment injury, they did sort of hint that the plaintiffs could have a derivative injury. They use that word "derivative."

The word derivative means that you are litigating an interest on behalf of someone else. Just like a shareholder derivative suit, the shareholder is the one bringing the lawsuit, but it's not their interest that they're litigating. They're litigating the company's interest. The same thing with a third-party beneficiary claim on a contract. That party is not litigating their interest. They may have been injured, but they're litigating the contractual right of another. That's how derivative injuries work.

The Fourth Circuit used the word derivative, and the complaint, again, which is the operative pleading we need to be looking at, not the briefing, this is what the complaint says at paragraph 9: Quote, "Courthouse News, now joined by Lee, thus brings this new action which cures the standing concern identified by the Fourth Circuit."

That standing concern was a derivative injury. That's what they were supposed to be curing. Yet on brief they've conceded that they are not seeking a derivative claim

on behalf of Mr. Lacy. That's dispositive. That's a fatal concession to this argument.

The Fourth Circuit only left the door open for a derivative injury, they used that specific word, and plaintiffs have now conceded they're not seeking a derivative injury. If they have no direct First Amendment interest and they're not vindicating a derivative injury, there is no interest or standing or injury at stake here.

I want to point out the plaintiff repeatedly relies on the Overbey Fourth Circuit case for almost all of its arguments on brief. That case is a standing case regarding a First Amendment claim.

At page 228 of that claim, it's talking about third-party standing. Overbey is a third-party standing case. That's what it says. And if that's a third-party standing case and the plaintiffs have admitted they're doing a third-party claim on behalf of Mr. Lacy, then that case does not support their standing interest here.

So the third point is that I don't believe the complaint has alleged a willing third-party speaker here. Mr. Lacy is not a third party. He is the agent, hired agent, of the plaintiffs. They have admitted that in their briefing and in the complaint.

When you have hired an attorney as an agent, the attorney is legally synonymous with Courthouse News. This is

not a third party talking to Courthouse News. This is Courthouse News talking to itself. It cannot manufacture standing or a First Amendment injury here.

And I want to compare that with the Overbey case. The Overbey case involved I think it was the Baltimore City government. When it entered into settlement agreements regarding police brutality claims, it put in non-disparagement claims into those settlement agreements.

The injured people wanted to talk to the press about their case. They're not agents of the press. They weren't hired by the press. Those people, those plaintiffs, came to the press, not the other way around. It would be something if a newspaper hired somebody to talk to them because that would just defeat their claim entirely.

This brings me to a question, Judge, that you raised to Ms. McNeill about sort of the nature of the attorney-client relationship pled here, and I think we need to be very precise about what has been pled that relationship to be.

Plaintiffs hired an attorney to get them an OCRA pleading. They did not hire an attorney for legal advice or for legal services. So this isn't subject to attorney-client privilege or other protections. You can hire an attorney for nonlegal activities.

Again, you don't have to take my word for it because

plaintiffs have admitted this. In their sur-reply they say, and this is on page 6, they say, quote, "OCRA does not implicate attorney services" -- sorry, "OCRA does not implicate legal services or advice."

This is not an attorney-client relationship in the nature of there is ongoing litigation and I need general counsel. It is a private company hiring an attorney that has access to this particular information for the sole purpose of getting that information.

That brings me to my fourth point about whether there is a First Amendment injury here, which is plaintiffs, although they pled a prior restraint claim, their briefs then pivot to talk about this right of news gathering and that that is the precise First Amendment injury that they have suffered, the precise right that has been violated. There are multiple reasons why, however, that argument lacks merit.

First is, as I've already said, the Fourth Circuit has said that the dissemination restriction does not affect their First Amendment rights. So they can't be claiming a First Amendment direct injury from the restriction if the Fourth Circuit has held that they cannot have that.

Second, and as I have already mentioned, they haven't pled a news gathering right. It's not in Count I anywhere, save paragraph I think 62 that I said has a passing reference.

Third, and more importantly, their argument lacks legal merit. I think the sur-reply is again very helpful to knowing what is the precise nature of their news gathering right. This is what they say on page 4, quote, "CNS and Lee do not allege the restriction imposes a prior restraint on their speech but on their sources of information." So their alleged news gathering right is that they don't have -- they are being restrained or impeded from accessing a source of information. That's the phrase they use.

But the Supreme Court has already held that that access to sources of information is not a First Amendment right. The Pell case, that's Pell v. Procunier, says there is no First Amendment interest to access, quote, "sources of information not available to members of the general public." They use that same phrase, sources of information.

Then the Fourth Circuit held at 909, OCRA is not available to the general public and, quote, "The First Amendment affords no special protection to a plaintiff's favored or most cost-effective mode of communication." That's at 916.

In fact, the Branzburg SCOTUS case that plaintiffs cite, which held that there was no First Amendment violation, doesn't support their argument either. It said the First Amendment, quote, "does not guarantee the press a constitutional right of special access to information not

available to the public generally."

These legal doctrines are black letter law and are completely dispositive of the First Amendment interest here at stake. They want, through a proxy, as they've said in their sur-reply, sources of information. That source of information is OCRA and OCRA pleadings. OCRA pleadings are not public, and SCOTUS has said that the press has no constitutional right to nonpublic sources of information. That is a very simple, logical syllogism. If A equals B and B equals C, then A equals C, and its dispositive of the claim here.

And I think this is important to note. The government maintains a lot of confidential and private information, state, federal, local. Under plaintiffs' theory, any government employee can disseminate that information without punishment. I mean, that is a sweeping conclusion that plaintiffs are coming and proposing here in this case.

I think what I would conclude on this point is it's most helpful -- while these are general legal principles, I think it's most helpful to apply these principles to specific past case examples, and I want to distinguish the difference between a gag order and a protective order.

A gag order, which the plaintiffs assert the dissemination restriction is -- again, it's not an order, nor

does it give authority for an order. A gag order is when a judge says to all the trial participants you can't talk to anybody. Don't talk to the press. Don't talk to anybody at all during the trial about anything. It's a complete ban on speech, and it comes with contempt and imprisonment punishments.

In that instance, the press cannot get any information regarding the trial at all from any source, directly or alternatively. There is just no way for the press to get it. For that reason, SCOTUS and other courts have held that that was a form of prior restraint.

Let's compare that to a protective order, which is not a prior restraint and does not implicate the press' First Amendment interest. The protective order that I mentioned in Seattle Times, it is only prohibiting communication of information through one channel of communication.

It's just saying when -- because you're an attorney in this case, you have the special privilege to access discoverable documents. Discoverable documents are not public documents until they are filed. Because you have that special access and because the parties agree, we're going to enter a protective order saying you can't distribute that information elsewhere.

That protective order, however, doesn't prohibit the press from getting the exact same information from an

alternative source. So let's say there is a smoking gun e-mail in a pending litigation case that's been produced in discovery. It's constitutional that a court can order an attorney not to distribute that e-mail to anybody else in the public, but let's say the press goes to Microsoft and gets that e-mail from them voluntarily. There is nothing that violates the protective order in that. That's an alternative mode of communication. SCOTUS has held, therefore, that a protective order is not a prior restraint, nor does it implicate the press' First Amendment right.

Before I conclude, I just want to mention a couple of things that were raised by counsel on his oral argument recently. The first is what I mentioned earlier, which is the reliance on this Overbey case. There are a lot of the distinctions with that case and this one.

First, it's not a prior restraint case. That phrase appears nowhere in the case. It was a standing decision, and it was a third-party standing decision that plaintiffs have admitted they are not seeking.

Second, that case had a plaintiff that -- there were two plaintiffs. There was the press, but then there was somebody who was subject to a non-disparagement clause. We had an actual person who was litigating their direct interest there. Mr. Lacy, though, is not in this case.

Third is the press in that case identified, apart

from that named plaintiff, multiple plaintiffs subject to non-disparagement settlement agreements who reached out to the press to talk to them.

Another distinction is in that case the non-disparagement clause closed any access to the information at all. Because you couldn't talk to the claimant, you couldn't get any information about the lawsuit at all. Again, compare that with our case where the plaintiffs can access the exact same information at the physical courthouse.

Then, finally, this was a citation. Footnote 9 of Overbey, which I just noticed for the first time this morning, actually says everything I just said in a very concise footnote.

Footnote 9 states, "We note that" -- this is the Overbey case, I should say. Quote, "We note that this is not a case in which the government seeks to hold a private speaker liable for the unauthorized disclosure of confidential or sensitive information that was held by the government and to which the speaker would not have had access but for a promise of confidentiality."

That footnote is talking about our case where the government maintains confidential information, and as a condition to access of that confidential information, it in exchange wants a promise to not disclose that. Overbey is thus expressly distinguishing itself from the exact factual

pattern that we have in this case.

One other thing from counsel's argument, the plaintiffs' counsel's argument, is he argued the dissemination restriction is, quote, "content based." The Fourth Circuit held that the access restriction is content natural, and it did so because it held that access to court pleadings themselves are not content based. It's a mode of communication. It's how you access the information, not what's the information inside.

I don't see how logically you could hold if the access restriction would be content neutral how the dissemination restriction would be any different because it involves the exact same OCRA pleadings subject to both restrictions.

In conclusion, OCRA is not public. Plaintiffs can get these records, just not in the medium or in the convenience that they prefer. That means that there is no prior restraint and there is no First Amendment interest here.

I anticipate that my opposing counsel is going to raise a lot of arguments about various First Amendment doctrines that are not in the complaint, but I think there are two questions that they have still failed to answer in their briefing.

If the dissemination restriction is not a prior

restraint, if you assume that hypothetically, what's left in Count I? And if the Fourth Circuit said the word derivative injury and plaintiffs are not seeking a derivative injury, then what are they seeking?

Unless the Court has any other questions, I'll save any other points for my rebuttal. Thank you.

THE COURT: All right. Thank you.

Mr. Myers.

MR. MYERS: Thank you, Your Honor. It's a little bit difficult to know where to start because virtually everything that counsel just said about First Amendment law and the complaint is inaccurate, but let me start with the complaint.

If you look at paragraph 86, Count I incorporates all the paragraphs, as is typical of any complaint. All the paragraphs that came before are realleged and incorporated into Count I, and that includes paragraph 62, which specifically alleges that the injury to Courthouse News and Lee is the injury to their protected right to gather news.

The prior restraint that is identified in Count I is what's injuring them by preventing OCRA's subscribers from providing them information about public court records. This is not discovery. This is not Seattle Times. This is not information about prisons and inmates as in Pell. This is not Pell. It's a different First Amendment issue entirely

from those cases.

This is about information in public court records that people who have access to this public information are prohibited from disseminating to anyone who might disseminate it to the public. That puts it under the Smith v. Daily Mail line of cases, the Soderberg line of cases.

I will point out that in Smith v. Daily Mail the Supreme Court affirmed a lower court decision that the statute there was a prior restraint. It was a statute. It wasn't a gag order. It wasn't an administrative rule. It was a statute that prohibited the dissemination of information about juvenile defendants without court approval.

The lower courts held it was a prior restraint. The Supreme Court said it was a prior restraint that in many of these cases is enforced by subsequent punishment. That doesn't mean it's not a prior restraint. The statute as written prohibited the dissemination of the information. That's what made it a prior restraint.

The fact that the violations of that could be subject to punishment didn't mean it wasn't a prior restraint, and the Supreme Court said we don't have to decide whether this is or is not a prior restraint or a penal sanction on speech. It doesn't matter. Either way it's subject to strict scrutiny.

Virtually everything that counsel just argued the

Court doesn't need to deal with at this point because the only issue really on the merits -- I'll get to the standing point in a minute. It does need to deal with that. But on the merits, if the Court finds as in Hade 1 that at the Motion to Dismiss stage at the very least there is a plausible claim that the dissemination restriction is not narrowly tailored, then you don't need to get into that whole argument about prior restraint or not a prior restraint.

You don't get into the argument about whether strict scrutiny applies or intermediate scrutiny applies because it was the intermediate scrutiny level of narrow tailoring that Judge Hudson in Hade 1 said that you couldn't show on a Motion to Dismiss and that the Fourth Circuit in Billips and Reynolds said requires actual evidence that they can't present on a Motion to Dismiss.

So all the arguments here about whether this is a prior restraint or not, they're wrong as to whether it is. A statute can be a prior restraint. A licensing scheme that allows people to revoke access in their discretion if somebody violates a restriction is a prior restraint. A restriction that prevents discussing an entire topic of information is content based.

But the Court doesn't need to get into any of that at this stage. All it needs to do is say, Look, for a pleading motion there is enough here for me to say that the

plaintiffs have sufficiently alleged that the dissemination restriction is not narrowly tailored.

If it did what Ms. McNeill says it does and was limited to preventing the dissemination of confidential information, then it would be narrowly tailored, but it's not. You cannot read it that way. And under the doctrine of constitutional avoidance that she referred to, the Supreme Court has said you cannot apply that doctrine or rewrite a statute.

Since she raised it, I want to give the Court the quote on that. "A Court that's relying on constitutional avoidance can and must interpret the statute, not rewrite it." That's Jennings v. Rodriguez, 583 U.S. at 281. It only comes into play if there is statutory ambiguity, in any event, and that's U.S. v. Oakland Cannabis Buyers' Co-op, 532 U.S. at 494.

The statute is not ambiguous. It says "no data." "Any data" means any data. It doesn't say any confidential data. It would have been very, very easy for the assembly to say we want to prevent the dissemination of confidential data, but if that's what they intended, it's not what they said.

Here is the proof in the pudding on that. Paragraph, I believe it's 78 of our complaint, while the Smith case was pending, so before this subsequent case was

even under consideration, Lee's Court Reporter in Richmond contacted Mr. Lacy to ask for a pleading off OCRA, could he send him a pleading off OCRA. Could he let him know some information about the pleading on OCRA, and Mr. Lacy said, "No, I'm not allowed to do that."

He didn't say, Oh, well, let me see if there is any personal identifying information and redact it out first and then I can send it to you. He didn't say, I can send it to you as long as it doesn't contain any sensitive personally identifiable information. He said, "If I get it from OCRA, I can't give it to you." And that's a real world illustration of why the defendants' attempt to rewrite the statute now can't be followed in this case.

Now to address a couple more of counsel's most recent points. First of all, Mr. Lacy is not Courthouse New's lawyer. He's never been paid a dime by Courthouse News. He's a source who they contacted. Lee uses Mr. Lacy for First Amendment litigation, and he's a source they've contacted for information off OCRA. He's not been paid for that either. So it's true that this isn't an attorney-client relationship situation, and for that reason, the whole professional conduct analysis doesn't apply.

But it's also true it doesn't matter for purposes of the willing speaker analysis. The Overbey Court said what's required of a willing speaker, and this arm's length where it

can't be your lawyer doesn't appear there. And here is why it -- this argument only makes any sense if you buy into the notion that this is somehow a third-party derivative standing case. Overbey in footnote 11 says that it is not. It specifically rejects the argument that this is about third-party standing, and here is why, and this gets to what the Fourth Circuit said in Smith. Remember, we talked about this in our sur-reply, but because there was so much time just spent on it, I feel like I need to address it again.

In the first case, Courthouse News sued to overturn the access restriction, but if it won that and the dissemination restriction remained in place, getting access wouldn't have done it any good because it couldn't have reported the information in the complaints to its subscribers and to the public. So it also sued over the access -- excuse me. It also sued over the dissemination restriction.

The Fourth Circuit, once it held that the access restriction was constitutional, that's when it said that the dissemination restriction no longer applies to Courthouse News' speech because Courthouse News itself would not have access to OCRA.

Then it said there is a possible other claim here that they've alluded to, but they haven't really briefed or alleged, which is true because that wasn't the focus of the case, and that's the news gathering claim. That's the right

to receive information. There they said that Courthouse News didn't have standing in that case to assert it because it had not identified a willing speaker.

The Overbey case is clear that when the media asserts one of these types of claims, and so, by the way, is the Holder case and the Stevens case, these other willing speaker cases. They're all clear on this. When a party asserts a right to receive speech, the party is asserting their own right to receive speech. It's only derivative from the standpoint of the restriction is imposed on somebody else, and that's why the plaintiff can't get the speech they want. So it's derivative from the standpoint of you have to look at the restriction on the source to see whether the restriction is constitutional or not, and that's what our reference to prior restraint in Count I is.

The dissemination restriction, we allege, is a prior restraint on the speech of OCRA subscribers. But, again, the Court doesn't -- and that prior restraint, because it prevents OCRA subscribers from providing Courthouse News and Lee with information from the complaints or other pleadings on OCRA, that is impairing Courthouse News's and Lee's right to gather information under the First Amendment. It's their own rights. It's not a third-party derivative right.

The footnote that counsel quoted from Overbey doesn't apply because the records here are not confidential

records. Attorneys are not being granted access to confidential information on OCRA. They are being granted access remotely to the same public records that are available at the courthouse.

This isn't a confidential records case. This isn't a nonpublic records case. It's a case involving a restriction on speech about publicly-accessible records, and that means that the footnote that counsel quoted in Overbey, the Pell case, the Seattle Times case, which involved discovery that was not public, none of those lines of analyses are applicable here.

The Soderberg case, which neither counsel have mentioned, is applicable here. There the Fourth Circuit found that the restriction that prevented disseminating information in a certain format, the broadcasting of certain proceedings, while that information was also available in records in the courthouse, was unconstitutional. It didn't use the word prior restraint, but it held that it was subject to strict scrutiny. At the end of the day, the prior restraint analysis here is about what level of scrutiny applies.

Again, I want to come back to the Court doesn't need to deal with that at this stage. As long as the complaint plausibly alleges and the record shows that the dissemination restriction is not narrowly tailored as required to survive

intermediate scrutiny, then the Motions to Dismiss have to be denied on the merits. And the Fourth Circuit has said the government can only carry its burden on that by presenting evidence that shows that they've considered less restrictive alternatives before imposing the dissemination restriction.

That information was not addressed by the Fourth Circuit because it never addressed the dissemination restriction. They said that there wasn't standing and sent it back for that claim to be dismissed without prejudice.

So that's information and evidence that they can present in discovery and can use to support a Motion for Summary Judgment if it exists, but it's not before the Court on a pleading motion, and it can't be the basis for granting their Motion to Dismiss.

I think -- oh, one other point about this whole attorneys have to be considered synonymous with their clients. Let's assume for a minute that Lacy was acting as an attorney for Courthouse News and Lee here. What does that mean? That means that the dissemination restriction is a prior restraint on the media because what they're saying is if you have an attorney who is your attorney and he's providing you information, that is you. I think he said it's Courthouse News talking to Courthouse News.

The point of that is so Courthouse News can turn around and tell the public about it. So what they're

basically saying is the restriction on an OCRA subscriber, if it's an attorney of the media, is in fact a restriction on the media itself and is a prior restraint on the media, which is like the highest level of First Amendment violation. It's a prior restraint on the press preventing it from publishing information. That's the Pentagon Papers case, among many others.

It's also the whole line of cases cited in Overbey, the Oklahoma Publishing, the Smith v. Daily Mail. Whether they call a prior restraint or subsequent penal sanction, it's all the same analysis, which is a restriction preventing the press from publishing something and then punishing it if it does.

So what counsel for the clerks has essentially argued is the prior -- they're wrong on the argument that the restraint on Lacy is a restraint on Courthouse News and Lee because they're two separate issues. One is the right to gather news, and one is Mr. Lacy's right to speak. But if they were right, then it's a prior restraint on the press, and it would clearly have to be subject to strict scrutiny.

Once again, the Court doesn't need to go there because on a pleading motion they can't carry their burden to meet the narrow tailoring test under intermediate scrutiny, but I just wanted to point out the ramification of counsel's argument that Mr. Lacy should be treated as synonymous with

Courthouse News, who he has never represented, and Lee, who he has represented but is not representing them with respect to OCRA.

THE COURT: All right. Mr. Askin.

MR. ASKIN: Thank you, Your Honor. Mr. Myers, I believe, is not being candid with the case law or the complaint. He's first cited to Daily Mail and Soderberg as prior restraint cases. I'm going to read from footnote one of the Daily Mail case. Plaintiffs did, quote, "not argue that the statute is a prior restraint," end quote. It wasn't at issue in that case.

Soderberg at 966 to 67, same thing, not a prior restraint case. And both of those cases are factually distinguishable. Soderberg involved a broadcast ban of a criminal trial, a complete ban. There was no way for any member of the public to see a criminal trial which comes with its own First Amendment protection that's very unique and special.

There was no way to access that. There was no alternative channel to see the criminal trial as it occurred. And it came with the punishment of contempt and imprisonment, that broadcast ban, that statute. That's not what we have here. We have an alternative communication open, and there is no contempt or imprisonment.

The Daily Mail case was about disclosure of juvenile

information, but that statute has something in it that ours doesn't. It says it requires approval of the Court, I think, before disclosure of that information. There is nothing in the statute that requires approval from the clerks before disclosure of an OCRA pleading.

Counsel also addressed sort of this statutory interpretation issue with the word "data." I just have three points on this. The first is our clients didn't write the statute. The subscriber agreements that were presented are just copy and paste the dissemination restriction into the subscriber agreement. There is nothing that's different there, and we generally defer to the OAG on that interpretation there.

I'll also note, though, data is a subset of information, not the other way around. In concentric circles you would have data in the center, and that must mean logically that it has to be something narrower than information as plaintiffs assert it to be.

Last point, counsel said, quote, "Mr. Lacy is not our attorney. He's a source. We contacted a source." Paragraph 11 of the complaint says Mr. Lacy is, quote, "our Virginia bar counsel." We have to, again, return to the complaint here. He's their attorney. He's their agent. He's synonymous. I don't think plaintiffs can rewrite their complaint here without amending it.

Sorry. I said that was my last point, but I just want to note that I don't think counsel addressed some of the questions that I presented at the end of my argument. I think more importantly counsel has at no point presented any limiting principle for what they are saying. They are saying that any government official or any person with special access to government information can distribute that information without any penalty.

That means a judge's clerk could distribute a draft opinion without any penalty. This means that Edward Snowden could escape criminal punishment. This means that anybody who has access to juvenile records and sensitive minor information could distribute that information freely to the press without any punishment. This means that somebody who works for the FBI in a criminal investigation, an agent, could leak information without criminal punishment.

That's just not how the law works. I think in the Pentagon Papers case and these leak cases there is something important there. The leakers get punished; the press doesn't. That's the same thing here. Mr. Lacy may receive a very, very small form of consequence for his actions, revocation or revoke of access, but nothing happens to the press. Nothing precludes the press from accessing the court records at issue here.

I'll say that I think counsel is presenting my

arguments as if they're out of pocket, as if they're novel. Everything I'm saying was in the Fourth Circuit opinion or in Judge Hudson's opinion. I'm taking this from the Eastern District of Virginia and the Fourth Circuit directly.

Unless there are any other questions, Your Honor, I appreciate your time and attention to this.

THE COURT: All right. Thank you.

MR. MYERS: Your Honor, if I might, there are a couple points I'd like to briefly address there since he pointed out that he said I didn't address them and he said I misquoted a case.

THE COURT: Yes, sir. I'll allow you a couple more minutes.

MR. MYERS: Thanks. I'll be brief.

In the Smith v. Daily Mail case, the decision says that the West Virginia Supreme Court of Appeal found that the statute operated as a prior restraint on speech. The petitioners in the case do not dispute -- and that was the government -- do not dispute that the statute amounts to a prior restraint on speech.

The newspaper, for whatever reason, argued that it didn't amount to a prior restraint. That's the footnote he quoted. And the Supreme Court said we don't have to deal with this. It doesn't matter because whether it's considered a prior restraint or a penal sanction, it's the same strict

scrutiny. That's the point. It's strict scrutiny. So the argument that somehow we misrepresented the Smith v. Daily Mail case is just not true.

With respect to the point about somehow this would open the door to the Edward Snowdens of the world being able to leak classified information with impunity, I pointed out in our argument that we're dealing with a dissemination restriction that only talks about information contained in public court records. There is no --

We think the dissemination restriction would be constitutional if it was limited to preventing the dissemination of certain sensitive personally identifiable information in these nonconfidential public records that are accessible on OCRA, but that's not what OCRA does. That's not what the dissemination restriction says. It says any data whatsoever.

And this is data that's contained not in confidential records. This isn't Pell. This isn't prison information. This isn't Seattle Times. It's not discovery. This is public court records or what's accessible at the courthouse. So that puts you under the Smith v. Daily Mail, Oklahoma Publishing, Soderberg types of cases.

Overbey did not discuss prior restraint because it was in a settlement agreement. Those are treated -- non-disparagement claims in a settlement agreement are

treated under a different standard. This is a government statute that prevents speech about public court records, and that puts it under the whole Smith v. Daily Mail line of cases.

THE COURT: All right. Thank you, Mr. Myers.

We have two other motions, a Motion to Amend and a Motion for Request for Judicial Notice. I take it there is opposition to those motions. Who wishes to speak? Ms. McNeill?

MS. MCNEILL: Yes, Your Honor.

MR. CARR: Your Honor, these are our motions, so do you want to hear from us first, or do you want to just go ahead and hear from the defendants?

THE COURT: Well, I guess I just wanted to short circuit this, but I'll be glad --

MR. CARR: That's fine, Your Honor. I just wanted to make sure. I'm happy to have Ms. McNeill go first.

MR. MYERS: I agree with that, Your Honor.

THE COURT: I'll hear any opposition and then, obviously, I'll hear the other side since it's your motion.

Go ahead, Ms. McNeill. Why should not the Motion to Amend be granted?

MS. MCNEILL: The Motion to Amend shouldn't be granted because, number one, I think the point is well taken that they haven't submitted a draft complaint to allow us to

see exactly what they're proposing to amend, but their motion does set forth what they would include in an amended complaint.

It appears that, number one, it's addressing the problem with the Lee Enterprise entities. They wanted to allege more facts, but they registered those entities with the Virginia State Corporation Commission the day before they filed their sur-reply. So I think those issues with the Lee Entities that we raised were cured the day before they filed their sur-reply so that the whole thing is now moot.

Second, the additional allegations that they want to add as to Hade to try to overcome his sovereign immunity is, again, their allegations, those factual claims that they want to add look at the access restriction and not the dissemination restriction.

There's no facts that are really relevant to that analysis, Your Honor. It is whether Hade has a special relationship with the statute that they are trying to enforce, and the statute says very plainly who has authority to enforce the dissemination restriction, and it's the clerk.

They want to make arguments that Hade or OES provided advice to the clerks about drafting their user agreements. Anyone who has been a lawyer knows that you can provide advice, but that doesn't give you authority to make the decisions.

The statute is very clear on who has authority. I don't think any facts can change that analysis whatsoever. Therefore, because the amendment would be futile and not change the legal analysis here, we're arguing it should be denied.

THE COURT: All right. Mr. Askin.

MR. ASKIN: Thank you, Your Honor. We only just want to add that we can't assess the futility requirement without having a proposed amended complaint. We cited three Western District of Virginia cases that have denied motions to amend where there is no proposed amended complaint.

We agree with plaintiffs' counsel that this is a discretionary authority, but we would urge the Court to exercise that discretion and deny the motion until there is a proposed pleading.

I don't know what -- I mean, if this Court makes a legal conclusion on the Motion to Dismiss and their proposed amended complaint just changes the wording, that would be futile. But without the proposed amended complaint, I can't really make that evaluation. Thank you.

THE COURT: Mr. Carr, are you going to speak to this?

MR. CARR: Mr. Myers will speak to the Motion to Amend.

THE COURT: All right. Thank you.

MR. MYERS: Briefly on that, and it is related to the request for judicial notice to some degree, again, these are things that the Court doesn't have to deal with if it finds, as in Hade 1, that the pleading sufficiently alleges a plausible claim that the dissemination restriction is not narrowly tailored and that the defendants fall within the Ex parte Young exception to sovereign immunity.

The argument that the Motion to Amend doesn't address the dissemination restriction is inaccurate in that one of the things that we would add would be the information that's in the e-mail exchange that was produced in Hade 1 that we've requested judicial notice of, which is an e-mail from Mr. Hade's own OES that says that they created the original version of the terms and conditions for OCRA access that the clerks use in their subscription agreements. I believe that the clerks' counsel said that they defer to OES for what they should do with respect to allowing OCRA access and the dissemination restriction.

We don't think we need to amend the complaint. There is enough there to show that, as in Hade 1, that defendant Hade falls well within Ex parte Young, but we could allege additional facts in that regard. We could, if necessary, allege additional facts as to why the dissemination restriction is not narrowly tailored and spell out some of the ways it could be, that there would be more

narrowly tailored ways to serve the same state interest.

But we've already talked about those here today, and because it's the government's burden to show that it is narrowly tailored, we don't really think we need to amend the complaint to allege all that detail, but we could if the Court thought it was appropriate.

The Court doesn't need a proposed amended complaint in front of it. The law is clear on that. The Fourth Circuit has held that a district court erred in denying a Motion to Amend that was made orally at a hearing.

Now, what it's also said is it doesn't have to reach the issue unless there was a Motion to Amend filed, which is why we filed one, right? But there are any sorts of ways in which a request for leave to amend can be made and approved. It does not require the submission of a proposed amended complaint. It's pretty clear here, and we put in our pleading what the amendment would include, and I think --

THE COURT: All right. I think I understand your argument there.

As to the motion requesting judicial notice, anything else you want to say about that, Mr. Myers?

MR. MYERS: I'll let Mr. Carr speak to that.

MR. CARR: What I was going to say, Judge, is, no, I don't have anything to add to what's in our pleadings, particularly in our reply brief where we go through each of

the items that we request judicial notice of and why they're relevant. They are offered to further support the allegations that are already in the complaint and would be in any amended complaint that would be necessary.

THE COURT: And, Ms. McNeill, anything further you want to the say to either of these motions?

MS. MCNEILL: Just very briefly, Your Honor. I'll note that in the stipulations of facts 32 through 34 that were attached to the complaint, it already addresses that VITA is the government agency that sets the security standard and provides the subscriber agreement that they want to talk about in an amendment.

And in those requests for judicial notice, the e-mails that were from whatever year those were from way predate what we're looking at now. Right now some model subscriber agreement is provided by a different government agency, VITA, not OES. However it was developed originally via those e-mails, it's just not relevant anymore.

THE COURT: Mr. Askin, anything you wish to say on behalf of your clients?

MR. ASKIN: No, Your Honor. Thank you.

THE COURT: All right. Well, thank you, counsel. I appreciate the arguments today. I'm going to take all of the motions under advisement, and I will try to rule as quickly as I can. Again, thank you. Our hearing today is concluded.

MR. MYERS: Your Honor, can I ask just a point of housekeeping before we conclude?

THE COURT: Sure.

MR. MYERS: Does the Court intent to issue a scheduling order before it rules on the merits because that would allow us to have a scheduling conference with counsel?

THE COURT: I really think I ought to consider the motions first before we get into that, but I do intend to, if I believe the case should go forward, enter a scheduling order.

MR. MYERS: Very good.

THE COURT: At this time I won't.

MR. MYERS: Okay. Thank you, Your Honor.

THE COURT: Thank you, counsel. We will now adjourn.

MR. ASKIN: Thank you, Your Honor.

MR. MYERS: I hope you feel better.

MS. MCNEILL: Feel better, Your Honor.

(Proceedings concluded at 12:04 p.m.)

CERTIFICATION

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_________________/s/_________________

Cynthia L. Bragg

July 7, 2026

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Abingdon Division

| | | |
|---|---|---|
| Courthouse News Service, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cv-0075 |
| | ) | |
| Karl L. Hade, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**NOTICE OF APPEAL**

Notice is hereby given that Karl R. Hade, in his official capacity as Executive Secretary of the Office of the Executive Secretary of the Supreme Court of Virginia, by counsel, appeals to the U.S. Court of Appeals for the Fourth Circuit this Court's Opinion and Order, ECF No. 73, which was entered on May 5, 2026.

Respectfully submitted,

KARL R. HADE

By Counsel:

/s/ Erin R. McNeill

Erin R. McNeill (VSB# 78816)*
Senior Assistant Attorney General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone (ERM): (804) 692-0598
Facsimile (ERM): (804) 371-0200
Email (ERM): EMcneill@oag.state.va.us
**Counsel of Record for Hade*

Jay C. Jones
*Attorney General of Virginia*

Gretchen E. Nygaard
*Deputy Attorney General*

Jacqueline C. Hedblom
*Senior Assistant Attorney General*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 18, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel of record.

/s/ Erin R. McNeill
Erin R. McNeill (VSB No. 78816)
Senior Assistant Attorney General

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Abingdon Division**

COURTHOUSE NEWS SERVICE, *et al.*,

Plaintiffs,

v. Civil Action No. 1:25-cv-00075-JPJ-PMS

KARL R. HADE, *et al.,*

Defendants.

**MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL**

Defendants Edward Jewett, in his official capacity as Clerk of the Circuit Court for the City of Richmond, Virginia, Brenda Hamilton, in her official capacity as Clerk of the Circuit Court for the City of Roanoke, Virginia, and Kelly Flannagan, in her official capacity as Clerk of the Circuit Court for the City of Bristol, Virginia, by counsel and under 28 U.S.C. § 1292(b), respectfully move this Court to certify its Order dated May 5, 2026 (ECF No. 73), for interlocutory appeal. The grounds for this motion are set forth in the memorandum in support filed simultaneously herewith.

Respectfully submitted,

**EDWARD JEWETT**, in his official capacity as Clerk of the Circuit Court for the City of Richmond, Virginia;

**BRENDA HAMILTON**, in her official capacity as Clerk of the Circuit Court for the City of Roanoke, Virginia; and

**KELLY FLANNAGAN**, in her official capacity as Clerk of the Circuit Court for the City of Bristol, Virginia

By Counsel

/s/ John P. O’Herron

William W. Tunner (VSB No. 38358)
William D. Prince IV (VSB No. 77209)
John P. O'Herron (VSB No. 79357)
Rachel W. Adams (VSB No. 92605)
Peter S. Askin (VSB No. 93371)
*Thompson*McMullan, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, Virginia 23219
Telephone: (804) 649-7545
Facsimile: (804) 780-1813
wtunner@t-mlaw.com
wprince@t-mlaw.com
joherron@t-mlaw.com
radams@t-mlaw.com
paskin@t-mlaw.com

*Counsel for Defendants Edward Jewett, in his official capacity as the Clerk of the Circuit Court for the City of Richmond, Virginia, Brenda Hamilton, in her official capacity as the Clerk of the Circuit Court for the City of Roanoke, Virginia, and Kelly Flannagan, in her official capacity as the Clerk of the Circuit Court for the City of Bristol, Virginia*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of June, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

Roger Myers, *pro hac vice* forthcoming
Rachel Matteo-Boehm, *pro hac vice* forthcoming
Carlie Tenenbaum, *pro hac vice* forthcoming
BRYAN CAVE LEIGHTON PAISNER LLP
3 Embarcadero Center, 7th Floor
2100 East Cary Street, Suite 310
San Francisco, CA 94111
Telephone: (415) 675-3400
roger.myers@bclplaw.com
rachel.matteo-boehm@bclplaw.com
carlie.tenenbaum@bclplaw.com

*Counsel for Plaintiffs Courthouse News Service, Lee Enterprises, Incorporated and Lee BHM LLC*

Erin R. McNeill, Esq.
Senior Assistant Attorney General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone (ERM): (804) 692-0598
Facsimile (ERM): (804) 371-0200
Email (ERM): EMcneill@oag.state.va.us

*Counsel for Karl R. Hade, in his official capacity as Executive Secretary of the Office of the Executive Secretary of the Supreme Court of Virginia*

Dabney J. Carr IV, Esq.
Lauren H. Miller, Esq.
TROUTMAN PEPPER LOCKE LLP
P.O. Box 1122
Richmond, Virginia 23218
Telephone: (804) 697-1200
Facsimile: (805) 697-1339
dabney.carr@troutman.com
lauren.h.miller@troutman.com

*Counsel for Plaintiffs Courthouse News Service, Lee Enterprises, Incorporated and Lee BHM LLC*

/s/ John P. O'Herron
John P. O'Herron (VSB No. 79357)
*Thompson*McMullan, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, Virginia 23219
Telephone: (804) 649-7545
Facsimile: (804) 780-1813
joherron@t-mlaw.com

*Counsel for Defendants Edward Jewett, in his official capacity as the Clerk of the Circuit Court for the City of Richmond, Virginia, Brenda Hamilton, in her official capacity as the Clerk of the Circuit Court for the City of Roanoke, Virginia, and Kelly Flannagan, in her official capacity as the Clerk of the Circuit Court for the City of Bristol, Virginia*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Abingdon Division**

COURTHOUSE NEWS SERVICE, *et al.*,

Plaintiffs,

v. Civil Action No. 1:25-cv-00075-JPJ-PMS

KARL R. HADE, *et al.,*

Defendants.

**MEMORANDUM IN SUPPORT OF MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL**

This case is already on appeal as to this Court's decision denying the defendants' Eleventh Amendment immunity, which stays this case as a matter of law. *See City of Martinsville v. Express Scripts, Inc*., 128 F.4th 265, 269 (4th Cir. 2025). This Court should certify two additional issues for the Fourth Circuit's consideration: (1) whether Code § 17.1-293(H) is a prior restraint subject to strict scrutiny; and (2) whether the plaintiffs have standing to assert their claim that Code § 17.1-293(H) is an unconstitutional prior restraint. Resolving both issues now satisfies the purpose and criteria of a 28 U.S.C. § 1292(b) interlocutory appeal.

For the reasons that follow, Defendants Edward Jewett, in his official capacity as Clerk of the Circuit Court for the City of Richmond, Brenda Hamilton, in her official capacity as Clerk of the Circuit Court for the City of Roanoke, and Kelly Flannagan, in her official capacity as Clerk of the Circuit Court for the City of Bristol (the "Defendant Clerks"), ask this Court to certify its standing and First Amendment rulings to the United States Court of Appeals for the Fourth Circuit.

**BACKGROUND FOR CERTIFYING STANDING AND PRIOR RESTRAINT ISSUES**

The plaintiffs assert a single claim in this case: that the Dissemination Restriction is an unconstitutional prior restraint on their speech in violation of the First Amendment. The defendants

filed Motions to Dismiss, arguing that they were entitled to Eleventh Amendment Immunity, that the plaintiffs lacked standing, and that the plaintiffs failed to state a claim that the Dissemination Restriction was a prior restraint on speech. Defendants' Motions to Dismiss, ECF Nos. 38, 39, 41 and 43; Mem. Supp. Mt. to Dismiss, ECF Nos. 40, 42, and 44.

On May 5, 2026, after briefing and oral argument, this Court denied Defendants' motions to dismiss. Mem. Op. and Order, ECF No. 73 (the "Order"). On May 19, 2026, and May 20, 2026, Defendants noticed their interlocutory appeal of this Court's denial of their motions to dismiss to the United States Court of Appeals for the Fourth Circuit. Notices of Appeal, ECF Nos. 75 and 78. Those appeals relate to the Eleventh Amendment immunity ruling, which is immediately appealable as a collateral order. Now, the Defendant Clerks seek this Court's certification under 28 U.S.C. § 1292(b) as to its standing and prior restraint rulings.

On standing, this Court ruled that the plaintiffs "plausibly alleged that the [Dissemination Restriction] infringes on their right to receive information" because they have alleged the existence of a "willing speaker" who would "provide them with copies of civil complaints from his OCRA account" but for the restriction. Order at 12. As to whether the Dissemination Restriction is a "prior restraint," the court found that "the plaintiffs have plausibly alleged that the Dissemination Restriction constitutes a prior restraint on speech for prohibiting the dissemination of certain information to the public." *Id.* at 15.

Because the Order fits the criteria for 1292(b) certification, and because prompt resolution of these issues serves the purposes of interlocutory appeal, this Court should grant this Motion.

## ARGUMENT

### 1. STANDARD FOR 28 U.S.C. § 1292(B) CERTIFICATION.

A district court may certify an order for interlocutory appeal if the order

- involves a controlling question of law;
- as to which there is substantial ground for difference of opinion; and
- an "immediate appeal from the order may materially advance the ultimate termination of the litigation."

28 U.S.C. § 1292(b). "A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution." *In re Trump*, 928 F.3d 360, 371 (2019) (internal quotation omitted) (emphasis removed). A district court "should not hesitate to certify an interlocutory appeal under § 1292(b) when a decision 'involves a new legal question or is of special consequence.'" *Id.* at 369 (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110–11 (2009)).

Although § 1292(b) certification is "strictly construed" and should be used "sparingly," interlocutory review is appropriate where the court of appeals "can quickly and cleanly . . . rule on a pure, controlling question of law without having to delve beyond the surface of the record to determine the facts." *United States ex rel. Michaels v. Agape Senior Community, Inc.*, 848 F.3d 330, 340 (4th Cir. 2017) (quotation modified and internal quotation marks omitted).

If the statutory criteria exist, this Court "has a '*duty* . . . to allow an immediate appeal to be taken.'" *In re Trump*, 928 F.3d at 369 (quoting *Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000)). When it does so, a district court must "state in writing" in an order that the elements are met, or "amend its order . . . to include the required permission or statement." 28 U.S.C. § 1292(b); Fed. R. App. P. 5(a)(3).

Because the Court's Order meets these elements, the defendants request certification under 28 U.S.C. § 1292(b). Counsel for the plaintiffs has indicated that they oppose this motion.

## 2. THE ORDER SATISFIES THE STANDARD FOR § 1292(B) CERTIFICATION.

This Court's Order meets the three criteria for interlocutory appeal regarding: (1) the holding that the plaintiffs have plausibly alleged that the Dissemination Restriction is a prior restraint on speech; and (2) the holding that the plaintiffs have alleged standing via the "willing speaker" doctrine.

### 2.1. Whether the Dissemination Restriction is a prior restraint.

#### 2.1.1. Whether the Dissemination Restriction is a prior restraint is a controlling question of law which could materially advance the end of litigation.

The plaintiffs assert a single claim in their Complaint: that Code § 17.1-293(H) is an unconstitutional *prior restraint* on speech that fails constitutional scrutiny. Compl. ¶ 87; Order at 14-15. If the statute is not a prior restraint on speech, the plaintiffs' lawsuit fails and should be dismissed. The issue, then, is a controlling question of law that would materially impact this litigation. *See Silverthorne Seismic, L.L.C. v. Sterling Seismic Servs., Ltd.*, 125 F.4th 593, 598 (5th Cir. 2025) ("Controlling questions thus 'include . . . whether a claim exists as a matter of law'") (quoting 19 James W. Moore et al., Moore's Federal Practice § 203.31[2] (3d ed. 2024)).

#### 2.1.2. There is substantial ground for difference of opinion as to whether the Dissemination Restriction is a prior restraint.

The issue is also one for which there is "[a] substantial ground for difference of opinion" and "where reasonable jurists might disagree on [its] resolution." *In re Trump*, 928 F.3d at 371.

At the outset, this is a question of first impression. The Dissemination Restriction reflects Virginia's legislative paradigm for making certain court records accessible securely and remotely. Its constitutionality, and indeed the nature of the rights implicated by the statute,

relates to fundamental principles regarding the administration of Virginia's courts. The constitutionality of the Dissemination Restriction has never been resolved by binding precedent in Virginia, though, and neither has the nature of the First Amendment right implicated by that statute. Both parties relied on case law from within and outside the Fourth Circuit to support their respective positions.

This Court found that the Dissemination Restriction is, or is at least plausibly alleged to be, a prior restraint. In support, this Court relied on Judge Gregory's dissent in *Courthouse News Serv. v. Hade*, 126 F. 4th 899 (4th Cir. 2025), and *Soderberg v. Carrion*, 999 F.3d 962, 966-67 (4th Cir. 2021). In addition to *Soderberg*, the plaintiffs cited several cases for their argument that strict scrutiny applied to the Dissemination Restriction because of what it does: specifically, they said, it is a restriction on speaking with the media. ECF No. 48 at 29-31. The defendants also cited several cases for the proposition that the clerks' post-speech discretion to revoke subscriber access was alone sufficient to find the Dissemination Restriction unconstitutional. *Id.* at 32.

On the other hand, the Fourth Circuit has already indicated it disagrees with Judge Gregory's conclusion that the Dissemination Restriction is a prior restraint: no one joined Judge Gregory in his dissenting opinion, and CNS' petition for rehearing en banc was denied in that case with a vote of 10-4. *See Courthouse News Serv. v. Smith*, 2025 U.S. App. LEXIS 10123 (Apr. 28, 2025). Notably, the district court's opinion in that case contrasts with this Court's decision: it held that the Dissemination Restriction was a constitutional time, place, and manner regulation. *See Courthouse News*, 126 F.4th at 906 (citing *Courthouse News Serv. v. Hade*, 631 F. Supp. 3d 349 (E.D. Va. 2022)).

Beyond the prior litigation, though, there is room for reasonable disagreement. *Soderberg* involved a statute that constituted a penal sanction, "prohibit[ed] and punish[ed]" speech, and

applied to the dissemination of speech available to "[t]he public generally." *Id.* at 964. Code § 17.1-293(H) bears none of these characteristics. Plus, multiple jurisdictions—including the Supreme Court of the United States—appear to interpret a "prior restraint" in such a way as to exclude the plain meaning of the Dissemination Restriction. *See Alexander v. United States*, 509 U.S. 544, 550 (1993) (defining a prior restraint as distinct from subsequent punishment and as an "administrative and judicial order forbidding certain communications when issued in advance of the time that such communications are to occur."); *Serafine v. Branaman*, 810 F.3d 354, 370 (5th Cir. 2016); *Novak v. City of Parma*, 932 F.3d 421, 432 (6th Cir. 2019) ("An action taken after the speech is expressed, like a punishment for disfavored speech, is not a prior restraint.").

Finally, there is substantial ground for difference of opinion that the Dissemination Restriction could ever constitute a prior restraint on speech when it affects only one means of obtaining otherwise-available speech, and when that contested means of access is not available to the general public. As the plaintiffs concede, the court records to which they seek access through OCRA are, in fact, already available to them at Virginia's courthouses. Compl. ¶¶ 63, 66. And the public at large does not have remote online access to court records in electronic format through OCRA, either. *Id.* ¶¶ 64, 65. The parties cited authority in support of both sides of this issue as well. *Compare Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984) (holding that an order that restricted distribution of information obtained one way did not cover information obtained by other means and thus was "not the kind of classic prior restraint that requires exacting First Amendment scrutiny") *and Pell v. Procunier*, 417 U.S. 817, 834-35 (1974) (holding that because the statute at issue did not "deny the press access to sources of information available to members of the general public," it did not abridge any First Amendment rights), *with*

*Soderberg*, 999 F.3d at 965-66, *and In re Murphy Brown, LLC*, 907 F.3d 788, 793 (4th Cir. 2018) (relating to gag orders).

~ ~ ~

Without re-litigating their Motions to Dismiss, the Defendant Clerks ask this Court to find that there exists substantial ground for difference of opinion on this issue. The plaintiffs, like all plaintiffs, are held to their pleading: they cannot prevail in this case if Code § 17.1-293(H) is *not* a prior restraint. This Court's finding that the plaintiffs have "plausibly alleged that the Dissemination Restriction constitutes a prior restraint on speech" potentially subjects the Dissemination Restriction to strict scrutiny analysis and imposes on the parties the concomitant implications on discovery that flow from that. Given the significance of that finding, and the cost and time of litigating in that analytical framework, this Court should certify the question to the Fourth Circuit to consider alongside the Eleventh Amendment immunity issue already before it.

### 2.2. Whether the plaintiffs have standing.

#### 2.2.1. Standing is a controlling question of law which could materially advance the end of litigation.

The Fourth Circuit has held that the question of standing satisfies 28 U.S.C. § 1292(b)'s criteria of being a controlling question of law the resolution of which could materially advance the end of litigation. *See In re Trump*, 928 F.3d at 371 (finding § 1292(b) jurisdiction to consider standing to sue the President under the Emoluments Clause).

The remaining question is whether there is substantial ground for a difference of opinion as to the plaintiffs' standing in this case. There is.

**2.2.2. There is substantial ground for difference of opinion as to whether the plaintiffs have standing for their claim based on their own independent "newsgathering rights"**

The plaintiffs have explicitly pursued a discrete form of standing: the right to receive speech from a willing speaker. This Court's Order finds standing under that theory. Order at 12.

As this Court is aware, the Fourth Circuit previously held that CNS lacked standing because the Dissemination Restriction "does not impose any restraint on [CNS'] speech, because it applies only to individuals with remote online access to court records. . . . Because the Dissemination Restriction does not apply to [CNS'] speech, it lacks standing to challenge that provision." *Courthouse News Serv.*, 126 F.4th at 917. The Court then considered whether CNS had standing because the Dissemination Restriction "indirectly injure[d] it by hindering its ability to acquire electronic court records from attorneys with OCRA access." *Id.* No, the Court held, because standing to receive speech required the existence of a willing speaker to convey that speech and CNS' "assertion of derivative injury" was too speculative. *Id.*

This is the standing door the plaintiffs explicitly seek to enter. Compl. ¶¶ 7-9. In their Complaint, the plaintiffs specifically recount the Fourth Circuit's holding and allege that attorney David Lacy is the speaker willing to speak: he is willing to share electronic court records obtained through OCRA with the plaintiffs but cannot because of the Dissemination Restriction. *Id.* ¶¶ 9-12. But in their briefing in opposition to the defendants' Motions to Dismiss, the plaintiffs move the goalposts. For example, at various points the plaintiffs couched their claim in terms of a right to "gather news," ECF No. 48 at 2, 9, 11, 13; a right to "access" information, *id.* at 9, 11; or a right to receive speech, *id.* at 12, 13-14. But these are not all the same thing. *See Houchins v. KQED, Inc.*, 438 U.S. 1, 3, 7-8, 10-12 (1978) (distinguishing "[t]he right to receive ideas and information," which was "not the issue in this case," from the right to gather news and

access information, which was); *S.H.A.R.K. v. Metro Parks Serving Summit County*, 499 F.3d 553, 559 (6th Cir. 2007) ("The case before us is about access to information as opposed to the right to expression. Although access cases are rooted in First Amendment principles, they have developed along distinctly different lines than have freedom of expression cases.") (citing cases). And notably, a right to "gather news" does not depend on the existence of a willing speaker. *See Davis v. East Baton Rouge Parish Sch. Bd.*, 78 F.3d 920, 927 (5th Cir. 1996) ("many circuits have found media standing to challenge confidentiality orders without expressly finding the existence of a willing speaker") (citing cases). Because different claims implicate different injuries, which in turn implicate different injuries-in-fact that could trigger standing, the plaintiffs' standing analysis leaves substantial room for difference of opinion that they have alleged standing here.

More importantly, the parties disagree—and cite authority in favor of their positions from various federal courts of appeal—as to whether the plaintiffs need to assert a derivative injury from their alleged willing speaker. The defendants cited numerous cases holding that in right-to-receive-speech cases, the receiver's rights are reciprocal of the speaker's: "the right to listen depends entirely on the infringement on the rights of a willing speaker." *Pa. Family Inst., Inc. v. Black*, 489 F.3d 156, 166 (3d Cir. 2007). Put differently, "if there is no infringement claimed by a speaker . . . there can be no violation of the right to listen." *Id.*; *see Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 757 (1976) ("If there is a right to advertise, there is a reciprocal right to receive the advertising"). Because the listener's rights are reciprocal of the speaker's, receivers of speech have rights no greater than the speaker. *See NAACP v. Jones*, 131 F.3d 1317, 1322 (9th Cir. 1997).

The plaintiffs, in turn, disavowed the notion that their standing derives from Mr. Lacy or other OCRA subscribers. ECF No. 48 at 2, 9 and 11-13 (repeatedly asserting a right to gather news as not derived from a willing speaker). The defendants' arguments in support of dismissal, the plaintiffs said, relied on the false premise "that CNS' and Lee's standing is derivative of OCRA subscribers." *Id.* at 15. Rather, the plaintiffs argue that they need not assert a derivative injury, and that their own right to "gather news" or "access" information stands independent of any injury suffered by the alleged willing speaker. *See* ECF No. 48 at 2, 9, 11, 13 (citing *Overbey v. Mayor of Baltimore*, 930 F.3d 215 (4th Cir. 2019); *In re Wall Street J.*, 601 F. App'x 215 (4th Cir. 2015 (per curiam); *CBS Inc. v. Young*, 522 F.2d 234 (6th Cir. 1975)).

There is substantial ground for difference of opinion as to whether these cases support the plaintiffs' asserted theory of standing. Notably, the Fourth Circuit has never opined on the discrete question of whether the receiver-of-speech must assert an injury that is derivative of the speaker's, although it used that framing when it ruled that CNS lacked standing. *See Courthouse News Serv.*, 126 F. 4th at 917 (holding that CNS' "assertion of derivative injury" was too speculative). This Court, then, should certify the issue to the Fourth Circuit for resolution.

**2.2.3. There is substantial ground for difference of opinion that the plaintiffs allege an injury-in-fact to Mr. Lacy's allegedly chilled speech.**

Finally, there is good reason to think the Fourth Circuit would require more than has been pleaded to satisfy standing for a prior restraint claim. A prior restraint claim is "based on a restriction that chills potential speech before it happens, rather than an adverse action taken in response to actual speech." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1182 (10th Cir. 2010). As such, to "amount to a judicially cognizable injury in fact," the chilling effect must "arise from an objectively justified fear of real consequences." *Id.* (cleaned up). "[F]ears of

[future] enforcement that are 'imaginary' or 'wholly speculative' are insufficient to confer standing." *Rock for Life UMBC v. Hrabowski*, 411 F. App'x 541, 547 (4th Cir. 2010) (unpublished) (quoting *Babbit v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979)). "[A] credible threat of prosecution or other consequences following from the statute's enforcement" can satisfy these requirements. *Id.* (internal quotation marks omitted); *see Ind. Right to Life, Inc. v. Shepard*, 507 F.3d 545, 549-50 (7th Cir. 2007) (finding that in a right-to-listen case, the alleged threat of enforcement against the willing speakers failed to suffice for standing).

The Complaint here fails to satisfy this standard. If the plaintiffs' rights to receive speech derive reciprocally from Mr. Lacy's right to speak, then no injury to Mr. Lacy's speech rights means there is also no injury to the plaintiffs' right-to-listen rights. But the plaintiffs do not allege any objective threat of enforcement or objectively justified fear on Mr. Lacy's part that the defendants will enforce their subscriber agreement against him. Not only do the plaintiffs fail to satisfy this threshold requirement, but their goalpost moving as to what their claim and theory of standing is means they do not even attempt to do so. After all, if they are asserting a stand-alone right to gather news that exists independent of a willing speaker and that is curtailed by a prior restraint, they would not need to assert injury-in-fact to Mr. Lacy.

~ ~ ~

Like its finding on prior restraint, this Court's finding that the plaintiffs have alleged standing merits appellate review. This Court should certify both questions pursuant to 28 U.S.C. § 1292(b) to allow the Fourth Circuit the opportunity to decide whether to accept the certification of those issues for appellate review.

Respectfully submitted,

**EDWARD JEWETT**, in his official capacity as
Clerk of the Circuit Court for the City of Richmond,
Virginia;

**BRENDA HAMILTON**, in her official capacity as
Clerk of the Circuit Court for the City of Roanoke,
Virginia; and

**KELLY FLANNAGAN**, in her official capacity as
Clerk of the Circuit Court for the City of Bristol,
Virginia

By Counsel

/s/ John P. O'Herron

William W. Tunner (VSB No. 38358)
William D. Prince IV (VSB No. 77209)
John P. O'Herron (VSB No. 79357)
Rachel W. Adams (VSB No. 92605)
Peter S. Askin (VSB No. 93371)
*Thompson*McMullan, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, Virginia 23219
Telephone: (804) 649-7545
Facsimile: (804) 780-1813
wtunner@t-mlaw.com
wprince@t-mlaw.com
joherron@t-mlaw.com
radams@t-mlaw.com
paskin@t-mlaw.com

*Counsel for Defendants Edward Jewett, in his official capacity as the Clerk of the Circuit Court for the City of Richmond, Virginia, Brenda Hamilton, in her official capacity as the Clerk of the Circuit Court for the City of Roanoke, Virginia, and Kelly Flannagan, in her official capacity as the Clerk of the Circuit Court for the City of Bristol, Virginia*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of June, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

Roger Myers, *pro hac vice* forthcoming
Rachel Matteo-Boehm, *pro hac vice* forthcoming
Carlie Tenenbaum, *pro hac vice* forthcoming
BRYAN CAVE LEIGHTON PAISNER LLP
3 Embarcadero Center, 7th Floor
2100 East Cary Street, Suite 310
San Francisco, CA 94111
Telephone: (415) 675-3400
roger.myers@bclplaw.com
rachel.matteo-boehm@bclplaw.com
carlie.tenenbaum@bclplaw.com

*Counsel for Plaintiffs Courthouse News Service, Lee Enterprises, Incorporated and Lee BHM LLC*

Erin R. McNeill, Esq.
Senior Assistant Attorney General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone (ERM): (804) 692-0598
Facsimile (ERM): (804) 371-0200
Email (ERM): EMcneill@oag.state.va.us

*Counsel for Karl R. Hade, in his official capacity as Executive Secretary of the Office of the Executive Secretary of the Supreme Court of Virginia*

Dabney J. Carr IV, Esq.
Lauren H. Miller, Esq.
TROUTMAN PEPPER LOCKE LLP
P.O. Box 1122
Richmond, Virginia 23218
Telephone: (804) 697-1200
Facsimile: (805) 697-1339
dabney.carr@troutman.com
lauren.h.miller@troutman.com

*Counsel for Plaintiffs Courthouse News Service, Lee Enterprises, Incorporated and Lee BHM LLC*

/s/ John P. O'Herron
John P. O'Herron (VSB No. 79357)
*Thompson*McMullan, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, Virginia 23219
Telephone: (804) 649-7545
Facsimile: (804) 780-1813
joherron@t-mlaw.com

*Counsel for Defendants Edward Jewett, in his official capacity as the Clerk of the Circuit Court for the City of Richmond, Virginia, Brenda Hamilton, in her official capacity as the Clerk of the Circuit Court for the City of Roanoke, Virginia, and Kelly Flannagan, in her official capacity as the Clerk of the Circuit Court for the City of Bristol, Virginia*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Abingdon Division**

COURTHOUSE NEWS SERVICE; LEE ENTERPRISES, INCORPORATED; AND LEE BHM LLC, PUBLISHER OF THE RICHMOND TIMES-DISPATCH, THE ROANOKE TIMES, BRISTOL HERALD COURIER, LYNCHBURG NEWS AND ADVANCE, FREDERICKSBURG FREE LANCE STAR AND THE DAILY PROGRESS.

Plaintiff,

v.

KARL R. HADE, in his official capacity as Executive Secretary of the Office of Executive Secretary of the Supreme Court of Virginia,

and

EDWARD JEWETT, in his official capacity as Clerk of the Circuit Court for the City of Richmond, Virginia,

and

BRENDA HAMILTON, in her official capacity as Clerk of the Circuit Court for the City of Roanoke, Virginia,

and

KELLY FLANNAGAN, in her official capacity as Clerk of the Circuit Court for the City of Bristol, Virginia

Defendants.

Civil Action No. 1:25-cv-00075-JPJ-PMS

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO CERTIFY AND STAY**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..... 1

I. DEFENDANTS DO NOT MEET ANY OF THE CRITERIA FOR CERTIFICATION, LET ALONE ALL OF THEM, AS REQUIRED FOR INTERLOCUTORY REVIEW ..... 3

A. The Standing Ruling Applied Clear Law, Which Leaves No Substantial Doubt Over Willing Speaker Requirements, and Reversal Could Only Result in Amendment ..... 5

B. Defendants Fare No Better in Seeking to Certify the Prior Restraint Ruling ..... 7

C. Defendants Did Not Carry Their Burden of Showing Exceptional Circumstances ..... 12

II. DEFENDANTS' MOTION TO STAY SHOULD BE DENIED OR LIMITED TO 90 DAYS ..... 14

CONCLUSION ..... 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. United States*,
509 U.S. 544 (1993).....9

*Audio MPEG, Inc. v. Creative Labs*,
2006 WL 8459380 (E.D. Va. Feb. 14, 2006).....5

*Baggett v. Bullitt*,
377 U.S. 360 (1964).....2

*Baudin v. Palo Alto Unified Sch. Dist.*,
2026 WL 370395 (N.D. Cal. Feb. 10, 2026).....10

*Billups v. City of Charleston, S.C.*,
961 F.3d 673 (4th Cir. 2020).....9

*CFPB v. Nexus Servs.*,
2023 WL 5019529 (W.D. Va. Aug. 7, 2023).....4

*City of Lakewood v. Plain Dealer Pub'g Co.*,
486 U.S. 750 (1988).....10

*City of Martinsville v. Express Scripts, Inc.*,
128 F.4th 265 (4th Cir. 2025).....14

*Coakley v. Welch*,
877 F.2d 304 (4th Cir. 1989).....13

*Cooke-Bates v. Bayer Corp.*,
2010 WL 4789838 (E.D. Va. Nov. 16, 2010).....3

*Cooper v. Dillon*,
403 F.3d 1208 (11th Cir. 2005).....9

*Courthouse News Serv. v. Hade*,
580 F. Supp. 3d 289 (E.D. Va. 2022).....2, 8

*Courthouse News Serv. v. Hade*,
631 F. Supp. 3d 349 (E.D. Va. 2022).....11

*Courthouse News Serv. v. Smith*,
126 F.4th 899 (4th Cir. 2025)..... *passim*

*CREW v. Trump*
953 F.3d 178 (2d Cir. 2019), *as amended* (Mar. 20, 2020) ....................1

*Davis v. E. Baton Rouge Par. Sch. Bd.*,
78 F.3d 920 (5th Cir. 1996) ....................8

*Difelice v. U.S. Airways, Inc.*,
404 F. Supp. 2d 907 (E.D. Va. 2005) ....................13

*Doe v. Pub. Citizen*,
749 F.3d 246 (4th Cir. 2014) ....................15

*Does v. Musk*,
2026 WL 242062 (D. Md. Jan. 29, 2026) ....................6

*Drummond Co. v. Conrod & Scherer, LLP*,
885 F.3d 1324 (11th Cir. 2018) ....................4, 12

*Duke Univ. v. Endurance Risk Sols. Assurance Co.*,
2021 WL 4597069 (E.D.N.C. Oct. 5, 2021) ....................13

*E. Tennessee Nat. Gas Co. v. 3.04 Acres in Patrick Cnty.*,
2006 WL 626416 (W.D. Va. Mar. 9, 2006) ....................13

*Fannin v. CSX Transp.*,
873 F.2d 1438, 1989 WL 42583 (4th Cir. 1989) .................... *passim*

*Geo Grp., Inc. v. Menocal*,
607 U.S. --, 146 S. Ct. 774 (2026) ....................1

*Gilmore v. Jones*,
2019 WL 4417490 (W.D. Va. Sept. 16, 2019) ....................6

*Giovani Carandola, Ltd. v. Bason*,
303 F.3d 507 (4th Cir. 2002) ....................9

*Hall v. Greystar Mgmt. Servs.*,
193 F. Supp. 3d 522 (D. Md. 2016) ....................11

*Hayes v. U.S. Bank Tr., N.A.*,
2024 WL 2155267 (W.D. Va. May 13, 2024) ....................3

*Houchins v. KQED, Inc.*,
438 U.S. 1 (1978) ....................7

*Hunter v. Lasership, Inc.*,
2025 WL 1774661 (E.D. Va. June 24, 2025) ....................6, 7

*Indus. Servs. Grp. v. Dobson*,
68 F.4th 155 (4th Cir. 2023) ....................1

*Int'l Refugee Assist. Project v. Trump*,
404 F. Supp. 3d 946 (D. Md. 2019) ....................5

*Commonwealth ex rel. Integra Rec LLC v. Countrywide Sec. Corp.*,
2015 WL 3540473 (E.D. Va. June 3, 2015) ....................13

*Karanik v. Cape Fear Acad., Inc.*,
2022 WL 16556774 (E.D.N.C. Oct. 31, 2022) ....................2, 12, 14, 15

*KPMG Peat Marwick, LLP v. Est. of Nelco, Ltd.*,
250 B.R. 74 (E.D. Va. 2000) ....................3

*Liverman v. City of Petersburg*,
844 F.3d 400 (4th Cir. 2016) ....................10

*McDaniel v. Mehfoud*,
708 F. Supp. 754 (E.D. Va. 1989) ....................11

*Medomsley Steam Shipping Co. v. Elizabeth River Terminals, Inc.*,
317 F.2d 741 (4th Cir. 1963) ....................12

*Montgomery v. Johnson*,
2008 WL 5422866 (W.D. Va. Dec. 30, 2008) ....................12, 16

*Moore v. Blue Ridge Bankshares, Inc.*,
2023 WL 12007530 (W.D. Va. June 21, 2023) ....................4, 5, 6

*Moore v. Virginia Cmty. Bankshares, Inc.*,
666 F. Supp. 3d 547 (W.D. Va. 2023) ....................5

*In re Murphy-Brown, LLC*,
907 F.3d 788 (4th Cir. 2018) ....................11

*Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*,
768 F. Supp. 3d 735 (D. Md. 2025) ....................14

*Nat'l Ass'n of Immigr. Judges v. Owen*,
160 F.4th 100 (4th Cir. 2025) ....................10

*Nat'l Fed'n of Blind v. FTC*,
303 F. Supp. 2d 707 (D. Md. 2004) ....................10

*Nebraska Press Ass'n v. Stuart*,
427 U.S. 539 (1976) ....................10, 11

*Nken v. Holder*,
556 U.S. 418 (2009)....................14

*Ostergren v. Frick*,
2020 WL 1501918 (W.D. Mich. Mar. 30, 2020)....................9

*Overbey v. Mayor of Baltimore*,
930 F.3d 215 (4th Cir. 2019)....................2, 5, 7, 9

*Pell v. Procunier*,
417 U.S. 817 (1974)....................11

*Prince v. Johnson Health Tech Trading, Inc.*,
2023 WL 3190403 (W.D. Va. May 1, 2023)....................4, 5, 6, 12

*Puryear v. Cnty. of Roanoke*,
71 F. Supp. 2d 551 (W.D. Va. 1999)....................2, 15

*Puryear v. Cnty. of Roanoke*,
214 F.3d 514 (4th Cir. 2000)....................2

*Pyott-Boone Elecs. Inc. v. IRR Tr. for Donald L. Fetterolf Dated Dec. 9, 1997*,
2013 WL 12318490 (W.D. Va. Mar. 21, 2013)....................2, 13

*Rivers v. United States*,
2020 WL 6021465 (W.D. Va. Oct. 9, 2020)....................14

*United States ex rel. Schnupp v. Blair Pharmacy*,
2025 WL 1331906 (D. Md. May 7, 2025)....................4, 11

*Sealed Plaintiff 1 v. Front*,
2024 WL 3642414 (E.D. Va. Aug. 2, 2024)....................5, 6, 7

*Seattle Times Co. v. Rhinehart*,
467 U.S. 20....................11

*Simpson v. Norfolk S. Ry. Co.*,
2020 WL 6047695 (W.D. Va. Oct. 13, 2020)....................7

*Slone v. State Auto Prop. & Cas. Ins. Co.*,
2021 WL 687697 (S.D.W. Va. Feb. 22, 2021)....................15

*Soderberg v. Carrion*,
999 F.3d 962 (4th Cir. 2021)....................8, 11

*Stephens v. Cnty. of Albemarle*,
2005 WL 3533428 (W.D. Va. Dec. 22, 2005)....................10

*Stephens v. Cnty. of Albemarle*,
524 F.3d 485 (4th Cir. 2008) ....................5

*Suri v. Trump*,
2025 WL 1806692 (4th Cir. July 1, 2025)....................15

*Swint v. Chambers Cnty. Comm'n*,
514 U.S. 35 (1995)....................1

*Switzerland Cheese Ass'n v. E. Horne's Market, Inc.*,
385 U.S. 23 (1966)....................3

*Taylor v. Roswell Indep. Sch. Dist.*,
713 F.3d 25 (10th Cir. 2013) ....................9

*Terry v. June*,
368 F. Supp. 2d 538 (W.D. Va. 2005) ....................13

*Trump v. D.C.*,
141 S. Ct. 1262 (2021)....................1

*In re Trump*,
928 F.3d 360 (4th Cir. 2019) ....................1, 4, 5, 6

*In re Trump*,
958 F.3d 274 (4th Cir. 2020) (en banc) ....................1, 4, 5, 6

*United Co. v. Keenan*,
2007 WL 9782467 (W.D. Va. Nov. 21, 2007) ....................1, 3, 12

*United States v. Moore*,
703 F. Supp. 455 (E.D. Va. 1988) ....................13

*In re Wall St. J.*,
601 F. App'x 215 (4th Cir. 2015)....................5, 15

*Young v. Sheetz, Inc.*,
998 F. Supp. 670 (W.D. Va. 1998)....................3, 11

*Zinski v. Liberty Univ., Inc.*,
2025 WL 1001163 (W.D. Va. Apr. 3, 2025)....................6

**Constitutional Provisions & Statutes**

U.S. Const., Amend. I.................... *passim*

28 U.S.C. § 1292(b).................... *passim*

Virginia Code § 17.1-293(H).................... *passim*

## INTRODUCTION

"Finality as a condition of review is an historic characteristic of federal appellate procedure." *Geo Grp., Inc. v. Menocal*, 607 U.S. --, 146 S. Ct. 774, 781 (2026) (quoting *Cobbledick v. United States*, 309 U.S. 323, 324 (1940)). Denial of a motion to dismiss on sovereign immunity grounds is among the "'small class' of decisions" in which "the finality rule gives ground and allows interlocutory appeals" under the collateral order doctrine. *Id.* (quoting *Cohen v. Beneficial Indus, Loan Corp.*, 337 U.S. 541, 546 (1949)).

All Defendants noticed appeals from that denial (Docs. 77, 78), but the Fourth "Circuit's authority immediately to review the District Court's denial of" sovereign immunity "did not include authority to review … the unrelated question[s]" in the Court's Opinion and Order of May 5 (Doc. 73), including on standing and "liability." *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 51 (1995); *Indus. Servs. Grp. v. Dobson*, 68 F.4th 155, 167 (4th Cir. 2023) (standing). Defendant Clerks thus filed a Motion to Certify Order for Interlocutory Appeal under 28 U.S.C. § 1292(b) (Doc. 87) but fail to demonstrate the "'exceptional circumstances'" this Court recognizes are required to "'justify a departure from the basic policy limiting appellate review to final judgments.'" *United Co. v. Keenan*, 2007 WL 9782467, *1 (W.D. Va. Nov. 21, 2007).[1] And their motion rests on a case the Circuit "subsequently agreed to hear … en banc, vacating the panel opinion" and rejecting the premise for which Defendants cite it. *In re Trump*, 958 F.3d 274, 281 (4th Cir. 2020) (en banc) (vacating *In re Trump*, 928 F.3d 360 (4th Cir. 2019)).[2]

---

[1] Unless otherwise noted, citations for quotations within quotations are omitted, emphases in ***bold italics*** are added and those only in *italics* were in the original.

[2] The panel decision on standing was also rejected by the Second Circuit when it reversed the district court ruling on which the panel relied to find a "'substantial ground for difference of opinion exists,'" *Trump*, 928 F.3d at 371. *CREW v. Trump* 953 F.3d 178, 194-98 (2d Cir. 2019), *as amended* (Mar. 20, 2020). The Supreme Court vacated as moot the Second Circuit and Fourth Circuit en banc decisions shortly after Trump left office. *Trump v. D.C.*, 141 S. Ct. 1262 (2021).

Defendant Clerks Motion seeks to certify the Court's rulings that Courthouse News Service ("CNS"), Lee Enterprises, Incorporated, and Lee BHM LLC ("Lee," and with CNS, "Plaintiffs") have "standing to bring this suit" under, among others, *Courthouse News Serv. v. Smith*, 126 F.4th 899, 917 (4th Cir. 2025) and *Overbey v. Mayor of Baltimore*, 930 F.3d 215, 228 (4th Cir. 2019), and that they "plausibly alleged" that Virginia Code § 17.1-293(H) (the "Dissemination Restriction") "constitutes a prior restraint on speech." Order 10-12, 14-15; Mem. in Support of Mot. to Certify Order for Interlocutory Appeal 1 (Doc. 88) ("Mem.").

However, "resolution of these issues would not terminate the case." *Pyott-Boone Elecs. Inc. v. IRR Tr. for Donald L. Fetterolf Dated Dec. 9, 1997*, 2013 WL 12318490, *6 (W.D. Va. Mar. 21, 2013); *see Smith*, 126 F.4th at 917; *Courthouse News Serv. v. Hade*, 580 F. Supp. 3d 289 (E.D. Va. 2022) ("*Hade I*"). As this Court has observed, that "stand[s] in contrast to the situations … in which the Fourth Circuit has generally approved of certification of an immediate appeal." *Pyott-Boone*, 2013 WL 12318490, *6. The resulting delay would therefore be inimical not only to the purposes underlying § 1292(b), but also the First Amendment. *See Baggett v. Bullitt*, 377 U.S. 360, 378-79 (1964) ("piecemeal adjudication … delaying ultimate adjudication on the merits … may inhibit the exercise of First Amendment freedoms" in the interim).

As for Defendants' Joint Motion to Stay, it is unnecessary for a stay "as a matter of law" on their sovereign immunity appeal, Mem. 1, and can be denied. There is no basis for a stay on an interlocutory appeal that should not be granted – or, indeed, even if for some reason it is. *Karanik v. Cape Fear Acad., Inc.*, 2022 WL 16556774, *6-7 (E.D.N.C. Oct. 31, 2022) (appeal certified but "public interest" weighed against issuing stay). Any stay should be limited to "not more than ninety days," which the Fourth Circuit can extend if necessary. *Puryear v. Cnty. of Roanoke*, 71 F. Supp. 2d 551, 554 (W.D. Va. 1999), *aff'd*, 214 F.3d 514 (4th Cir. 2000).

**I.**

**DEFENDANTS DO NOT MEET ANY OF THE CRITERIA FOR CERTIFICATION, LET ALONE ALL OF THEM, AS REQUIRED FOR INTERLOCUTORY REVIEW**

CNS and Lee "begin[] by emphasizing the gravity of the relief [Defendant Clerks] seek[]. Certification for interlocutory review under § 1292(b) is an 'extraordinary remedy' available only in 'exceptional situations.'" *Cooke-Bates v. Bayer Corp.*, 2010 WL 4789838, *2 (E.D. Va. Nov. 16, 2010) (quoting *Fannin v. CSX Transp.*, 873 F.2d 1438, 1989 WL 42583, *2 (4th Cir. 1989)). "[A] district court's discretion to certify an appeal under § 1292(b) [i]s 'circumscribed' and reserved for 'pivotal and debatable' orders." *Id.* (quoting *Swint,* 514 U.S. at 46). "As an exception to the general rule that a party may appeal only a final judgment," *Young v. Sheetz, Inc.*, 998 F. Supp. 670, 672-73 (W.D. Va. 1998), "the Fourth Circuit has stated that a § 1292(b) motion 'should be used sparingly and ... its requirements must be strictly construed.'" *Keenan*, 2007 WL 9782467 at *1 (quoting *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989)). "'[T]o protect the integrity of the congressional policy against piecemeal appeals,' *Switzerland Cheese Ass'n v. E. Horne's Market, Inc.,* 385 U.S. 23, 25 (1966)," interlocutory review "is not to be granted lightly." *Fannin.*, 873 F.2d 1438 at *2.

To certify an interlocutory appeal, § 1292(b) requires the court to find "that (1) the order involves a controlling question of law; (2) there is substantial ground for difference of opinion regarding the question of law; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Keenan*, 2007 WL 9782467 at *1. "All three of these criteria must be satisfied for the court to grant leave to appeal an interlocutory order." *Hayes v. U.S. Bank Tr., N.A.*, 2024 WL 2155267, *2 (W.D. Va. May 13, 2024); *accord, e.g., KPMG Peat Marwick, LLP v. Est. of Nelco, Ltd.*, 250 B.R. 74, 79 (E.D. Va. 2000) ("If any one element is unsatisfied, leave to appeal cannot be granted.").

Defendant Clerks contend that if all three "statutory criteria exist, this court 'has "a *duty* … to allow an immediate appeal."'" Mem. 3 (quoting *Trump*, 928 F.3d at 369). But that is not the law. Not only was that opinion vacated, the en banc court held "'the President has not shown that he is entitled to a writ of mandamus compelling the district court to certify its orders for interlocutory review under § 1292(b).'" *United States ex rel. Schnupp v. Blair Pharmacy*, 2025 WL 1331906, *14 n.16 (D. Md. May 7, 2025) (rejecting same theory) (quoting *Trump*, 958 F.3d at 285), because the district court did not have "'a duty to do so.'" *Trump*, 958 F.3d at 281-82.

Rather, as courts have held before and after *Trump*, "[e]ven if the movant satisfies all three elements required to certify an order for appeal, 'the district court has unfettered discretion to decline to certify an interlocutory appeal if exceptional circumstances are absent.'" *Moore v. Blue Ridge Bankshares, Inc.*, 2023 WL 12007530, *2 (W.D. Va. June 21, 2023) (quoting *Prince v. Johnson Health Tech Trading, Inc.*, 2023 WL 3190403, *2 (W.D. Va. May 1, 2023) (quoting *Manion v. Spectrum Healthcare Res.*, 966 F. Supp. 2d 561, 567 (E.D.N.C. 2013)); *accord, e.g., Drummond Co. v. Conrod & Scherer, LLP*, 885 F.3d 1324, 1336 (11th Cir. 2018).

The point is moot, however, because neither ruling satisfies any of the elements, let alone all of them. Nor do the Clerks show exceptional circumstances, even though they "'carr[y] 'the burden of persuading the court … that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Fannin*, 873 F.3d 438 at *2 (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 475 (1978)); *accord, e.g., CFPB v. Nexus Servs.*, 2023 WL 5019529, *7 (W.D. Va. Aug. 7, 2023). Consequently, "defendants have not met their ***onerous burden*** to demonstrate that the requirements for a discretionary interlocutory appeal have been satisfied or that this is the rare case where extraordinary circumstances justify an interlocutory appeal." *Prince*, 2023 WL 3190403 at *3.

**A. The Standing Ruling Applied Clear Law, Which Leaves No Substantial Doubt Over Willing Speaker Requirements, and Reversal Could Only Result in Amendment**

Although "[s]tanding is a threshold jurisdictional in[quiry]," *Moore v. Virginia Cmty. Bankshares, Inc.*, 666 F. Supp. 3d 547, 553 (W.D. Va. 2023), it is often found "not appropriate" for "[i]nterlocutory appeal." *Moore*, 2023 WL 12007530 at *2 (not "a pure, controlling question of law"); *Sealed Plaintiff 1 v. Front*, 2024 WL 3642414, *5 (E.D. Va. Aug. 2, 2024) ("not a matter of first impression, and substantial ground for disagreement … does not exist"); *Audio MPEG, Inc. v. Creative Labs*, 2006 WL 8459380, *4 (E.D. Va. Feb. 14, 2006) ("any immediate appeal of the standing issue would not terminate litigation"); *Prince*, 2023 WL 3190403 at *3 (appeal would not "materially advance the outcome" ). The same result should follow here.

On the first and third elements, Defendant Clerks' ***only*** argument is that the panel opinion in *Trump*, 928 F.3d at 371, established, apparently as a matter of law, that "the question of standing satisfies § 1292(b)'s criteria of being a controlling question of law the resolution of which could materially advance the end of the litigation." Mem. 7. That is plainly not true.

Not only was that opinion vacated and its analysis rejected, "[i]n concluding that certification was warranted, the [panel] highlighted that the district court was the 'first ever to permit a party to pursue relief under the Emoluments Clauses' … [and] presented 'novel and difficult constitutional questions,' 'has national significance,' and 'could result in an unnecessary intrusion into the duties and affairs of a sitting president.'" *Int'l Refugee Assist. Project v. Trump*, 404 F. Supp. 3d 946, 950-51 (D. Md. 2019) (quoting *Trump*, 928 F.3d at 368-70).

That is not this case. The standing issue here is neither "'novel'" nor "'difficult.'" The Fourth Circuit has repeatedly held a "willing speaker" will support media standing to challenge a restriction on the speaker's ability to provide information. *Smith*, 126 F.4th at 917; *Overbey*, 930 F.3d at 228; *In re Wall St. J.*, 601 F. App'x 215, 218 (4th Cir. 2015); *see also Stephens v. Cnty.*

*of Albemarle*, 524 F.3d 485, 492 (4th Cir. 2008). The Court's task was not to decide a pure question of law, but to apply settled law to the facts alleged. Order 11-12. But "'whether the district court properly applied settled law to the facts [alleged] or evidence of a particular case'" on standing does not present "'a pure, controlling question of law." *Moore*, 2023 WL 12007530 at *2 (quoting *United States ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 341 (4th Cir. 2017)); *accord, e.g., Does v. Musk*, 2026 WL 242062, *2 (D. Md. Jan. 29, 2026).

Moreover, even a pure "'question of law would not be controlling "if the litigation would necessarily continue regardless of how that question were decided."'" *Zinski v. Liberty Univ., Inc.*, 2025 WL 1001163, *2 (W.D. Va. Apr. 3, 2025); *Fannin*, 873 F.3d 438 at *5. That is the case here; even if the Fourth Circuit could find David Lacy did not qualify as a willing speaker, any "'dismissal for lack of standing ... must be one without prejudice,'" *Smith*, 126 F.4th at 917, and CNS and Lee could amend to address whatever deficiency the Circuit identified.[3]

Finally, Defendant Clerks' confusion over, and attempt to relitigate, willing-speaker standing "fail[s] to assert a ground on which a substantial difference of opinion … could exist." *Sealed Plaintiff 1*, 2024 WL 3642414 at *5 ("A litigant's disagreement with a court's ruling does

[3] Some cases say issues may be "controlling, even though their resolution 'would not completely end the litigation,' [if] an immediate appeal would be "'serious to the conduct of the litigation,'" *Prince*, 2023 WL 3190403 at *2, such as by 'substantially shorten[ing] the litigation.'" *Id.* (quoting *Trump*, 928 F.3d at 371). But *Trump* merged the first element with the third. 928 F.3d at 371 ("'§ 1292(b) requires that resolution of a "controlling question of law ... may materially advance the ultimate termination of the litigation." … [This] means that resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation.'"). Indeed, this very standard has been applied to the third element, *Hunter v. Lasership, Inc.*, 2025 WL 1774661, *2 n.5 (E.D. Va. June 24, 2025); *see Gilmore v. Jones*, 2019 WL 4417490, *6 (W.D. Va. Sept. 16, 2019) (citing *Trump* on third element). And, as shown, "any adverse ***appellate ruling on standing*** would have ***little impact on advancing the termination of this case*** because Plaintiffs would have a substantial basis to seek, and the Court thus would almost certainly have to grant, leave to amend to insert the additional facts that would more conclusively demonstrate standing." *Musk*, 2026 WL 242062 at *3.

not establish a substantial ground for difference of opinion."). "A substantial ground for difference of opinion arises ***only if the disagreement on controlling law exists between courts*** rather than parties." *Simpson v. Norfolk S. Ry. Co.*, 2020 WL 6047695, *3 (W.D. Va. Oct. 13, 2020).[4] "Additionally, a simple disagreement between courts will not merit certification; rather, a substantial ground for disagreement may arise when there is a novel and difficult issue of first impression, or if there is a circuit split and the controlling circuit has not commented on the conflicting issue." *Id.*; *accord, e.g., Hunter*, 2025 WL 1774661 at *2 n.4.

Defendant do not cite any "disagreement on controlling law between the courts." Indeed, they ignore controlling Fourth Circuit law, which makes clear the "right to gather news" is part and parcel of the "'right to receive information and ideas from a willing speaker.'" *Overbey*, 930 F.3d at 227-28 (quoting *Stephens*, 524 F.3d at 491).[5] Instead they cite inapposite "'non-binding precedent in other circuits'" that does "'not constitute substantial grounds for a difference of opinion'" even if it could "'counsel a different result.'" *Front*, 2024 WL 3642414 at *4.[6]

**B. Defendants Fare No Better in Seeking to Certify the Prior Restraint Ruling**

The Complaint alleges that by restraining subscribers from redistributing any information accessed through OCRA, the Dissemination Restriction "infringe[s] Plaintiffs' First Amendment rights … to gather, disseminate and read about newsworthy information." Compl., ¶ 62; *see id.*

[4] It is thus irrelevant if "the parties disagree" over whether "plaintiffs need to assert a derivative injury from their willing speaker." Mem. 9. It is also mistaken; Plaintiffs' injury did derive from Lacy's injury in being restrained from providing CNS and Lee information. Order 12.

[5] Defendant Clerks' argument to the contrary rests on a fundamental misreading of *Houchins v. KQED, Inc.*, 438 U.S. 1 (1978), which declined to extend the recognized "right to gather news and the right to receive information" to give the media a "special right of access to government-controlled sources of information" not otherwise public, such as "a county jail." *Id.* at 1, 7-8.

[6] "'[M]any circuits have found media standing to challenge confidentiality orders without expressly finding the existence of a willing speaker.'" Mem. 9 (quoting *Davis v. E. Baton Rouge Par. Sch. Bd.*, 78 F.3d 920, 927 (5th Cir. 1996)). But the Fourth Circuit is not among them. *Smith*, 126 F.4th at 917. And in those Circuits, standing would never have been an issue.

¶¶ 61-90. The Court found this plausibly alleged the Restriction is "a prior restraint on speech," Order 15, that prevents subscribers from providing CNS and Lee public records and information on OCRA, *id.* at 12, and is thus unconstitutional unless it survives strict scrutiny. *Id.* at 15.

This ruling is not dispositive or controlling. Reversal would not materially advance the outcome because it could ***not*** result in the case being "dismissed," Mem. 4, for two reasons.

*First*, as one of the cases cited by Defendant Clerks recognized, any """inhibition of press news-gathering rights must be necessitated 'by a compelling governmental interest, and ... narrowly tailored to serve that interest"'" – i.e., must survive "strict scrutiny." *Davis v. E. Baton Rouge Par. Sch. Bd.*, 78 F.3d 920, 928-29 (5th Cir. 1996) (quoting *In re Express-News Corp.*, 695 F.2d 807, 808-09 (5th Cir. 1982) (quoting *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 607 (1982)). The Fourth Circuit has made this clear: "it [is] '***not dispositive***' whether the challenged … statute [is] 'view[ed] as a prior restraint or as a penal sanction'" because even the latter – including where a "'state attempts to punish publication'" of information it designated confidential – is "'accorded the most exacting scrutiny.'" *Soderberg v. Carrion*, 999 F.3d 962, 968 n.3 (4th Cir. 2021) (quoting *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 101-02 (1979) and citing *Landmark Communic'ns, Inc. v. Virginia*, 435 U.S. 829 (1978)). Under this authority, the Dissemination Restriction must meet strict scrutiny even if it punished speech after it happened.

*Second*, the Court's ruling did ***not*** address "the constitutionality of the Dissemination Restriction." Mem. 5. Rather, the Court's conclusion that the Restriction constitutes a prior restraint on OCRA subscribers that burdens Plaintiffs' newsgathering goes to the standard of scrutiny to be applied at summary judgment and/or trial. Order 15. As shown by the "prior litigation," Mem. 5, this case would go on even if the Restriction could be treated as "a 'time, place, and manner' restriction" to which intermediate scrutiny applied. *Hade I*, 580 F. Supp. 3d

at 296 (denying motion to dismiss); *see Overbey*, 930 F.3d at 226-30 (finding "right to gather news" plausibly injured by alleged unconstitutional condition barring "willing speaker" from discussing police misconduct without addressing whether it also constituted a prior restraint).[7]

Nor is there "substantial ground" to dispute "whether the Dissemination Restriction is a prior restraint." Mem. 4. Defendant Clerks contend one depiction of a "prior restraint" – as a "term … used 'to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur,'" *Alexander v. United States*, 509 U.S. 544, 550 (1993) – "exclude[s]" the Dissemination Restriction, apparently because it is not an administrative or judicial order. Mem. 6. But they cite no cases so holding.

That is because the Supreme Court was distinguishing restrictions that "*forbid* [someone] from engaging in any expressive activities in the future" (i.e., prior restraints) from "forfeiture" under RICO "after a full criminal trial" (i.e., "subsequent punishment"). *Alexander*, 509 U.S. at 549-51. This is how *Alexander* has been repeatedly read: "The notion of prior restraint is well established …. In broad terms, '[a] prior restraint is ***any law*** "forbidding certain communications when issued in advance of the time that such communications are to occur."'" *Ostergren v. Frick*, 2020 WL 1501918, *4 (W.D. Mich. Mar. 30, 2020) (quoting *McGlone v. Bell*, 681 F.3d 718, 733 (6th Cir. 2012) (quoting *Alexander*), *aff'd*, 856 F. App'x 562 (6th Cir. 2021); *Cooper v. Dillon*, 403 F.3d 1208, 1215 (11th Cir. 2005) ("A prior restraint on speech ***prohibits or censors speech before it can take place***.") (citing *Alexander*); *Taylor v. Roswell Indep. Sch. Dist.*, 713

[7] Reversal would also not shorten the case. Discovery would be needed into the "evidence" intermediate scrutiny "requires the government to produce" – i.e., that the Dissemination Restriction "'materially advances an important or substantial interest by redressing past harms or preventing future ones," that "[t]hese harms [are] 'real, not merely conjectural,'" *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 515 (4th Cir. 2002), and "that – before enacting the [Restriction] – it 'seriously undertook to address the problem with less intrusive tools readily available to it.'" *Billups v. City of Charleston, S.C.*, 961 F.3d 673, 688 (4th Cir. 2020).

F.3d 25, 42 (10th Cir. 2013) ("a 'prior restraint' ***restricts speech in advance***") (citing *United States v. Quattrone,* 402 F.3d 304 (2d Cir. 2005) (citing *Alexander*); *Baudin v. Palo Alto Unified Sch. Dist.*, 2026 WL 370395, *3 (N.D. Cal. Feb. 10, 2026) ("[p]rior restraints involve legislative ***statutes, regulatory schemes, or judicial orders*** '*forbidding* certain communications when issued in advance of the time that such communications are to occur'") (quoting *Alexander*).

Courts in this Circuit are in accord: "While it is presumptively unlawful to ***bar speech before it occurs***, First Amendment law fully accepts the ability to penalize speech that occurred in the *past*." *Nat'l Fed'n of Blind v. FTC,* 303 F. Supp. 2d 707, 723 (D. Md. 2004) (citing *Alexander*), *aff'd,* 420 F.3d 331 (4th Cir. 2005); *see Liverman v. City of Petersburg*, 844 F.3d 400, 407 (4th Cir. 2016) (police department social media "policy" banning "speech critical of the government employer" a "prior restraint"); *Stephens v. Cnty. of Albemarle*, 2005 WL 3533428, *8 (W.D. Va. Dec. 22, 2005) ("The potential recipient's right to receive speech from that speaker … is no less diminished on account of the silence being achieved through an unconstitutional condition rather than a ***prior restraint in the form of a state regulation or statute***.").

As this Court and Judge Gregory recognized, that is what the Dissemination Restriction does – it prohibits speech by OCRA subscribers before it occurs. Order 14-15; *Smith*, 126 F.4th at 925 (Gregory, J., dissenting).[8] It does not authorize a "criminal penalty or a judgment … subject to the whole panoply of [procedural] protections" of the sort required for a "subsequent punishment" after publication. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).[9]

[8] As explained in Plaintiff's Sur-Reply 11 n.5 (Doc. 67-1), the vote against en banc review does ***not*** "indicate[]" the Fourth Circuit "disagrees with Judge Gregory's conclusion." Mem. 5. A majority may have found no "intra-circuit conflicts" or reason for "a departure from our standard procedures" given the standing issue. *Nat'l Ass'n of Immigr. Judges v. Owen*, 160 F.4th 100, 101-02 (4th Cir. 2025) (Wilkinson, Circuit Judge, concurring in denial of rehearing en banc).

[9] Rather, it gives Defendant Clerks discretion to terminate OCRA access, another form of a prior restraint. *City of Lakewood v. Plain Dealer Pub'g Co*., 486 U.S. 750, 757 (1988)).

Defendant Clerks "do[] not point to any cases or provide any authority supporting [their] argument" that the Dissemination Restriction does not fall on the prior restraint side of this divide. *Schnupp*, 2025 WL 1331906 at *17.[10] In repeating a theory raised in their motion to dismiss that prior restraint jurisprudence – i.e., strict scrutiny – cannot apply where information is "otherwise-available," Mem. 6, they fail to address Fourth Circuit precedent applying it to a "partial ban" on dissemination of information in or about public court records and proceedings. *Soderberg*, 999 F.3d at 966-67 & 969-70 (citing *Daily Mail*, 443 U.S. at 104-05); *In re Murphy-Brown, LLC*, 907 F.3d 788, 793 (4th Cir. 2018); Plaintiff's Omnibus Opposition 41 (Doc. 48).[11]

The Court's ruling "involved a straightforward application of settled law" to the language of the Restriction; "[t]he Court neither probed a thorny question of first impression nor applied new case law to old standards nor struggled to reconcile a split of authority." *Hall v. Greystar Mgmt. Servs.,* 193 F. Supp. 3d 522, 527 (D. Md. 2016). Rather, "defendants dispute the court's conclusion." *Young v. Sheetz, Inc.*, 998 F. Supp. 670, 673 (W.D. Va. 1998). But their "disagreement with the Court is simply not reason enough to grant an interlocutory appeal." *McDaniel v. Mehfoud*, 708 F. Supp. 754, 756 (E.D. Va. 1989).

---

[10] They also do not address *Nebraska Press*, which (like *Daily Mail*) said it does not matter. 427 U.S. at 559 ("[t]ruthful reports of public judicial proceedings" should receive the same "special protection" against "prior restraint[s]" that they receive "against subsequent punishment").

[11] This controlling authority was also not addressed in *Courthouse News Serv. v. Hade*, 631 F. Supp. 3d 349 (E.D. Va. 2022). Defendant Clerks neither note that this decision was vacated on appeal for lack of standing, *Smith*, 126 F.4th at 917, nor that it applied the Dissemination Restriction in a different context where CNS sought to be allowed to subscribe to OCRA, *see* Order 3, or explain how or why that context would apply to the analysis in this

They also fail to create a substantial ground for dispute by again citing inapposite authority. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 27(1984) ("protective order covering all ***information obtained through the discovery*** process" did ***not*** extend to information in public court records); *Pell v. Procunier*, 417 U.S. 817, 834 (1974) ("newsmen have no constitutional right of ***access to prisons or their inmates*** beyond that afforded the general public").

**C. Defendants Did Not Carry Their Burden of Showing Exceptional Circumstances**

As this Court has recognized, "certifications are the exception and not the rule, because they depart from the well-established policy limiting appeals to final judgments." *Montgomery v. Johnson*, 2008 WL 5422866, *1 (W.D. Va. Dec. 30, 2008). Courts "should therefore permit interlocutory appeals under § 1292(b) only from a carefully 'limited group of orders,' … and 'in exceptional situations in which [doing so] would avoid protracted and expensive litigation." *Fannin*, 873 F.2d 1438 at *2; *Keenan*, 2007 WL 9782467 at *1.

Consequently, even where, unlike here, a moving party shows "all" § 1292(b) "factors are present, [the Court] still ha[s] discretion to disallow the appeal," *Drummond Co.*, 885 F.3d at 1336, "'if exceptional circumstances are absent.'" *Prince*, 2023 WL 3190403 at *2. "The moving party bears the burden of persuading the court that exceptional circumstances justify a departure from the general policy against piecemeal appeals." *Id.; Fannin*, 873 F.2d 1438 at *2.

Defendant Clerks do not mention "exceptional circumstances," nor could they carry this "onerous burden." *Prince*, 2023 WL 3190403 at *3. The "legislative history" of § 1292(b) "clearly indicates that its use was to be confined to exceptional cases 'where a decision of the appeal may avoid protracted and expensive litigation, as in antitrust and similar protracted cases.'" *Medomsley Steam Shipping Co. v. Elizabeth River Terminals, Inc.*, 317 F.2d 741, 743 (4th Cir. 1963). "Certainly the kind of question best adapted to discretionary interlocutory review is a narrow question of pure law whose resolution will be completely dispositive of the litigation, either as a legal or practical matter, whichever way it goes." *Fannin*, 873 F.3d 1438 at *5. A court should not certify an appeal that "technically" meets the statutory criteria if it does not meet this paradigm. *Id.*; *Karanik*, 2022 WL 16556774 at *4 ("Exceptional circumstances exist when an interlocutory appeal 'would avoid protracted and expensive litigation.'").

"The question[s] here [are] a long way from that model." *Fannin*, 873 F.3d 1438 at *5. Defendants "merely reargue" the same points that previously failed, *E. Tennessee Nat. Gas Co. v. 3.04 Acres in Patrick Cnty.*, 2006 WL 626416, *1 (W.D. Va. Mar. 9, 2006), "contend[ing] that the Court wrongly applied settled law to the facts of this case. That is not a ground for certification of an interlocutory appeal." *Duke Univ. v. Endurance Risk Sols. Assurance Co.*, 2021 WL 4597069, *1 (E.D.N.C. Oct. 5, 2021). As reversal "would not terminate the case," *Pyott-Boone*, 2013 WL 12318490 at *6, "certification … would be more likely to delay … than to advance it," *Terry v. June*, 368 F. Supp. 2d 538, 540 (W.D. Va. 2005), "and add unecessary … cost." *Difelice v. U.S. Airways, Inc.*, 404 F. Supp. 2d 907, 910 (E.D. Va. 2005). "An immediate appeal, even were it to be granted, would only delay [discovery, summary judgment and any] trial …, especially in light of the stay requested." *Commonwealth ex rel. Integra Rec LLC v. Countrywide Sec. Corp.*, 2015 WL 3540473, *8 (E.D. Va. June 3, 2015).

Indeed, that may be the point. Absent a stay, this case would move into discovery, where Defendants' evidence to satisfy constitutional scrutiny – or lack thereof – will be revealed. Discovery will be delayed during the automatic stay on their sovereign immunity appeal, Mem. 1, but that single issue can be addressed faster if not encumbered by the additional issues the Clerks seek to certify. And certifying even one of those additional issues would allow them to ask the Fourth Circuit to add others – such as "the constitutionality of the Dissemination Restriction," Mem. 5, ***without a factual record*** – that the Circuit could not otherwise add to the one issue that is "immediately appealable." *Coakley v. Welch*, 877 F.2d 304, 305 (4th Cir. 1989).

To avoid excessive delay, and because the Clerks do not even mention them, the Court should find "no exceptional circumstances in this case to divert from the normal appellate process." *United States v. Moore*, 703 F. Supp. 455, 457 (E.D. Va. 1988) (citing *Medomsley*).

## II.

## DEFENDANTS' MOTION TO STAY SHOULD BE DENIED OR LIMITED TO 90 DAYS

About a week before Defendant Clerks moved to certify, they joined Defendant Hade in a Joint Motion to Stay (Docs. 81, 82). That motion did not say it was limited to the sovereign immunity appeal and made no mention of a forthcoming motion to certify. When they moved to certify, the Clerks noted for the first time sovereign immunity appeals receive an automatic stay. Mem. 1 (citing *City of Martinsville v. Express Scripts, Inc.*, 128 F.4th 265, 269 (4th Cir. 2025)).

This is a curious sequence of events. An "automatic stay is self-executing," *Martinsville*, 128 F.4th at 269, requiring the district court to "halt all proceedings related to the appeal," *id.* at 268, "whether or not the parties ask it to." *Id.* at 270. No motion is required. *See id.*

But a motion for "discretionary stay" pending interlocutory appeal under § 1292(b) must meet the "four-factor standard" set out in *Nken v. Holder*, 556 U.S. 418 (2009). *Martinsville*, 128 F.4th at 270; *see Rivers v. United States*, 2020 WL 6021465, *4 (W.D. Va. Oct. 9, 2020). Those factors are "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Karanik*, 2022 WL 16556774 at *6.

Although the moving party "bears the burden of showing that the circumstances justify [a stay]," *Nken*, 556 U.S. at 433-34, Defendants do not address them, and "all the factors militate against a stay." *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 768 F. Supp. 3d 735, 738 (D. Md. 2025). The Clerks are unlikely to succeed on the issues they seek to certify, and the automatic stay eliminates any irreparable injury. *See Karanik*, 2022 WL 16556774 at *6 (certifying appeal but denying stay absent "'strong showing'" on merits and irreparable injury).

In this First Amendment case where OCRA subscribers are restrained from giving the press and public records from courts too remote to reach, "the equities and the public interest lie firmly in [CNS' and Lee's] favor." *Suri v. Trump*, 2025 WL 1806692, *9 (4th Cir. July 1, 2025). "'The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Id.* (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

"Because the public benefits attendant with open proceedings are compromised by delayed disclosure of documents," the Fourth Circuit instructed courts to "act … as expeditiously as possible" in cases involving restrictions on press and public access to records or people in ongoing cases. *Doe v. Pub. Citizen*, 749 F.3d 246, 272–73 (4th Cir. 2014) ("'Each passing day may constitute a separate and cognizable infringement of the First Amendment.'") (quoting *Grove Fresh Distribs. v. Everfresh Juice Co.,* 24 F.3d 893, 897 (7th Cir.1994)); *see Wall St. J.*, 601 F. App'x at 217-19 (vacating sealing and gag order on expedited consideration).

It necessarily follows that, to the extent "the request for a stay is made with regard to the application for certification under 28 U.S.C. § 1292(b), … the request for a stay [should be] denied," *Slone v. State Auto Prop. & Cas. Ins. Co.*, 2021 WL 687697, *2 (S.D.W. Va. Feb. 22, 2021), if "certification is not appropriate," *id.*, or even if it is. *Karanik*, 2022 WL 16556774 at *6. While the Court can deny the motion for a stay on the sovereign immunity appeal as unnecessary, *Eckert*, 834 F. Supp. at 175,[12] a better course would be to limit that stay to "not more than ninety days." *Puryear*, 71 F. Supp. 2d at 554.[13]

---

[12] While a sovereign immunity appeal "divests this Court of jurisdiction over the remaining matters" related to that appeal, it "does not leave district courts at the mercy of defendants who file frivolous interlocutory appeals for tactical reasons. If the appeal is deemed frivolous, the district court may certify that the case should proceed to trial." *Eckert*, 834 F. Supp. at 174. CNS and Lee will evaluate whether to file such a motion after reviewing the opening briefs.

[13] While *Puryear* did not involve an automatic stay, the Circuit can extend it if necessary.

**CONCLUSION**

A constitutional challenge to the Dissemination Restriction has been pending for nearly five years, since CNS filed its initial complaint in the first litigation in July 2021. Defendant Clerks' motion to certify "does not justify further delay." *Montgomery*, 2008 WL 5422866 at *1. Plaintiffs CNS and Lee therefore respectfully request that the Court deny Defendant Clerks motion to certify an interlocutory appeal and either deny the motion to stay or limit any stay for Defendants' sovereign immunity appeal to not more than 90 days.

Dated: June 12, 2026

COURTHOUSE NEWS SERVICE
LEE ENTERPRISES, INCORPORATED
LEE BHM LLC

By: /s/ Dabney J. Carr, IV
Of Counsel

Dabney J. Carr IV, VSB No. 28679
Lauren H. Miller, VSB No. 100566
Troutman Pepper Locke LLP
P.O. Box 1122
Richmond, Virginia 23218
Tel: (804) 697-1200
Fax: (804) 697-1339
dabney.carr@troutman.com
lauren.h.miller@troutman.com

Roger Myers (admitted pro hac vice)
Rachel Matteo-Boehm (admitted pro hac vice)
Carlie Tenenbaum (admitted pro hac vice)
Bryan Cave Leighton Paisner LLP
3 Embarcadero Center, 7th Floor
San Francisco, California 94111
Tel: (415) 675-3400
Fax: (415) 675-3434
roger.myers@bclplaw.com
rachel.matteo-boehm@bclplaw.com
carlie.tenenbaum@bclplaw.com

*Counsel for Plaintiffs Courthouse News Service, Lee Enterprises, Incorporated and Lee BHM LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Abingdon Division**

COURTHOUSE NEWS SERVICE, *et al.*,

Plaintiffs,

v. Civil Action No. 1:25-cv-00075-JPJ-PMS

KARL R. HADE, *et al.,*

Defendants.

**DEFENDANT CLERKS' REPLY IN SUPPORT OF MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL AND MOTION TO STAY**

In their Opposition to Defendants' Motions to Certify and Stay, Plaintiffs ignore the unique posture of this case and continue to assert various constitutional theories about the Dissemination Restriction that they have not plead. Because this case is already on appeal as to this Court's decision denying the defendants' Eleventh Amendment immunity, and because that appeal automatically stays these proceedings, this Court should grant Defendant Clerks' Motion to Certify and allow the Fourth Circuit to decide whether to consider two additional issues on appeal.

**ARGUMENT**

**1. PLAINTIFF'S STAY ARGUMENT IS SELF-CONTRADICTORY.**

Because this case is currently on appeal as to the defendants' entitlement to Eleventh Amendment Immunity—in other words, whether they can be subject to suit—this case is automatically stayed as a matter of law. This stay includes all aspects of discovery and the merits of Plaintiffs' prior restraint claim. *See City of Martinsville v. Express Scripts, Inc.*, 128 F.4th 265, 269 (4th Cir. 2025); *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58 (1982).

Plaintiffs position on a stay of these proceedings is difficult to parse. After conceding that "discovery will be delayed during the automatic stay on their sovereign immunity appeal" and

citing the cases that establish the automatic stay, *see* ECF 90 at 13-14, Plaintiffs spend two pages arguing why the Court should not grant a stay. *See id.* at 14-15. Plaintiffs appear to argue that the Court should deny a stay because, putting aside the automatic stay for the sovereign immunity appeal, Defendants' request does not separately satisfy the elements for a discretionary stay under *Nken v. Holder*, 556 U.S. 41 (2009). Plaintiffs also suggest that this Court could later find Defendants' interlocutory appeal of the immunity issue to be frivolous, thus allowing this matter to proceed. *Id.* at 15 n.2 (citing *Eckert Int'l v. Gov't of Sov. Dem. Rep. of Fiji*, 834 F. Supp. 167, 174 (E.D. Va. 1993)).

These arguments needlessly confuse the issue. Defendants filed their Joint Motion to Stay to make formal what Plaintiffs concede to be true: this case is automatically stayed because they are appealing their entitlement to sovereign immunity. And if this Court certifies the two additional issues to the Fourth Circuit for consideration along with sovereign immunity, that same stay should remain in place pending the conclusion of the appeals so that this Court and the Fourth Circuit are not simultaneously exercising jurisdiction over this case.

Because this case is automatically stayed as to all proceedings anyway, this Court should exercise its discretion to certify the two additional questions at issue.

## 2. THIS COURT'S RULING ON STANDING SATISFIES THE STANDARD FOR § 1292(B) CERTIFICATION.

In their opposition, Plaintiffs argue that the issue of standing fails to meet any of the criteria for interlocutory appeal.

### 2.1. Standing is a controlling question of law that will materially advance the termination of this litigation.

Standing is a controlling question of law. As Plaintiffs recognize, standing is a "threshold jurisdictional inquiry." ECF 90 at 5 (quoting *Moore v. Virginia Cmty. Bankshares, Inc.*, 666 F.

Supp. 3d 547, 553 (W.D. Va. 2023)) (cleaned up). As such, it implicates whether this Court has subject matter jurisdiction over the case. *See Moore*, 666 F. Supp. 3d at 552-53; *Rouse v. Fader*, 171 F.4th 272, 279 and n. 6 (4th Cir. 2026) (raising standing *sua sponte* because it had an "independent obligation" to assess subject matter jurisdiction") (internal quotation marks omitted). Standing is also "a legal question that [appellate courts] examine de novo." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 553 (4th Cir. 2013). And when standing is a "pure question of law"— that is, when it is "an abstract legal issue that the court of appeals can decide quickly and cleanly"—it is suitable for interlocutory review. *See Does v. Musk*, 2026 U.S. Dist. LEXIS 17834, *5 (D. Md. 2026) (citing *United States ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 340 (4th Cir. 2017)).

That is the case here. Defendant Clerks raise pure questions of law in their standing argument that do not require the resolution of factual questions. Plaintiffs have alleged that David Lacy is a willing speaker and that they have suffered injury because the Dissemination Restriction prohibits him from sharing court records with them. Defendant Clerks' arguments take those allegations at face value for purposes of their standing argument and argue only purely legal questions related to whether those facts, and Plaintiffs' legal positions on the willing speaker doctrine, satisfy the jurisdictional requirements for Article III standing.

Defendant Clerks recognize that if there are questions of fact to resolve, the standing issue would not satisfy the criteria for an interlocutory appeal. *See Moore v. Blue Ridge Bankshares, Inc.*, 2023 U.S. Dist. LEXIS 245564 (W.D. Va. 2023) (refusing certification because the issue of standing required resolving fact questions). But just because the standing inquiry involves applying law to factual allegations does not render standing a factual inquiry. If that were true, standing could never be suitable for interlocutory appeal. This is plainly not the case. *See, e.g., Jackson v.*

*City of Houston*, 143 F.4th 640, 644 (5th Cir. 2025) (finding § 1292(b) jurisdiction over "controlling question[] of law" regarding plaintiff's standing); *Campaign Legal Center v. Values*, 710 F. Supp. 3d 35, 48 (D.C. Cir. 2024) (standing was controlling question of law); *In re Auto. Parts Antitrust Litig.*, 2019 U.S. App. LEXIS 14014, *2 (6th Cir. 2019) ("Whether the plaintiffs have properly alleged Article III standing is a controlling legal question").[1] Plaintiffs even cite a case (for a different proposition) where this Court recognized that "Courts have held that the question of standing and subject matter jurisdiction are controlling questions of law." *Audio Mpeg v. Creative Labs*, 2006 U.S. Dist. LEXIS 118052, *10 (E.D. Va. 2006).

The standing issue will also "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Whether an issue is a "controlling question of law [that] may materially advance the ultimate termination of the litigation . . . is not a difficult requirement to understand[;] [i]t means that resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation." *McFarlin v. Conseco Servs.*, 381 F.3d 1251, 1259 (11th Cir. 2004) (citing 16 Charles Alan Wright, et al., Federal Practice & Procedure § 3930 at 432 (2d ed. 1996)); *see Prince v. Johnson Health Tech. Trading, Inc.*, 2023 U.S. Dist. LEXIS 75283 (W.D. Va. 2023) (same). Plaintiffs argue this is not satisfied because any dismissal for lack of standing must be without prejudice and thus will precipitate the filing of an amended complaint. Because litigation will then continue, the argument goes, any ruling will not "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

[1] Plaintiffs make much of the fact that the panel decision in *In re Trump*, 928 F.3d 360 (4th Cir. 2019), was vacated by the en banc decision in *In re Trump*, 958 F.3d 274 (4th Cir. 2020). But the en banc decision vacated the panel's ruling on other grounds and did not address whether the underlying standing question met the elements of certification. In fact, the en banc majority specifically said that the district court's "certification analysis" was "an issue on which we do not pass." *Id.* at 284. The panel decision that standing *was* a controlling question of law was left untouched, in other words.

At the outset, Plaintiffs offer no explanation of what facts they could allege that could save their Article III standing. But more to the point, the possibility of amendment is not an escape hatch from interlocutory appeals. The principle Plaintiffs rely on applies to any defect in subject matter jurisdiction. *See S. Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC,* 713 F.3d 175, 185 (4th Cir. 2013) ("A dismissal for lack of standing—or any other defect in subject matter jurisdiction—must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits."). Again, if Plaintiffs' analysis were right, no issues of subject matter jurisdiction could ever be appealed under § 1292(b) because dismissal without prejudice, an amended pleading, and continued litigation would remain possible. As with the controlling question of law inquiry, cases abound proving that issues of subject matter jurisdiction are appealable under § 1292(b).

Plaintiffs also cite two cases where Courts found that resolving the standing question at issue would not terminate the litigation. ECF 90 at 5 (citing *Prince v. Johnson Health Tech. Trading, Inc.*, 2023 U.S. Dist. LEXIS 75283 (W.D. Va. 2023) and *Audio Mpeg*). But in *Prince*, the Court held that resolving the standing inquiry would only impact some of the many plaintiffs' claims and thus would not terminate the litigation. *See Prince* at * 6-7. And in *Audio Mpeg*, the Court similarly held that the standing inquiry would only resolve whether the case proceeded with one plaintiff or many, but either way it would continue. *See Audio Mpeg* at *12-13. Neither case, then, is useful here.

**2.2. There is substantial ground for difference of opinion.**

Finally, the standing question satisfies the second criteria of § 1292(b) by being an issue for which there is substantial ground for difference of opinion. Defendant Clerks recognize that disagreement with Plaintiffs, or the Court's decision, is not alone sufficient to satisfy this element.

But Defendant Clerks' Motion to Certify is based on the apparent disagreement in the federal courts of appeal.

The question here is whether there is substantial ground for difference of opinion as to whether Plaintiffs' theory of standing is viable. The plaintiffs have explicitly pursued a discrete form of standing—the right to receive speech from a willing speaker—and this Court's Order finds standing under that theory. Order at 12. And to be more precise, the standing question at issue is whether the receiver-of-speech must assert an injury that is derivative of the speaker's.

The Fourth Circuit has never addressed this question, even though it used that framing when it ruled that CNS lacked standing in *Courthouse News Serv. v. Smith*, 126 F. 4th 899, 917 (2025) (holding that CNS' "assertion of derivative injury" was too speculative). And contrary to the repeated invocation of it by Plaintiffs, the Court in *Overbey v. Mayor of Baltimore*, 930 F.3d 215 (4th Cir. 2019), did not address the question either. As the Defendant Clerks' Memorandum in Support indicates, precedent from the Supreme Court of the United States and other circuits leave room for substantial disagreement. *See Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 757 (1976) ("If there is a right to advertise, there is a reciprocal right to receive the advertising"); *Pa. Family Inst., Inc. v. Black*, 489 F.3d 156, 166 (3d Cir. 2007) ("the right to listen depends entirely on the infringement on the rights of a willing speaker."); *NAACP v. Jones*, 131 F.3d 1317, 1322 (9th Cir. 1997).

Plaintiffs do not engage much with the Defendant Clerks' argument. And tellingly, Plaintiffs cannot seem to make up their mind whether they need to assert that their injury derives from that of their alleged willing speaker. Before, Plaintiffs repeatedly disavowed the need to assert an injury that derived from Mr. Lacy. *See* ECF No. 48 at 2, 9, 11, 13 (asserting, again and again, that their right to gather news did not derive from a willing speaker). They did not, they

argued, assert standing that was "derivative of OCRA subscribers." *Id.* at 15. But now, Plaintiffs claim that their "injury did derive from Lacy's injury." ECF 90 at 7 n. 4. Plaintiffs' own confusion is more reason to certify the issue.

### 3. This Court's Ruling on "Prior Restraint" Satisfies the Standard for § 1292(B) Certification.

Plaintiffs argue that the Court's ruling that they have "plausibly alleged" the Dissemination Restriction to be a prior restraint on speech is not a controlling question of law that would materially advance the termination of the litigation, ECF No. 90 at 8-9, and is not an issue for which there is substantial ground for difference of opinion. *Id.* at 9-11.

#### 3.1. Whether the Dissemination Restriction is a "prior restraint" on speech is a controlling question of law that would materially advance the termination of this litigation.

As to whether the issue is controlling, Plaintiffs make two arguments: 1) it does not matter whether the Dissemination Restriction is a "prior restraint" because it triggers strict scrutiny regardless; and 2) the Court's ruling only goes to the level of scrutiny to be applied, and even if it was wrong, the case would proceed under a lower level of scrutiny such as the intermediate scrutiny applicable to time, place, and manner restrictions on speech. *Id.* at 8. These arguments miss the point and ignore Defendant Clerks' primary argument: if the Dissemination Restriction is *not* a prior restraint on speech, Plaintiffs' lawsuit cannot proceed because that is the only theory they have plead.

"A case may not proceed to trial on 'an unpleaded theory of recovery' without 'express or implied consent of the parties.'" *Papania v. United States*, 715 F. Supp. 3d 789, 802 (E.D. Va. 2024) (quoting *Pinkley, Inc. v. City of Frederick, Md.*, 191 F.3d 394, 401 (4th Cir. 1999)). Stated differently, Plaintiffs can only proceed to summary judgment and/or trial in this matter on what they have plead. Plaintiffs' Complaint asserts a single claim: that Code § 17.1-293(H) is an

unconstitutional *prior restraint* on speech. Compl. ¶ 87; Order at 14-15. They make this allegation as to what the statute *is* so that they can benefit from a particular level of scrutiny.

This is by design: the Eastern District of Virginia already ruled that the Dissemination Restriction is a content-neutral time, place, and manner regulation. *See Courthouse News Serv. v. Hade*, 631 F. Supp. 3d 349 (2022) (Hudson, J.) *aff'm in part, vacated in part* 126 F. 4th 899. And the Fourth Circuit already ruled that the Dissemination Restriction "does not impose any restraint on Courthouse News's speech." 126 F.4th at 913. Plaintiffs' current pleading tries to thread the needle between these rulings: they now assert that the Dissemination Restriction is a prior restraint on the speech of their alleged willing speaker, Mr. Lacy. The scrutiny to be applied to this claim, though, is secondary to and flows from the premise alleged: that the statute is a prior restraint on speech. If Plaintiffs' claim that the Dissemination Restriction is a prior restraint is incorrect, they have failed to state a claim. The issue, then, is a controlling question of law. *See Silverthorne Seismic, L.L.C. v. Sterling Seismic Servs., Ltd.*, 125 F.4th 593, 598 (5th Cir. 2025) ("Controlling questions thus 'include . . . whether a claim exists as a matter of law'") (quoting 19 James W. Moore et al., Moore's Federal Practice § 203.31[2] (3d ed. 2024)).

Plaintiffs also reiterate their argument that the distinction between prior restraint and post-speech punishment does not matter. ECF No. 90 at 11 n.10. Besides ignoring their own pleading—which asserts one and not the other—they read the cases wrong. Neither Supreme Court case on which Plaintiffs rely holds that a prior restraint and post-speech punishment receive the same constitutional analysis. *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976), *and Smith v. Daily Mail Pub. Co.*, 443 U.S. 97 (1979). Plus, *Nebraska Press* helps the Defendant Clerks. *See Nebraska Press* at 559 ("The thread running through all these cases is that prior restraints on speech and publication are the most serious and the least tolerable

infringement on First Amendment rights" because "[a] prior restraint . . . *by definition*, has an immediate and irreversible sanction") (emphasis added). Besides, after these cases, the Supreme Court left no doubt that the distinction mattered: "To accept petitioner's argument would virtually obliterate the distinction, solidly grounded in our cases, between prior restraints and subsequent punishments." *Alexander v. United States*, 509 U.S. 544, 550 (1993).

**3.2. There is substantial ground for difference of opinion.**

Plaintiffs next argue that there is no substantial ground for difference of opinion but again miss the mark. First, Plaintiffs characterize as merely "*one depiction*" of a "prior restraint" that it is an "administrative and judicial order forbidding certain communications when issued in advance of the time that such communications are to occur." ECF No. 90 at 9 (internal quotes omitted and emphasis added). This is not "one depiction" of the term: it is the very definition of the term according to the Supreme Court of the United States. *See Alexander* at 550; *Nebraska Press* at 559.

The Defendant Clerks' argument is, and has always been, that the Dissemination Restriction is not a restraint on speech because it does not forbid speech before it occurs. *See* ECF No. 44 at 9-11, ECF No. 62 at 3, ECF No. 88 at 5-6. The Defendant Clerks will not re-litigate the *merits* of that argument here, but that is the issue for which there is substantial ground for difference of opinion. Specifically, does the plain language of the Dissemination Restriction forbid speech before it occurs as Judge Gregory claimed in his dissent, or does it simply relate to post-speech consequences? There is no controlling law on point, which is why Plaintiffs rely on Judge Gregory's dissent and a Fourth Circuit decision analyzing a statute that constituted a penal sanction by "prohibiting and punishing" speech. *See Soderberg v. Carrion*, 999 F.3d 962, 964 (4th Cir. 2021). And there is persuasive authority that runs the other way. *See Courthouse News*,

126 F.4th at 906 (citing *Courthouse News Serv. v. Hade*, 631 F. Supp. 3d 349 (E.D. Va. 2022)); *Novak v. City of Parma*, 932 F.3d 421, 432 (6th Cir. 2019) ("An action taken after the speech is expressed, like a punishment for disfavored speech, is not a prior restraint."). Notably, by citing both Judge Hudson's finding that the Dissemination Restriction *is not* a prior restraint, *and* Judge Gregory's opinion that it *is*, Plaintiffs' own Complaint recognizes the substantial ground for difference of opinion.

## CONCLUSION

Plaintiffs' remaining arguments that this case does not present suitable circumstances for interlocutory appeal ignore the fact that this case is already on appeal. The Defendant Clerks recognize that § 1292(b) certification should be used "sparingly." *See United States ex rel. Michaels v. Agape Senior Community, Inc.*, 848 F.3d 330, 340 (4th Cir. 2017). But this is not a run-of-the-mill request to certify under § 1292(b). Defendant Clerks are asking this Court to certify two additional issues alongside the issue already before the Fourth Circuit, and both implicate controlling legal questions at the heart of this litigation. If the Fourth Circuit disagrees, it will exercise its discretion to deny the Defendant Clerks' petition for appeal. The Defendant Clerks ask this Court to give them the opportunity to persuade the Fourth Circuit that the nature of the Dissemination Restriction, and whether Plaintiffs have standing to challenge it, should be addressed alongside the defendants' entitlement to sovereign immunity.

The Defendant Clerks ask the Court to grant their Motion.

Respectfully submitted,

**EDWARD JEWETT**, in his official capacity as
Clerk of the Circuit Court for the City of Richmond,
Virginia;

**BRENDA HAMILTON**, in her official capacity as Clerk of the Circuit Court for the City of Roanoke, Virginia; and

**KELLY FLANNAGAN**, in her official capacity as Clerk of the Circuit Court for the City of Bristol, Virginia

By Counsel

/s/ John P. O'Herron

William W. Tunner (VSB No. 38358)
William D. Prince IV (VSB No. 77209)
John P. O'Herron (VSB No. 79357)
Rachel W. Adams (VSB No. 92605)
Peter S. Askin (VSB No. 93371)
*Thompson*McMullan, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, Virginia 23219
Telephone: (804) 649-7545
Facsimile: (804) 780-1813
wtunner@t-mlaw.com
wprince@t-mlaw.com
joherron@t-mlaw.com
radams@t-mlaw.com
paskin@t-mlaw.com

*Counsel for Defendants Edward Jewett, in his official capacity as the Clerk of the Circuit Court for the City of Richmond, Virginia, Brenda Hamilton, in her official capacity as the Clerk of the Circuit Court for the City of Roanoke, Virginia, and Kelly Flannagan, in her official capacity as the Clerk of the Circuit Court for the City of Bristol, Virginia*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of June, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

Roger Myers, *pro hac vice* forthcoming
Rachel Matteo-Boehm, *pro hac vice* forthcoming
Carlie Tenenbaum, *pro hac vice* forthcoming
BRYAN CAVE LEIGHTON PAISNER LLP
3 Embarcadero Center, 7th Floor
2100 East Cary Street, Suite 310
San Francisco, CA 94111
Telephone: (415) 675-3400
roger.myers@bclplaw.com
rachel.matteo-boehm@bclplaw.com
carlie.tenenbaum@bclplaw.com

*Counsel for Plaintiffs Courthouse News Service, Lee Enterprises, Incorporated and Lee BHM LLC*

Erin R. McNeill, Esq.
Senior Assistant Attorney General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone (ERM): (804) 692-0598
Facsimile (ERM): (804) 371-0200
Email (ERM): EMcneill@oag.state.va.us

*Counsel for Karl R. Hade, in his official capacity as Executive Secretary of the Office of the Executive Secretary of the Supreme Court of Virginia*

Dabney J. Carr IV, Esq.
Lauren H. Miller, Esq.
TROUTMAN PEPPER LOCKE LLP
P.O. Box 1122
Richmond, Virginia 23218
Telephone: (804) 697-1200
Facsimile: (805) 697-1339
dabney.carr@troutman.com
lauren.h.miller@troutman.com

*Counsel for Plaintiffs Courthouse News Service, Lee Enterprises, Incorporated and Lee BHM LLC*

/s/ John P. O'Herron
John P. O'Herron (VSB No. 79357)
*Thompson*McMullan, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, Virginia 23219
Telephone: (804) 649-7545
Facsimile: (804) 780-1813
joherron@t-mlaw.com

*Counsel for Defendants Edward Jewett, in his official capacity as the Clerk of the Circuit Court for the City of Richmond, Virginia, Brenda Hamilton, in her official capacity as the Clerk of the Circuit Court for the City of Roanoke, Virginia, and Kelly Flannagan, in her official capacity as the Clerk of the Circuit Court for the City of Bristol, Virginia*

CLERKS OFFICE US DISTRICT COURT
AT ABINGDON, VA
FILED
July 02, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ Kendra Campbell
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ABINGDON DIVISION**

| | | |
|---|---|---|
| **COURTHOUSE NEWS SERVICE, et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:25CV00075 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **KARL R. HADE, et al.,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendants. | ) | |

*Roger Myers, BRYAN CAVE LEIGHTON PAISNER LLP, San Francisco, California, and Dabney J. Carr, IV, TROUTMAN PEPPER LOCKE LLP, Richmond, Virginia, for Plaintiffs; Erin R. McNeill, Senior Assistant Attorney General, OFFICE OF THE VIRGINIA ATTORNEY GENERAL, Richmond, Virginia, for Defendant Karl R. Hade; John P. O'Herron, THOMPSON MCMULLAN, P.C., Richmond, Virginia, for Defendants Edward Jewett, Brenda Hamilton, and Kelly Flannagan.*

This case involves a Virginia statute that restricts the dissemination of nonconfidential civil court records obtained through the state's remote online access system. The plaintiffs, a legal news service and publishers of local Virginia newspapers, filed the present suit against Virginia court officials challenging the constitutionality of the statute.[1] After the defendants moved to dismiss the case for

---

[1] Plaintiff Courthouse News Service (Courthouse News) is a nationwide news service that specializes in reporting on civil litigation in state and federal courts. Co-plaintiffs Lee Enterprises, Inc. (Lee) and Lee BHM LLC (Lee BHM), a subsidiary of Lee, are publishers of newspapers across Virginia. Defendant Karl R. Hade is the Executive Secretary of the Office of Executive Secretary (OES) of the Supreme Court of Virginia. Defendants Edward Jewett, Brenda Hamilton, and Kelly Flannagan (defendant clerks) are Virginia circuit court clerks for the cities of Richmond, Roanoke, and Bristol, respectively.

lack of jurisdiction and failure to state a claim, I issued an Opinion and Order denying, among other things, the defendants' motions to dismiss. *Courthouse News Serv. v. Hade*, No. 1:25CV00075, 2026 WL 1229072 (W.D. Va. May 5, 2026) (May Order).

Thereafter, the defendants noticed an interlocutory appeal to the United States Court of Appeals for the Fourth Circuit as to this court's denial of Eleventh Amendment sovereign immunity. The defendants have now moved to stay the present litigation. Separately, the defendant clerks have moved to certify this court's previous standing and First Amendment rulings pursuant to 28 U.S.C. § 1292. For the reasons discussed below, I will grant the motions.[2]

I.

The facts of this case are discussed in the May Order. I will recount the facts relevant to the pending motions.

Virginia circuit courts provide the public and press with access to nonconfidential civil court records at their respective physical courthouses. Most Virginia circuit courts allow select individuals, including Virginia-licensed attorneys, to remotely access these same records via the Officer of the Court Remote Access system (OCRA). If an authorized OCRA user transmits remotely accessed

[2] I will dispense with oral argument because the facts and legal contentions are adequately presented in the parties' submissions, and oral argument would not aid the decisional process. Fed. R. Civ. P. 78(b); W.D. Va. Civ. R. 11(b).

data to an unauthorized third party, circuit court clerks have discretion to revoke the user's OCRA access. Va. Code Ann. § 17.1-293(H) (Dissemination Restriction).

In 2021, Courthouse News filed a lawsuit in the United States District Court for the Eastern District of Virginia challenging, in relevant part, the constitutionality of the Dissemination Restriction. That court held that the restriction was a narrowly tailored content-neutral time, place, and manner regulation. *Courthouse News Serv. v. Hade*, 631 F. Supp. 3d 349, 367–70 (E.D. Va. 2022). On appeal, the Fourth Circuit vacated this ruling, finding that Courthouse News was not entitled to OCRA access and thus lacked standing to challenge the Dissemination Restriction. *Courthouse News Serv. v. Smith*, 126 F.4th 899, 917 (4th Cir. 2025) (*Courthouse News I*). The court also rejected Courthouse News's contention that the Dissemination Restriction indirectly injured its ability to acquire records from OCRA subscribers because Courthouse News would have needed to show that "there exists a speaker willing to convey the information" to have standing to claim the right to receive speech. *Id.* (quoting *Stephens v. Cnty. of Albemarle*, 524 F.3d 485, 492 (4th Cir. 2008)).

The plaintiffs filed this action on December 9, 2025. Their sole claim challenged the Dissemination Restriction as an unconstitutional prior restraint in violation of the First Amendment. The plaintiffs argued that the Dissemination Restriction infringed on the speech of David Lacy, a Virginia-licensed attorney. The plaintiffs alleged that they had asked Mr. Lacy on several occasions to provide them

with copies of civil court pleadings accessible through OCRA, but Mr. Lacy informed them that the Dissemination Restriction prohibited him from doing so. The defendants subsequently moved to dismiss the case, including on sovereign immunity and standing grounds. Dkt. Nos. 38, 39, 41, 43. After briefing and oral argument, I denied the motions to dismiss. May Order, Dkt. No. 73.

Thereafter, the defendants filed a notice of appeal to the Fourth Circuit as to this court's denial of Eleventh Amendment sovereign immunity. Notices of Appeal, Dkt. Nos. 75, 78. The defendant clerks separately moved for this court to certify two other issues: (1) whether the Dissemination Restriction is a prior restraint subject to strict scrutiny; and (2) whether the plaintiffs have standing to assert that the restriction is an unconstitutional prior restraint. Dkt. No. 87. The motions have been briefed and are ripe for review.

II.

*A. Motion to Stay.*

As an initial matter, an order denying federal sovereign immunity is subject to immediate appeal. *Will v. Hallock*, 546 U.S. 345, 350 (2006) (discussing the immediate appealability of orders denying absolute immunity). "[W]hen a proper notice of appeal is docketed," a district court is "immediately required" to stay all proceedings related to the issues on appeal. *City of Martinsville v. Express Scripts, Inc.*, 128 F.4th 265, 270 (4th Cir. 2025); *Griggs v. Provident Consumer Disc. Co.*,

459 U.S. 56, 58 (1982) (per curiam). When the issue on appeal concerns solely "whether the litigation may go forward in the district court, . . . the entire case is essentially involved in the appeal." *City of Martinsville*, 128 F.4th at 269 (internal quotation marks and citation omitted). Because sovereign immunity dictates whether defendants may be subject to suit at all, *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 766 (2002), I will grant the defendants' motion and stay all proceedings in the current litigation.[3]

*B. Motion to Certify Appeal Under 28 U.S.C. § 1292(b).*

A district court may certify an order for interlocutory appeal if the order (1) "involves a controlling question of law"; (2) if "there is substantial ground for difference of opinion" as to the question; and (3) if "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Certification under § 1292(b) "should be used sparingly" and "its requirements must be strictly construed." *United States ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 340 (4th Cir. 2017) (internal quotation marks and

[3] The plaintiffs request that any stay this court may enter be limited to 90 days, which the Fourth Circuit can extend if necessary. As discussed, the defendants' notice of appeal as to sovereign immunity pertains to all aspects of the present litigation. Therefore, the appeal divested this court of jurisdiction pending resolution by the Fourth Circuit. *See Griggs*, 459 U.S. at 58 ("The filing of a notice of appeal is an event of jurisdictional significance — it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."). I will thereby decline to limit the stay.

citation omitted). Notwithstanding, § 1292(b) review "may be appropriate where the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts." *Id.* at 340–41 (internal quotation marks and citation omitted).

The defendant clerks have moved to certify (1) whether the Dissemination Restriction is a prior restraint subject to strict scrutiny; and (2) whether the plaintiffs have standing to argue that the Dissemination Restriction is an unconstitutional prior restraint. I will address each of these issues in turn.

*1. Prior Restraint.*

The Complaint alleges a singular claim — that the Dissemination Restriction is an unconstitutional prior restraint subject to strict scrutiny under the First Amendment. Thus, the defendant clerks assert that whether the restriction constitutes a prior restraint is a controlling question of law that could materially advance the termination of litigation.

The plaintiffs argue that this court's May Order addressed only the standard of scrutiny to be applied to the Dissemination Restriction rather than the constitutionality of the restriction. Therefore, they argue that certification would not materially advance the termination of litigation given that the case could still proceed under a lower level of scrutiny. The plaintiffs mischaracterize this court's ruling. The May Order found that "the plaintiffs have made a plausible showing that *the*

*Dissemination Restriction is a prior restraint* that would not survive strict scrutiny." May Order at *6, Dkt. No. 73 (emphasis added). Whether the Dissemination Restriction constitutes a prior restraint is directly relevant to its constitutionality under the First Amendment.

The plaintiffs also argue that whether the Dissemination Restriction is a prior restraint is not a controlling question of law because the same level of scrutiny would be triggered irrespective of whether the restriction is found to be a prior restraint or subsequent punishment. *See Soderberg v. Carrion*, 999 F.3d 962, 968 n.3 (4th Cir. 2021) ("[A]lthough prior restraints had 'been accorded the most exacting scrutiny in previous cases' — it was 'not dispositive' whether the challenged . . . statute was 'view[ed] as a prior restraint or as a penal sanction' because 'even [a penal sanction] requires the highest form of state interest to sustain its validity.'") (quoting *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 101–02 (1979)). Even if it were true that prior restraints and subsequent punishments are afforded the same level of scrutiny,[4] the only claim the Complaint asserts is that the Dissemination Restriction constitutes a *prior restraint* in violation of the First Amendment. Therefore, whether the

[4] The Supreme Court later clarified the distinction between prior restraints and subsequent punishments. *Alexander v. United States*, 509 U.S. 544, 549–50 (1993) (distinguishing between forfeiture imposed after a trial and an injunction enjoining future speech, explaining that the failure to do so "would virtually obliterate the distinction, solidly grounded in our cases, between prior restraints and subsequent punishments").

restriction is a prior restraint is a controlling question that determines whether the present litigation may move forward.

The defendant clerks also assert that there is substantial ground for difference of opinion as to whether the Dissemination Restriction is a prior restraint that forbids speech before it occurs, or whether it relates to post-speech consequences. The *Courthouse News I* majority did not reach the merits of this issue after finding that Courthouse News lacked standing to challenge the Dissemination Restriction. *Courthouse News Serv.*, 126 F.4th at 918. In so holding, the Fourth Circuit vacated the district court's finding that the Dissemination Restriction was a content-neutral time, place, and manner restriction. *Courthouse News Serv. v. Hade*, 631 F. Supp. 3d 349, 367–70 (E.D. Va. 2022), *aff'd in part, vacated in part, remanded sub nom. Courthouse News Serv. v. Smith*, 126 F.4th 899 (4th Cir. 2025).

The *Courthouse News I* dissent opined that the Dissemination Restriction constituted a prior restraint subject to strict scrutiny. *Courthouse News Serv.*, 126 F.4th at 925–26 (Gregory, J., dissenting). The dissent relied upon Fourth Circuit precedent in finding that "States may not impose sanctions on the publication of truthful information contained in official court records open to public inspection," and that a restriction need not impose an "absolute prohibition" on the dissemination of information to be subject to strict scrutiny. *Id.* (first quoting *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 495 (1975); and then quoting *Soderberg*, 999 F.3d at 969). *But*

*cf. Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33–34 (1984) (explaining that a protective order that prevented dissemination of information obtained through discovery but allowed a party to share that same information if obtained through other means was "not the kind of classic prior restraint that requires exacting First Amendment scrutiny.").

Accordingly, I agree that there is substantial ground for difference of opinion as to whether the Dissemination Restriction constitutes a prior restraint. For the reasons discussed, I will certify this issue for appeal.

*2. Standing.*

The defendant clerks also assert that whether the plaintiffs have standing is a controlling question of law that could materially advance the termination of litigation. The Fourth Circuit has previously found standing to be a controlling question of law, the resolution of which could materially advance the termination of litigation. *In re Trump*, 928 F.3d 360, 371 (4th Cir. 2019), *on reh'g en banc*, 958 F.3d 274 (4th Cir. 2020), *cert. granted, judgment vacated on other grounds sub nom. Trump v. D.C.*, 141 S. Ct. 1262 (2021) (finding that the district court erred by refusing to certify the question of whether under § 1292(b) the plaintiffs had standing to sue the president under the Emoluments Clause). But the plaintiffs contend that litigation would continue no matter how the issue of standing were to be resolved on appeal, given that the plaintiffs could simply amend their Complaint to address any

deficiencies. *See Audio MPEG, Inc. v. Creative Labs, Inc.*, No. 2:05CV185, 2006 WL 8459380, at *4 (E.D. Va. Feb. 14, 2006) (finding that an immediate appeal of the standing issue would not terminate litigation because a complaint could simply be refiled). I am not persuaded by this argument, particularly given that § 1292(b) requires only that an immediate appeal "*may* materially advance the ultimate termination of the litigation." (emphasis added).

As the defendant clerks assert, there is also substantial ground for difference of opinion as to whether the plaintiffs have standing. In *Courthouse News I*, the Fourth Circuit found that Courthouse News lacked standing to challenge the Dissemination Restriction because the restriction "applies only to individuals with remote online access to court records." *Courthouse News Serv.*, 126 F.4th at 917. At the same time, the court suggested that Courthouse News could have asserted a right to receive speech if it had shown that "there exists a speaker willing to convey the information" to it. *Id.* (quoting *Stephens v. Cnty. of Albemarle*, 524 F.3d at 492

Here, the plaintiffs identified David Lacy, a Virginia-licensed attorney, as a speaker willing to convey information accessed through OCRA to them. But the defendant clerks contend that there is disagreement as to whether a plaintiff must assert a derivative injury from a willing speaker to support standing under a right-to-receive-speech theory. The defendant clerks assert that a receiver's rights are reciprocal to a speaker's rights. *See Va. State Bd. of Pharmacy v. Va. Citizens*

*Consumer Council*, 425 U.S. 748, 757 (1976) (explaining that a right to advertise would carry with it a concomitant right to receive advertising). And they argue that the plaintiffs have failed to allege that Mr. Lacy has suffered an objective threat or fear of having the Dissemination Restriction enforced against him.

Moreover, the defendant clerks state that the Fourth Circuit has implied, but never explicitly held, that a receiver of speech must assert an injury that is derivative of the speaker's injury. *See Courthouse News Serv.*, 126 F.4th at 917 (finding that "Courthouse News's assertion of derivative injury is 'too speculative to support standing.'") (quoting *Stephens*, 524 F.3d at 491). At the same time, the plaintiffs contend that their injury did derive from Mr. Lacy's, but also from their own right to gather news. *See Overbey v. Mayor of Baltimore*, 930 F.3d 215, 227–28 (4th Cir. 2019) (discussing the right to newsgathering in the context of the right to receive information from a willing speaker). I will grant certification as to the issue of standing to clarify the precise showings a plaintiff must make to prevail on a right-to-receive-speech theory of standing.[5]

[5] The defendant clerks also assert that there is substantial ground for difference of opinion as to whether the plaintiffs have alleged standing given that the plaintiffs have asserted multiple theories of standing throughout their briefings. This court's May Order found that the plaintiffs had made a plausible showing of standing on a right-to-receive-speech theory. Because I have found that the defendant clerks have met the requirements of § 1292(b) with respect to this theory of standing, I need not address any additional theories of standing.

III.

For all these reasons, the Motion to Stay, Dkt. No. 81, is GRANTED and the Motion to Certify Appeal, Dkt. No. 87, is also GRANTED. This case is hereby STAYED pending the resolution of the issues in the court of appeals. I will separately certify the Order dated May 5, 2026, Dkt. No. 73, for an interlocutory appeal under 28 U.S.C. § 1292(b).

It is so **ORDERED**.

The Clerk shall provide a copy of this Opinion and Order to the Clerk of the United States Court of Appeals for the Fourth Circuit.

ENTER: July 2, 2026

/s/ JAMES P. JONES
Senior United States District Judge

FILED: August 4, 2026

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

No. 26-199
(1:25-cv-00075-JPJ-PMS)

---

EDWARD JEWETT, in his official capacity as Clerk of the Circuit Court for the City of Richmond, Virginia; BRENDA HAMILTON, in her official capacity as Clerk of the Circuit Court for the City of Roanoke, Virginia; KELLY FLANNAGAN, in her official capacity as Clerk of the Circuit Court for the City of Bristol, Virginia

Petitioners

v.

COURTHOUSE NEWS SERVICE; LEE ENTERPRISES, INCORPORATED; LEE BHM, LLC, Publisher of the Richmond Times-Dispatch, The Roanoke Times, Bristol Herald Courier, Lynchburg News and Advance, Fredericksburg Freelance Star and The Daily Progress

Respondents

---

O R D E R

---

Upon consideration of submissions relative to the petition for permission to appeal, the court grants the petition. This case is transferred to the regular docket and assigned docket number 26-2043. The record shall be retained in the court below unless requested by this court.

A copy of this order shall be sent to the clerk of the district court.

For the Court

/s/ Nwamaka Anowi, Clerk

*In the*

# *United States Court of Appeals*

*For The Fourth Circuit*

## Record No. ________

EDWARD JEWETT, BRENDA HAMILTON, and
KELLY FLANNAGAN

*Defendants – Petitioners,*

– v. –

COURTHOUSE NEWS SERVICE, *et al*.

*Plaintiffs – Respondents.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA AT ABINGDON**

## PETITION FOR PERMISSION TO APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

William W. Tunner (VSB No. 38358)
William D. Prince, IV (VSB No. 77209)
John P. O'Herron (VSB No. 79357)
Rachel W. Adams (VSB No. 92605)
Peter S. Askin (VSB No. 93371)
*THOMPSON*MCMULLAN, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, Virginia 23219
(804) 698-6253 (Telephone)
wtunner@t-mlaw.com
joherron@t-mlaw.com
wprince@t-mlaw.com
radams@t-mlaw.com
paskin@t-mlaw.com
*Counsel for Petitioners*

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES....iv

INTRODUCTION....1

STATEMENT OF JURISDICTION....4

QUESTIONS PRESENTED....4

RELIEF SOUGHT BY PETITIONERS....5

STATEMENT OF FACTS....5

REASONS WHY THE APPEAL SHOULD BE ALLOWED....9

1. WHETHER THE DISSEMINATION RESTRICTION IS A PRIOR RESTRAINT IS APPROPRIATE FOR THE COURT'S INTERLOCUTORY REVIEW....10

   1.1. The issue is a controlling question of law, the resolution of which may terminate this litigation....10

   1.2. The issue is one for which there is substantial ground for difference of opinion....11

2. WHETHER THE PLAINTIFFS HAVE STANDING IS APPROPRIATE FOR THIS COURT'S INTERLOCUTORY REVIEW....15

   2.1. The issue is a controlling question of law, the resolution of which may terminate this litigation....15

   2.2. The issue is one for which there is substantial ground for difference of opinion....16

3. THE CERTIFIED ISSUES OVERLAP WITH THE ELEVENTH AMENDMENT IMMUNITY ISSUE ALREADY ON APPEAL .............. 18

CONCLUSION .............................................................................. 20

CERTIFICATE OF COMPLIANCE .................................................... 21

CERTIFICATE OF SERVICE ......................................................... 22

EXHIBITS

# TABLE OF AUTHORITIES

## CASES

*Alexander v. United States*,
509 U.S. 544 (1993) .......... 12, 14

*CBS Inc. v. Young*,
522 F.2d 234 (6th Cir. 1975) .......... 19

*City of Martinsville v. Express Scripts, Inc.*,
128 F.4th 265 (4th Cir. 2025) .......... 1

*Clatterbuck v. City of Charlottesville*,
708 F.3d 549 (4th Cir. 2013) .......... 16

*Courthouse News Serv. v. Hade*,
631 F. Supp. 3d 349 (2022) .......... 7, 13

*Courthouse News Serv. v. Smith*,
126 F. 4th 899 (4th Cir. 2025) .......... *passim*

*Courthouse News Serv. et al v. Jewett, et al.*,
Record No. 26-1648(L) .......... 1

*Courthouse News Serv. v. Smith*,
2025 U.S. App. LEXIS 10123 (Apr. 28, 2025) .......... 13

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332, 345 (2006) .......... 19

*Dow Jones & Co. v. Simon*,
842 F.2d 603 (2d Cir. 1988) .......... 18

*Does v. Musk*,
2026 U.S. Dist. LEXIS 17834, *5 (D. Md. 2026) .......... 16

*Ex parte Young*,
209 U.S. 123 (1908) ........................................................ 19

*In re Trump*,
928 F.3d 360 (4th Cir. 2019) ........................................... 12, 16

*In re Trump*,
958 F.3d 274 (4th Cir. 2020) ........................................... 12, 16

*In re Wall Street J.*,
601 F. App'x 215 (4th Cir. 2015 (per curiam)) ........................... 19

*Int'l Refugee Assistance Project v. Trump*,
404 F. Supp. 3d 946 (D. Md. 2019) ........................................ 12

*Kenny v. Wilson*,
885 F.3d 280 (4th Cir. 2018) ................................................ 19

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*,
921 F.2d 21 (2d Cir. 1990) .................................................. 11

*McBurney v. Cucinelli*,
616 F.3d 393 (4th Cir. 2010) ................................................ 19

*McFarlin v. Conseco Servs.*,
381 F.3d 1251 (11th Cir. 2004) ............................................. 17

*Moore v. Virginia Cmty. Bankshares, Inc.*,
666 F. Supp. 3d 547 (W.D. Va. 2023) ..................................... 16

*NAACP v. Jones*,
131 F.3d 1317 (1997) .......................................................... 18

*Novak v. City of Parma*,
932 F.3d 421 (6th Cir. 2019) ................................................ 15

*Overbey v. Mayor of Baltimore*,
930 F.3d 215 (4th Cir. 2019) ........................................................ 18

*Pa. Family Inst., Inc. v. Black*,
489 F.3d 156 (3d Cir. 2007)......................................................... 18

*Papania v. United States*,
715 F. Supp. 3d 789 (E.D. Va. 2024)............................................ 11

*Pell v. Procunier*,
417 U.S. 817 (1974) ..................................................................... 14

*Pinkley, Inc. v. City of Frederick, Md.*,
191 F.3d 394 (4th Cir. 1999) ........................................................ 11

*Rock for Life-UMBC v. Hrabowski*,
411 F. App'x 541 (4th Cir. 2010) ................................................. 20

*Seattle Times Co. v. Rhinehart*,
467 U.S. 20 (1984) ....................................................................... 14

*Soderberg v. Carrion*,
999 F.3d 962 (4th Cir. 2021) ........................................................ 13

*United States ex rel. A1 Procurement, LLC v. Thermcor, Inc.*,
173 F. Supp. 3d 320 (E.D. Va. 2016)............................................ 12

*United States ex rel. Michaels v. Agape Senior Cmty., Inc.*,
848 F.3d 330 (4th Cir. 2017) ........................................................ 16

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*,
425 U.S. 748 (1976) ............................................................... 17, 18

**RULES**

Federal Rule of Appellate Procedure 5 .......... 5, 6

**STATUTES**

28 U.S.C. § 1292(b) .......... *passim*

42 U.S.C. § 1983 .......... 9

Va. Code § 17.1-225 .......... 6

Va. Code § 17.1-293 .......... *passim*

**SECONDARY SOURCES**

16 Charles A. Wright, et al.,
Federal Practice and Procedure § 3930 (2d ed. 1996) .......... 11, 17

## INTRODUCTION

This petition under 28 U.S.C. § 1292(b) raises two First Amendment issues for this Court's consideration alongside the Eleventh Amendment immunity issue already before this Court. *See Courthouse News Serv. et al v. Jewett, et al.*, Record No. 26-1648(L). Pending resolution of that appeal, the proceedings in the district court have been stayed. *See City of Martinsville v. Express Scripts, Inc.*, 128 F.4th 265, 269 (4th Cir. 2025); ECF No. 94.

The decision being appealed, here and in Record No. 26-1648(L), relates to the plaintiffs' sole claim that Virginia Code § 17.1-293(H) is an unconstitutional prior restraint on their free speech rights. Virginia Code § 17.1-293 permits Virginia attorneys to have remote online access to court records, and subsection (H) gives clerks of court discretion to revoke that access if an attorney sends those obtained-online records to a third party.[1] The petitioners are the elected clerks for the Circuit Courts of Richmond City, Roanoke City, and Bristol City, respectively ("Defendant Clerks"). ECF No. 1 at ¶¶ 21, 23, 25.

---

[1] The parties, district court, and this Court have all referred to this statute as the "Dissemination Restriction." This petition will follow that convention.

The plaintiffs have spent years trying to invalidate this and other Virginia statutes that stand in the way of their goal to have anyone, anywhere, and at any time, access and obtain Virginia court records. The complaint in this case follows their last effort when this Court ruled that they lacked standing to challenge the Dissemination Restriction because without a willing speaker, "[their] assertion of derivative injury is too speculative to support standing." *See Courthouse News Serv. v. Smith*, 126 F. 4th 899 (4th Cir. 2025) (internal quotation marks omitted).

Back again, the plaintiffs now allege a single claim—that the Dissemination Restriction is a prior restraint on speech. ECF No. at ¶¶ 87-89. And they allege a single theory of standing—that they are asserting a right to receive speech from a willing speaker, a Virginia-licensed attorney with online access, who cannot share court records with them because of the Dissemination Restriction. *Id.* at ¶ 90.

The defendants filed Motions to Dismiss under Rule 12(b)(1) and 12(b)(6), arguing that the Dissemination Restriction is not a prior restraint based on its plain meaning, and that the plaintiffs lacked standing because they failed to assert that their claimed injury to their right

to receive speech was derivative of an injury to the rights of their willing speaker.[2] In its briefing, the plaintiffs disavowed the theory that their rights were reciprocal of or derivative to their willing speaker's rights, and argued that the Dissemination Restriction was subject to strict scrutiny whether it was a prior restraint or not. ECF No. 48 at 2, 9, 11-13, 28-33. The district court denied the Motions, finding first that the plaintiffs alleged enough for standing under the willing speaker doctrine. ECF No. 73 at 10-12. The district court then found, relying on Judge Gregory's dissenting opinion in *Courthouse News Serv.*, that the Dissemination Restriction was a prior restraint and thus subject to strict scrutiny. *Id.* at 14-15. This ruling is attached as Exhibit A.

The district court, however, subsequently agreed that its rulings on standing and whether the Dissemination Restriction is a prior restraint satisfied the elements for certification under § 1292(b). ECF No. 94. This order is attached as Exhibit B. The petitioners now ask this Court to grant the certified issues to be considered alongside the currently pending sovereign immunity issue. Whether Code § 17.1-293(H)

---

[2] The defendants also argued that they were entitled to sovereign immunity, which is the subject of Record No. 26-1648.

is a prior restraint on speech, and the district court's reliance on Judge Gregory's dissent, justifies granting this petition so that this Court can clarify the nature of the right at issue before the costly and lengthy litigation under the strict scrutiny standard. The same is true of standing: whether the plaintiffs have satisfied this Court's invocation of standing via the "willing speaker" doctrine is an issue that deserves immediate resolution while this case is at the Fourth Circuit already.

## Statement of Jurisdiction

This Court has discretionary jurisdiction over this appeal. In its July 2, 2026, Order, the district court certified in writing that its Order denying the Motions to Dismiss met the criteria for 28 U.S.C. § 1292(b) certification. This petition is timely because it is filed within 10 days of the certification order as required by 28 U.S.C. § 1292(b) and Federal Rule of Appellate Procedure 5(a).

## Questions Presented

1. Did the district court err in finding that Code § 17.1-293(H) is plausibly alleged to be a prior restraint that would not survive strict scrutiny?

2. Did the district court err in finding that the plaintiffs have standing under the willing speaker doctrine to assert that Code § 17.1-293(H) is an unconstitutional prior restraint on speech?

## RELIEF SOUGHT BY PETITIONERS

The Petitioners ask this Court to grant interlocutory review under Rule 5(b) and 28 U.S.C. § 1292(b) to address the plaintiffs standing under the willing speaker doctrine and whether Code § 17.1-293(H) is a prior restraint on speech, as alleged by the plaintiffs.

## STATEMENT OF FACTS

Because this appeal arises from the district court's denial of a Rule 12(b)(1) and 12(b)(6) Motion to Dismiss, the relevant facts are few.

Plaintiff Courthouse News is a California corporation that summarizes civil court pleadings and court cases. ECF No. 1 at ¶¶ 29-31. The remaining Plaintiffs are part of Lee Enterprises, Inc., which "is the fourth largest newspaper publisher" in the country. *Id.* at ¶ 45. The Defendant Clerks are responsible for the maintenance and administration of court records in their respective jurisdictions. *Id.* at ¶¶ 21, 23, 25.

This case is the latest in a series of lawsuits brought by CNS and the plaintiffs challenging Virginia's statutory scheme relating to online access to nonconfidential court records. Clerks are not required to offer remote online access to nonconfidential records, and there is no restriction on who clerks can offer access to. *See* Va. Code § 17.1-225, -293.

If a clerk decides to offer remote access, there is certain confidential information and records that are accessible only to Virginia-licensed attorneys and their agents. *See* Va. Code § 17.1-293(D) and (E)(7).

Subsection H—the Dissemination Restriction challenged by the Complaint in this case—then states:

> Nothing in this section shall be construed to permit any data accessed by secure remote access to be sold or posted on any other website or in any way redistributed to any third party, and the clerk, *in his discretion, may deny secure remote access to ensure compliance with these provisions*. However, the data accessed by secure remote access may be included in products or services provided to a third party of the subscriber provided that (i) such data is not made available to the general public and (ii) the subscriber maintains administrative, technical, and security safeguards to protect the confidentiality, integrity, and limited availability of the data.

Va. Code § 17.1-293(H) (emphases added).

Courthouse News, one of the Plaintiffs in this case, previously filed a similar lawsuit in the Eastern District of Virginia challenging the constitutionality of limiting access to Virginia attorneys (the "Access Restriction") and the Dissemination Restriction. *See Courthouse News Serv. v. Smith*, 126 F.4th 899, 909 (4th Cir. 2025). The Eastern District of Virginia granted summary judgment to the defendants and dismissed these claims. *Courthouse News Serv. v. Hade*, 631 F. Supp. 3d 349, 370

(2022) (Hudson, J.), *aff'm in part, vacated in part* 126 F.4th 899. Of note here, the Eastern District upheld the Dissemination Restriction as content-neutral time, place, and manner regulations justified by the Commonwealth's interests in the orderly and efficient administration of justice and narrowly tailored to the protection of sensitive personal information contained in court filings. *Id.* at 360–70. The Court also reasoned that the Dissemination Restriction in Virginia Code § 17.1-293(H) did not prohibit Courthouse News from "redistribut[ing] information from civil court records obtained physically at the courthouse." *Id.* at 370. As the plaintiffs in this case concede in their Complaint, the records for which they seek online access are already available to them at the courthouse. *See* Compl. ¶¶ 63, 66, 70.

On appeal, the Fourth Circuit affirmed Judge Hudson's decision that the Access Restriction did not violate the First Amendment: "[b]y limiting online access to this relatively small, vetted group of individuals [Virginia attorneys] who are strongly incentivized to follow OCRA's rules and who can be effectively disciplined for misconduct, the Access Restriction furthers the Commonwealth's interest in safeguarding sensitive personal information in court records." *Courthouse News*, 126

F.4th at 913. As the Fourth Circuit observed, "attorneys and their staff do not pose the same threat to sensitive personal information as the public at large." *Id.* at 915.

As to the Dissemination Restriction, the Court held that Courthouse News lacked standing to challenge it because it lacked a constitutional right of access to those records. *Id.* at 917. The Dissemination Restriction

> *does not impose any restraint on Courthouse News's speech*, because it applies only to individuals with remote online access to court records. Courthouse News does not currently have such access, and we have determined that it is not constitutionally entitled to receive that access.

*Id.* (emphasis added). Although CNS suggested that the Dissemination Restriction indirectly injured it by hindering its ability to acquire electronic court records from its attorneys with online access, this Court said the assertion of derivative injury was "too speculative to support standing." *Id.*

Plaintiffs then filed this Complaint, explicitly seeking to remedy the standing defect identified by this Court. Specifically, Plaintiffs allege that they have asked their privately-retained Virginia attorney, David Lacy ("Mr. Lacy"), to provide them with certain civil court

pleadings he obtained through his online access. ECF No. 1 at ¶ 11. The Complaint alleges that Mr. Lacy would have provided such pleadings but could not because the Dissemination Restriction "may have" caused his online-access to be revoked or subjected him to "further sanctions, including disbarment." *Id.* at ¶ 4, 12, 61. The Complaint asserted a single First Amendment claim under 42 U.S.C. § 1983: that the Dissemination Restriction is unconstitutional on its face and as applied as a "prior restraint." *Id.* at ¶ 87.

The defendants filed Motions to Dismiss under Rule 12(b)(1) and 12(b)(6). The district court denied the motions. ECF No. 73. After Defendants noticed their interlocutory appeal of the district court's ruling on Eleventh Amendment immunity, the Defendant Clerks asked for certification under 28 U.S.C. § 1292(b). Despite the plaintiffs contesting the motion, the district court granted it by order and opinion dated July 2, 2026. ECF No. 94.

**REASONS WHY THE APPEAL SHOULD BE ALLOWED**

This case is automatically stayed in the district court pending resolution of the defendants' Eleventh Amendment immunity appeal. For reasons of analytical clarity and judicial economy, this Court should

accept the two additional issues certified by the district court to consider alongside Eleventh Amendment immunity.

## 1. Whether the Dissemination Restriction is a Prior Restraint is Appropriate for this Court's Interlocutory Review.

The district court found that plaintiffs made a "plausible showing that the Dissemination Restriction is a prior restraint on speech that would not survive strict scrutiny." ECF No. 73 at 15. That finding imposes on the parties the concomitant implications on discovery and the analytical framework through which the district court will ultimately decide whether the Dissemination Restriction is constitutional. Given the significance of that finding, and the cost and time of litigating in that analytical framework, this Court should accept the certified issue to consider alongside the Eleventh Amendment immunity issue already before it.

### 1.1. The issue is a controlling question of law, the resolution of which may terminate this litigation.

As the district court noted in its opinion certifying this issue, the plaintiffs assert a single claim in their Complaint: that Code § 17.1-293(H) is an unconstitutional *prior restraint* on speech that fails constitutional scrutiny. ECF No. 94 at 6. If the statute is not a prior restraint

on speech, the plaintiffs' lawsuit fails and should be dismissed. *Papania v. United States*, 715 F. Supp. 3d 789, 802 (E.D. Va. 2024) ("A case may not proceed to trial on 'an unpleaded theory of recovery' without 'express or implied consent of the parties.'") (quoting *Pinkley, Inc. v. City of Frederick, Md.*, 191 F.3d 394, 401 (4th Cir. 1999)). The issue, then, is a controlling question of law that would materially impact this litigation. *See Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990) ("[A] question of law is 'controlling' if reversal of the district court's order would terminate the action."); *see generally* 16 Charles A. Wright, et al., Federal Practice and Procedure § 3930 (explaining "controlling" and citing cases).

**1.2. The issue is one for which there is substantial ground for difference of opinion.**

The issue is also one for which there is "[a] substantial ground for difference of opinion" and "where reasonable jurists might disagree on [its] resolution." *In re Trump*, 928 F.3d 360, 371 (4th Cir. 2019) (vacated on other grounds in *In re Trump*, 958 F.3d 274 (4th Cir. 2020)). The "substantial ground for disagreement may arise if there is a 'novel and difficult issue of first impression,' or if there is a circuit split and the

controlling circuit has not commented on the conflicting issue." *United States ex rel. A1 Procurement, LLC v. Thermcor, Inc.*, 173 F. Supp. 3d 320, 323 (E.D. Va. 2016); *Int'l Refugee Assistance Project v. Trump*, 404 F. Supp. 3d 946, 950 (D. Md. 2019).

To start, the issue here is one of first impression. Specifically, there is no controlling authority that directly answers whether the plain language of the Dissemination Restriction satisfies the meaning of a "prior restraint" as articulated by the Supreme Court of the United States. *See Alexander v. United States*, 509 U.S. 544, 550 (1993) (defining a prior restraint, as distinct from subsequent punishment, as an "administrative and judicial order forbidding certain communications when issued in advance of the time that such communications are to occur.") The Defendant Clerks argued that the Dissemination Restriction is not a restraint on speech because it does not forbid speech before it occurs. *See* ECF No. 44 at 9-11, ECF No. 62 at 3, ECF No. 88 at 5-6.

The district court found that it was, but it relied on two non-binding authorities in doing so. First, the court cited Judge Gregory's dissent in *Courthouse News Serv.*, which was never adopted by the full Court because the petition for rehearing en banc in that case was

denied. *See Courthouse News Serv. v. Smith*, 2025 U.S. App. LEXIS 10123 (Apr. 28, 2025). Plus, the district court's decision in *Hade* found the Dissemination Restriction to be a constitutional time, place, and manner regulation. *See Courthouse News Serv.*, 126 F.4th at 906 (citing *Courthouse News Serv. v. Hade*, 631 F. Supp. 3d 349 (E.D. Va. 2022)).

Second, the district court here relied on this Court's ruling in *Soderberg v. Carrion*, 999 F.3d 962, 966-67 (4th Cir. 2021). But that case involved a statute that constituted a penal sanction, "prohibit[ed] and punish[ed]" speech, and applied to the dissemination of speech available to "[t]he public generally." *Id.* at 964. Code § 17.1-293(H) bears none of these characteristics, so the decision in *Soderberg* is not controlling.

In addition to being a question of first impression, there is room for reasonable disagreement. As the district court noted in its certification opinion, the Supreme Court of the United States has previously held that that an order restricting distribution of information that was obtained one way was "not the kind of classic prior restraint that requires exacting First Amendment scrutiny" because it did not cover information obtained by other means. *See Seattle Times Co. v. Rhinehart*,

467 U.S. 20, 34 (1984); *see also Pell v. Procunier*, 417 U.S. 817, 834-35 (1974) (holding that because the statute at issue did not "deny the press access to sources of information available to members of the general public," it did not abridge any First Amendment rights). As the plaintiffs have pleaded, the court records to which they seek online access are, in fact, already available to them at Virginia's courthouses. Compl. ¶¶ 63, 66. And the public at large does not have remote online access to court records in electronic format, either. *Id.* ¶¶ 64, 65. The speech supposedly being restrained, in other words, is speech the plaintiffs can obtain by other means, like the rest of the public.

Plus, the plain language of the Dissemination Restriction falls outside the Supreme Court's definition of a "prior restraint" in *Alexander* and its progeny. The statute does not forbid speech before it occurs: it simply gives court clerks discretion to revoke access *after the fact*. That is, *if* a licensed attorney with online access to court records "speaks" by sharing those records with a third party, *then* the clerks can revoke that attorney's access. *See Novak v. City of Parma*, 932 F.3d 421, 432 (6th Cir. 2019) ("An action taken after the speech is expressed, like a punishment for disfavored speech, is not a prior restraint.").

### 2. WHETHER THE PLAINTIFFS HAVE STANDING IS APPROPRIATE FOR THIS COURT'S INTERLOCUTORY REVIEW.

The plaintiffs assert a discrete form of standing in this case: that the Dissemination Restriction harms their right to receive speech from a willing speaker. This standing theory follows this Court's decision in *Courthouse News Serv. v. Smith*, where this Court held that CNS lacked standing because the Dissemination Restriction "does not impose any restraint on [CNS'] speech, because it applies only to individuals with remote online access to court records. . . . Because the Dissemination Restriction does not apply to [CNS'] speech, it lacks standing to challenge that provision." *Courthouse News Serv.*, 126 F.4th at 917. The plaintiffs expressly alleged that to overcome that finding, they are asserting a right to receive speech from a willing speaker who cannot convey that speech because of the Dissemination Restriction.

#### 2.1. The issue is a controlling question of law, the resolution of which may terminate the litigation.

As the district court noted, this Court has previously held that standing is a controlling question of law that could materially advance the termination of litigation. *In re Trump*, 928 F.3d at 371. That is because standing is a "threshold jurisdictional inquiry" implicating

whether a court has jurisdiction over a case. *Moore v. Virginia Cmty. Bankshares, Inc.*, 666 F. Supp. 3d 547, 552-53 (W.D. Va. 2023) (cleaned up). Standing is also "a legal question that [appellate courts] examine de novo." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 553 (4th Cir. 2013). And when standing is a "pure question of law"— that is, when it is "an abstract legal issue that the court of appeals can decide quickly and cleanly"—it is suitable for interlocutory review. *See Does v. Musk*, 2026 U.S. Dist. LEXIS 17834, *5 (D. Md. 2026) (citing *United States ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 340 (4th Cir. 2017)).

Because resolving standing will "serve to avoid a trial or otherwise substantially shorten the litigation," it is appropriate for interlocutory review. *See McFarlin v. Conseco Servs.*, 381 F.3d 1251, 1259 (11th Cir. 2004) (citing 16 Charles Alan Wright, et al., Federal Practice & Procedure § 3930 at 432 (2d ed. 1996)).

### 2.2. The issue is one for which there is substantial ground for difference of opinion.

While the plaintiffs made explicit their theory of standing in their Complaint, they waffled later as to whether they (as receivers of speech) needed to assert an injury that is derivative of Mr. Lacy's (as their

willing speaker). This is a critical point: if a listener's rights are derivative of the speaker's, then it is also true that a listener has no injury in fact if the speaker has no injury in fact.

This Court has never addressed this issue, but the nature of the willing speaker doctrine resolves this question. In the landmark willing-speaker case, *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 757 (1976), the Supreme Court made clear that the rights of the speaker and the rights of the listener were conjoined: "If there is a right to advertise, there is a reciprocal right to receive the advertising." The listener's rights, in other words, are reciprocal of the speaker's: "the right to listen depends entirely on the infringement on the rights of a willing speaker." *Pa. Family Inst., Inc. v. Black*, 489 F.3d 156, 166 (3d Cir. 2007); *NAACP v. Jones*, 131 F.3d 1317, 1322 n. 5 (1997) ("[I]n *Virginia Pharmacy,* the Court found the listener's rights to derive from the existence of the speaker's rights."); *Dow Jones & Co. v. Simon,* 842 F.2d 603, 608 (2d Cir. 1988) (the "right to receive speech does not enlarge the rights" of the speaker because a listeners' rights are "entirely derivative" of a speaker's rights). For these reasons, a

listener's rights are no greater than that of the speaker. *Jones*, 131 F.3d at 1322.

But the plaintiffs repeatedly disclaimed any rights—and thus injury—that derived from Mr. Lacy. *See* ECF No. 48 at 2, 9 and 11-13 (repeatedly asserting a right to gather news as not derived from a willing speaker). In fact, the plaintiffs labeled as a false premise the notion "that [their] standing is derivative of" the attorneys with online access. *Id.* at 15. Rather, the plaintiffs argued that they need not assert a derivative injury, and that their own right to "gather news" or "access" information stands independent of any injury suffered by the alleged willing speaker. *See* ECF No. 48 at 2, 9, 11, 13 (citing *Overbey v. Mayor of Baltimore*, 930 F.3d 215 (4th Cir. 2019); *In re Wall Street J.*, 601 F. App'x 215 (4th Cir. 2015 (per curiam); *CBS Inc. v. Young*, 522 F.2d 234 (6th Cir. 1975)).

This Court should resolve whether the plaintiffs' standing to assert their claim derives from their alleged willing speaker.

### 3. THE CERTIFIED ISSUES OVERLAP WITH THE ELEVENTH AMENDMENT IMMUNITY ISSUE ALREADY ON APPEAL.

Finally, this Court should grant the Petition because both issues overlap with the pending Eleventh Amendment immunity appeal.

Briefly stated, the Eleventh Amendment issues on appeal relate to the *Ex Parte Young* exception, which asks whether the defendants have "some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings . . . to enforce against parties affected [by] an unconstitutional act.'" *McBurney v. Cucinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (quoting *Ex parte Young,* 209 U.S. 123, 155-56 (1908)). This requires assessing the nature of the Dissemination Restriction and the relative authority that the defendants have in relation to it. Put differently, the Eleventh Amendment issues require this Court to interpret what it is that the Dissemination Restriction requires or simply permits-with-discretion in relation to the defendants. *See Ex Parte Young*, 209 U.S. at 158. What do the clerks have authority to do, in other words, as to the speech of the plaintiffs' alleged willing speaker? That is the same question at the heart of assessing whether the statute is a prior restraint.

The same is true of standing. In the *Ex parte Young* context—where a party exclusively seeks prospective injunctive relief—the party "must establish an ongoing or future injury in fact." *Kenny v. Wilson*, 885 F.3d 280, 287 (4th Cir. 2018); *DaimlerChrysler Corp. v. Cuno*, 547

U.S. 332, 345 (2006) (plaintiff must show "imminent" and "certainly impending" harm). "[F]ears of [future] enforcement that are 'imaginary' or 'wholly speculative' are insufficient to confer standing." *Rock for Life-UMBC v. Hrabowski*, 411 F. App'x 541, 547 (4th Cir. 2010). Whether the plaintiffs assert rights and harms derivative of—or separate and apart from— their alleged willing speaker matters for this inquiry.

Resolving these analytical questions together serves the interests of judicial economy and will assist the parties, and district court, if this case proceeds.

## Conclusion

For these reasons, this Court should exercise its discretion and grant permission to appeal the district court's order.

Date: July 13, 2026

Respectfully submitted,

**EDWARD JEWETT**, in his official capacity as Clerk of the Circuit Court for the City of Richmond, Virginia;

**BRENDA HAMILTON**, in her official capacity as Clerk of the Circuit Court for the City of Roanoke, Virginia; and

**KELLY FLANNAGAN**, in her official capacity as Clerk of the Circuit Court for the City of Bristol, Virginia.

By Counsel

/s/ John P. O'Herron
William W. Tunner (VSB No. 38358)
William D. Prince IV (VSB No. 77209)
John P. O'Herron (VSB No. 79357)
Rachel W. Adams (VSB No. 92605)
Peter S. Askin (VSB No. 93371)
*Thompson*McMullan, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, Virginia 23219
Telephone: (804) 649-7545
Facsimile: (804) 780-1813
wtunner@t-mlaw.com
wprince@t-mlaw.com
joherron@t-mlaw.com
radams@t-mlaw.com
paskin@t-mlaw.com

*Counsel for Petitioners*

## CERTIFICATE OF COMPLIANCE

I certify that this petition complies with Federal Rules of Appellate Procedure 5(c) and 32(a) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14pt Century Schoolbook, and because excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 4020 words.

/s/ John P. O'Herron
John P. O'Herron, Esq.
*Thompson*McMullan, P.C.
100 Shockoe Slip, Third Floor
Richmond, VA 23219-4140
Phone: (804) 698-6253
Fax: (804) 780-1813
Email: joherron@t-mlaw.com

*Counsel for Petitioners*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 13th day of July, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. Copies have been emailed to the following:

Roger Myers, Esq.
Rachel Matteo-Boehm, Esq.
Carlie Tenenbaum, Esq.
BRYAN CAVE LEIGHTON PAISNER LLP
3 Embarcadero Center, 7th Floor
2100 East Cary Street, Suite 310
San Francisco, CA 94111
Telephone: (415) 675-3400

Dabney J. Carr IV, Esq.
Lauren H. Miller, Esq.
TROUTMAN PEPPER LOCKE LLP
P.O. Box 1122
Richmond, Virginia 23218
Telephone: (804) 697-1200
Facsimile: (805) 697-1339
dabney.carr@troutman.com

roger.myers@bclplaw.com
rachel.matteo-boehm@bclplaw.com
carlie.tenenbaum@bclplaw.com

*Counsel for Respondents*

lauren.h.miller@troutman.com

*Counsel for Respondents*

Erin R. McNeill (VSB# 78816)
Senior Assistant Attorneys General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone (ERM): (804) 692-0598
Facsimile (ERM): (804) 371-0200
Email: Emcneill@oag.state.va.us

*Counsel for Petitioner Hade*

/s/John P. O'Herron
John P. O'Herron, Esq.
*Thompson*McMullan, P.C.
100 Shockoe Slip, Third Floor
Richmond, VA 23219-4140
Phone: (804) 698-6253
Fax: (804) 780-1813
Email: joherron@t-mlaw.com

*Counsel for Petitioners*

# EXHIBIT A

CLERKS OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED
May 05, 2026
LAURA A. AUSTIN, CLERK
BY: s/ FELICIA CLARK
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ABINGDON DIVISION**

| | | |
|---|---|---|
| **COURTHOUSE NEWS SERVICE, et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:25CV00075 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **KARL R. HADE, etc., et al.,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendants. | ) | |

*Roger Myers, BRYAN CAVE LEIGHTON PAISNER LLP, San Francisco, California and Dabney J. Carr IV, TROUTMAN PEPPER LOCKE LLP, Richmond, Virginia, for Plaintiffs; Erin R. McNeill, Senior Assistant Attorney General, OFFICE OF THE VIRGINIA ATTORNEY GENERAL, Richmond, Virginia, for Defendant Karl R. Hade; Peter Askin, THOMPSONMCMULLAN, P.C., Richmond, Virginia, for Defendants Edward Jewett, Brenda Hamilton, and Kelly Flannagan.*

The plaintiffs, a legal news service and publishers of various local Virginia newspapers, challenge the constitutionality of a Virginia statute that restricts the dissemination of non-confidential civil court records obtained through the state's remote online access system. The defendants, Virginia court officials, have moved to dismiss the case for lack of subject-matter jurisdiction and failure to state an actionable claim. For the reasons discussed below, the motions to dismiss will be denied.

## I. BACKGROUND.

All Virginia circuit courts provide the public and press with access to non-confidential civil court records at their respective physical courthouses. Regulation of remote access to these same records is left to the discretion of individual Virginia circuit court clerks.[1] Va. Code Ann. § 17.1-225. Most Virginia circuit courts offer remote access to such records via the Officer of the Court Remote Access system (OCRA). The statute governing OCRA requires Virginia circuit court clerks to limit OCRA access to Virginia-licensed attorneys and their authorized agents, pro hac vice attorneys, and select government agencies (Access Restriction).[2] Va. Code Ann. § 17.1-293(E)(7). However, if an authorized OCRA user transmits remotely accessed data to an unauthorized third party, circuit court clerks have discretion to revoke the user's OCRA access (Dissemination Restriction). Va. Code Ann. § 17.1-293(H).[3]

---

[1] The circuit courts in Virginia are the local general trial courts of record. There are 120 circuit courts. Compl. ¶ 39, Dkt. No. 1. Each circuit court has an elected clerk who serves as the custodian of its records.

[2] In a prior lawsuit filed by Courthouse News, the Fourth Circuit upheld the Access Restriction as constitutional. *Courthouse News Serv. v. Smith*, 126 F.4th 899, 916–17 (4th Cir. 2025). It is thus not at issue in the present litigation.

[3] Va. Code Ann. § 17.1-293(H) states:

> Nothing in this section shall be construed to permit any data accessed by secure remote access to be sold or posted on any other website or in any way redistributed to any third party, and the clerk, in his discretion, may deny secure remote access to ensure compliance with these provisions. However,

Plaintiff Courthouse News Service (Courthouse News) is a nationwide news service that specializes in reporting on civil litigation in state and federal courts. Co-plaintiffs Lee Enterprises, Inc. (Lee) and Lee BHM LLC (Lee BHM), a subsidiary of Lee, are publishers of various newspapers across Virginia.

In 2021, Courthouse News filed a lawsuit in the U.S. District Court for the Eastern District of Virginia challenging the constitutionality of both the Access Restriction and the Dissemination Restriction. The district court found both restrictions to be content-neutral time, place, and manner regulations that were narrowly tailored to further Virginia's interest in protecting the disclosure of citizens' private information and the efficient administration of justice. *Courthouse News Serv. v. Hade*, 631 F. Supp. 3d 349, 360–70 (E.D. Va. 2022).

On appeal, the Fourth Circuit upheld the Access Restriction as constitutional. *Courthouse News Serv. v. Smith*, 126 F.4th 899, 917–18 (4th Cir. 2025) (*Courthouse News I*). But the court of appeals determined that, because Courthouse News was not entitled to OCRA access, it lacked standing to challenge the Dissemination Restriction. *Id.* at 917 (explaining that "[t]he Dissemination Restriction does not impose any restraint on Courthouse News's speech, because it applies only to

---

the data accessed by secure remote access may be included in products or services provided to a third party of the subscriber provided that (i) such data is not made available to the general public and (ii) the subscriber maintains administrative, technical, and security safeguards to protect the confidentiality, integrity, and limited availability of the data.

individuals with remote online access to court records"). The court also rejected Courthouse News's contention that the Dissemination Restriction indirectly injured its ability to acquire records from attorneys with OCRA access because Courthouse News would have needed to show that "there exists a speaker willing to convey the information" to have standing to assert the right to receive speech. *Id.* (internal quotation marks and citation omitted). Because "Courthouse News ha[d] not identified anyone who would redistribute data from OCRA to Courthouse News absent the Dissemination Restriction," the court found that the derivative injury allegations were "too speculative" to establish standing. *Id.* (internal quotation marks and citation omitted).

On December 9, 2025, Courthouse News, along with Lee and Lee BHM, filed this action against Karl R. Hade, the Executive Secretary of the Office of Executive Secretary (OES) of the Supreme Court of Virginia, as well as Virginia circuit court clerks Edward Jewett, Brenda Hamilton, and Kelly Flannagan, all in their official capacities.[4] The sole claim challenges the Dissemination Restriction of Va. Code Ann. § 17.1-293(H) as an unconstitutional prior restraint in violation of the First Amendment. To rectify the standing issue previously identified by the Fourth Circuit in Courthouse News I, the plaintiffs now argue that the Dissemination Restriction

---

[4] Defendants Jewett, Hamilton, and Flannagan are the circuit court clerks for the cities of Richmond, Roanoke, and Bristol, respectively.

infringes on the speech of David Lacy, a Virginia-licensed attorney. The plaintiffs allege that they have asked Mr. Lacy on several occasions to provide them with copies of civil court pleadings through OCRA, but Mr. Lacy informed them that the Dissemination Restriction prohibited him from doing so. Accordingly, the plaintiffs request this court enjoin the defendants from prohibiting the dissemination of public court records and information accessed via OCRA and declare the Dissemination Restriction unconstitutional.[5]

All defendants have moved to dismiss the case, asserting sovereign immunity and lack of standing.[6] Separately, the defendant clerks assert that the plaintiffs' as-applied challenge to the Dissemination Restriction is not ripe, and defendant Hade asserts that the plaintiffs have failed to show that the Dissemination Restriction violates the First Amendment. Additionally, the plaintiffs have conditionally moved to amend their complaint and have requested this court take judicial notice.[7] Dkt.

---

[5] The plaintiffs assert jurisdiction under 28 U.S.C. §§ 1331, 1343, and 2201. Compl. ¶ 14, Dkt. No. 1.

[6] Defendant Hade only challenges standing as to plaintiff Lee.

[7] The plaintiffs specified that their motion to amend is contingent upon this court's grant of the motions to dismiss. Pls.' Mot. for Leave to Amend 2, Dkt. No. 49. While the plaintiffs did not specify whether their request for judicial notice, Pls.' Req. Jud. Notice, Dkt. No. 50, is also contingent upon the disposition of the motions to dismiss, I will also treat the request as conditional upon this court's grant of the motions to dismiss. Thus, I will deny both of plaintiff's motions as moot.

Nos. 49, 50. All pending motions have been fully briefed and argued and are now ripe for review.

## II. Standards of Review.

A Rule 12(b)(1) motion challenges a court's jurisdiction over a case. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). The plaintiff bears the burden of establishing that subject-matter jurisdiction exists. *Id.* Dismissal under Rule 12(b)(1) is appropriate "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (citation omitted).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint to determine whether the plaintiff has properly stated a claim. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, the plaintiff must state that "a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based on its "judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In evaluating a complaint, the court accepts as true all well-pleaded facts. *Id.* Although a complaint does not need detailed factual allegations to survive a motion to dismiss, it must contain more than labels, conclusions, and a recitation of the elements of the cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## III. Discussion.

### *A. Sovereign Immunity.*

The defendants first contend that this court lacks subject-matter jurisdiction because of sovereign immunity. The Eleventh Amendment generally immunizes states from being sued in federal court by private parties. *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021). This immunity also extends to state officers sued in their official capacity. *Alden v. Maine*, 527 U.S. 706, 756 (1999). But private parties may sue state officials for prospective, injunctive relief to prevent them from enforcing state laws that run afoul to federal law. *Whole Woman's Health*, 595 U.S. at 39; *Ex parte Young*, 209 U.S. 123, 155–56 (1908) (explaining that the immunity exception applies to state officials who have "some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings . . . to enforce against parties affected [by] an unconstitutional act, violating the Federal Constitution"); *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (stating that courts "must find a 'special relation' between the officer being sued and the challenged statute before invoking the [*Ex parte Young*] exception") (quoting *Ex parte Young*, 209 U.S. at 157). Upon finding that a party is entitled to sovereign immunity, courts are required to dismiss a suit for lack of subject-matter jurisdiction. *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018).

First, defendant Hade argues that he lacks the requisite authority to enforce the challenged statute. He previously raised the same argument before the district court. *Courthouse News Serv.*, 580 F. Supp. 3d at 289. There, the district court found that Courthouse News had adequately alleged that OES had previously denied Courthouse News access to OCRA. *Id.* at 294–95. Consequently, the court concluded that, "even accepting Defendant Hade's argument that he does not have unilateral control over court records inside of OCRA, [Courthouse News] has adequately alleged that he maintains a 'special relation' to the challenged policy and has 'acted or threatened' to enforce it." *Id.* at 295 (quoting *McBurney*, 616 F.3d at 402).

In this suit, the Complaint alleges that OES "created, provides, supports and maintains OCRA for Virginia court clerks," requires circuit court clerks include the Dissemination Restriction in OCRA subscription agreements, and that — as the Executive Secretary of OES — defendant Hade is the administrator of the Virginia circuit court system. Compl. ¶ 20, Dkt. No. 1. These facts plausibly allege that defendant Hade has a special relation to the Dissemination Restriction. With respect to whether defendant Hade has acted or threatened to enforce the restriction, I find that the plaintiffs "have alleged an actual and well-founded fear that the law will be enforced against them" given that Mr. Lacy has informed them on several occasions that he is prohibited from disseminating the information he obtains through OCRA.

*Virginia v. Am. Booksellers Ass'n,* 484 U.S. 383, 393 (1988), (certifying questions to Supreme Court of Virginia) (discussing pre-enforcement in the First Amendment context); *cf. Overbey v. Mayor of Baltimore*, 930 F.3d 215, 228 (4th Cir. 2019) (recognizing that a willing speaker may "choose[] not to" provide information to the news media because he "does not want to violate a settlement agreement with the government"). Thus, sovereign immunity does not bar the current suit against defendant Hade.

Similarly, the defendant clerks argue that they lack the requisite authority to enforce the Dissemination Restriction. Alternatively, they argue that any authority they have to revoke OCRA access is discretionary and thus falls outside the scope of state actions subject to suit. *See Ex parte Young*, 209 U.S. at 158 (explaining that the exception to immunity only applies "where the officer having some duty to perform not involving discretion . . . refuses or neglects to take such action").

The Complaint contains several factual allegations that plausibly establish the defendant clerks' enforcement authority. For example, the plaintiffs allege that the defendant clerks are charged with the maintenance and dissemination of non-confidential court records, and that circuit court clerks are authorized to make such records available for viewing — both in person and online — for the press and public. On the corollary, the Complaint asserts that circuit court clerks "may deny secure remote access to ensure compliance" with the Virginia Code. Compl. ¶ 57,

Dkt. No. 1 (quoting Va. Code Ann. § 17.1-293(H)). Thus, even though the *Ex parte Young* exception generally does not apply to court clerks because they are not normally charged with enforcing state laws, *Whole Woman's Health*, 595 U.S. at 40, I find that the plaintiffs have sufficiently alleged that the defendant clerks maintain a special relation to the Dissemination Restriction, and that they "have alleged an actual and well-founded fear" of enforcement. *Am. Booksellers Ass'n,* 484 U.S. at 393.

I also find unpersuasive the defendant clerks' argument that any authority they have to revoke OCRA access is discretionary and thus not subject to the *Ex parte Young* exception. The Fourth Circuit has distinguished between applying the exception to actions that order state officials to comply with federal law from actions that instruct state officials on how to use their discretion in complying with the law. *Antrican v. Odom*, 290 F.3d 178, 191 (4th Cir. 2002). In this case, the plaintiffs are not challenging the defendant clerks' discretion to revoke OCRA access for certain subscribers over others. Rather, they are challenging the Dissemination Restriction as a violation of federal law. I find that sovereign immunity does not prohibit the present suit against the defendant clerks.

*B. Standing.*

To establish Article III standing, a plaintiff must show that she has suffered (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent,

not conjectural or hypothetical," (2) the injury must be "fairly traceable to the challenged action of the defendant," and (3) it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citation omitted). In First Amendment cases, prudential limitations on standing requirements have been relaxed. *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956 (1984) ("[W]hen there is a danger of chilling free speech, the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged."); *Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013).

In *Courthouse News I*, the Fourth Circuit denied Courthouse News's challenge to the Dissemination Restriction for lack of standing after determining that the restriction "applies only to individuals with remote online access to court records." *Courthouse News Serv.*, 126 F.4th at 917. However, the court suggested that Courthouse News could have established a derivative injury by asserting a right to receive speech. *Id.* "[T]o have standing to assert a right to receive speech, a plaintiff must show that there exists a speaker willing to convey the information to her." *Stephens v. Cnty. of Albemarle*, 524 F.3d 485, 492 (4th Cir. 2008). "[A] person qualifies as a willing speaker if she would be willing to provide information on a matter of public significance to the news media but chooses not to because she does

not want to violate a settlement agreement with the government." *Overbey*, 930 F.3d at 228. But because Courthouse News "ha[d] not identified anyone who would redistribute data from OCRA to Courthouse News absent the Dissemination Restriction," the court declined to find that any indirect injuries had been established. *Courthouse News Serv.*, 126 F.4th at 917.

In this case, the plaintiffs have identified Virginia-licensed attorney David Lacy as a speaker willing to convey speech to them. Specifically, the Complaint alleges that the plaintiffs have asked Mr. Lacy on several occasions to provide them with copies of civil complaints from his OCRA account, but that he has informed them that the Dissemination Restriction prevents him from doing so. Therefore, the plaintiffs have plausibly alleged that the restriction infringes on their right to receive information. Moreover, they have sufficiently alleged causality in that, but for the restriction, Mr. Lacy would have provided the plaintiffs with the requested information and have also asserted that a favorable decision would redress the alleged burden imposed by the Dissemination Restriction. I find that the plaintiffs have standing to bring this suit.

*C. Ripeness.*

While standing considers who may bring suit, ripeness considers when a plaintiff may bring suit. The ripeness doctrine "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract

disagreements over administrative policies" and "protect[s] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148–49 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). "Where an injury is contingent upon a decision to be made by a third party that has not yet acted, it is not ripe as the subject of decision in a federal court." *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013). Like standing, "ripeness requirements are also relaxed in First Amendment cases" due to the chilling effect of potentially unconstitutional infringements on speech. *Cooksey*, 721 F.3d at 240.

The defendant clerks contend that the as-applied challenge to the Dissemination Restriction is unripe because the Complaint has failed to allege that they revoked any OCRA subscriber's access, including Mr. Lacy's. But as explained above, the plaintiffs have sufficiently alleged that, but for the threat of having his OCRA access revoked, Mr. Lacy would have provided them with copies of records he obtained via OCRA. *See id.* at 240 (finding a plaintiff's claim to be ripe when the factual record failed to indicate that the plaintiff was free from "the threat of penalty") (quoting *Va. Soc'y for Hum. Life, Inc. v. FEC*, 263 F.3d 379, 390 (4th Cir. 2001). The present action is ripe for review.

*D. First Amendment.*

The plaintiffs allege that the Dissemination Restriction constitutes a prior restraint on protected speech in violation of the First Amendment right to newsgathering. Prior restraints are "administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (internal quotation marks and citation omitted). "Any prior restraint on expression comes to [a court] with a heavy presumption against its constitutional validity." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 558 (1976) (internal quotation marks and citations omitted). Examples of prior restraints include temporary restraining orders and permanent injunctions. *Alexander*, 509 U.S. at 550. "A prior restraint . . . has an immediate and irreversible sanction" and freezes speech "at least for the time." *Neb. Press Ass'n*, 427 U.S. at 559 (internal quotation marks omitted). Thus, prior restraints are distinguishable from subsequent punishments. *Alexander*, 509 U.S. at 553–54.

Although the Fourth Circuit dismissed the challenge to the Dissemination Restriction for lack of standing in *Courthouse News I*, Judge Gregory discussed the merits in his dissent. Specifically, Judge Gregory found that the Dissemination Restriction constituted a prior restraint subject to strict scrutiny for "impos[ing] sanctions on the publication of truthful information contained in official court

records open to public inspection.'" *Courthouse News Serv.*, 126 F.4th at 925 (Gregory, J., dissenting) (quoting *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 495 (1975)); *see also Soderberg v. Carrion*, 999 F.3d 962, 966–67 (4th Cir. 2021) (holding that strict scrutiny was the proper standard of review for evaluating the constitutionality of a ban that prohibited the broadcasting of official court recordings of criminal proceedings but allowed for other means of disseminating the same information).

IV. CONCLUSION.

Here, the plaintiffs have plausibly alleged that the Dissemination Restriction constitutes a prior restraint on speech for prohibiting the dissemination of certain information to the public. Thus, for the restriction to be upheld, the defendants would need to show that it is narrowly tailored to serve a compelling government interest. *Reed v. Town of Gilbert,* 576 U.S. 155, 171 (2015). While the defendants have asserted their interest in protecting the privacy and security of litigants, the plaintiffs' allegations could reasonably support the conclusion that the Dissemination Restriction is not the least restrictive means for protecting that interest. I thereby find that the plaintiffs have made a plausible showing that the Dissemination Restriction is a prior restraint that would not survive strict scrutiny.[8]

[8] Defendant Hade raises several other arguments as to why the Dissemination Restriction does not violate the First Amendment. Because the plaintiffs have plausibly

For these reasons, it is **ORDERED** that the defendants' Motions to Dismiss, Dkt. Nos. 38, 39, 41, 43, are DENIED and the plaintiffs' Leave to Amend Complaint, Dkt. No. 49, and Request for Judicial Notice, Dkt. No. 50, are DENIED.

ENTER: May 5, 2026

/s/ JAMES P. JONES
Senior United States District Judge

---

alleged that the Dissemination Restriction constitutes a prior restraint in violation of the First Amendment, I need not reach the merits of these arguments.

# EXHIBIT B

CLERKS OFFICE US DISTRICT COURT
AT ABINGDON, VA
FILED
July 02, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ Kendra Campbell
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ABINGDON DIVISION**

| | | |
|---|---|---|
| **COURTHOUSE NEWS SERVICE, et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:25CV00075 |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| **KARL R. HADE, et al.,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendants. | ) | |

Pursuant to this court's Opinion and Order dated July 2, 2026, this court hereby certifies its Order dated May 5, 2026, Dkt. No. 73, for an interlocutory appeal under 28 U.S.C. § 1292(b). The Clerk of this court shall certify a copy of the May 5, 2026, Order, Dkt. No. 73, to the Clerk of the United States Court of Appeals for the Fourth Circuit.

It is so **ORDERED**.

ENTER: July 2, 2026

/s/ JAMES P. JONES
Senior United States District Judge