**Nos. 26-1648 (L), 26-1694 & 26-2043**

# In the United States Court of Appeals

## for the Fourth Circuit

COURTHOUSE NEWS SERVICE; LEE ENTERPRISES, INCORPORATED; and LEE BHM, LLC, *Publisher of the Richmond Times-Dispatch, The Roanoke Times, Bristol Herald Courier, Lynchburg News and Advance, Fredericksburg Freelance Star and The Daily Progress*

*Plaintiffs – Appellees,*

*v.*

EDWARD JEWETT, *in his official capacity as Clerk of the Circuit Court for the City of Richmond, Virginia*; BRENDA HAMILTON, *in her official capacity as Clerk of the Circuit Court for the City of Roanoke, Virginia*; and KELLY FLANNAGAN, *in her official capacity as Clerk of the Circuit Court for the City of Bristol, Virginia*

*Defendants – Appellants.*

*and*

KARL R. HADE, *in his official capacity as Executive Secretary of the Office of Executive Secretary of the Supreme Court of Virginia,*

*Defendant – Appellant.*

On Appeal from the United States District Court
for the Western District of Virginia at Abingdon
(1:25-CV-00075-JPJ-PMS)

## RESPONSE BRIEF OF PLAINTIFFS-APPELLEES


ROGER MYERS
RACHEL MATTEO-BOEHM
**BRYAN CAVE LEIGHTON PAISNER LLP**
3 Embarcadero Center, 7th Floor
San Francisco, California 94111
Tel: (415) 675-3400
Fax: (415) 675-3434
roger.myers@bclplaw.com
rachel.matteo-boehm@bclplaw.com

DABNEY J. CARR IV
LAUREN H. MILLER
**TROUTMAN PEPPER LOCKE LLP**
Post Office Box 1122
Richmond, Virginia 23218
Tel: (804) 697-1200
Fax: (804) 697-1339
dabney.carr@troutman.com
lauren.h.miller@troutman.com

*Counsel for Plaintiffs-Appellees*
*Courthouse News Service, Lee Enterprises, Incorporated and Lee BHM LLC*

## TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES ....................................................................................1

STATEMENT OF THE CASE ...........................................................................3

A. CNS and Lee Cannot Access Many Courts Across Virginia .......................4

B. Appellants Bar Subscribers from Giving the Press Material Off OCRA ..........................................................................5

C. *Smith* Ordered CNS' Claim over the Dissemination Restriction to be Dismissed Without Prejudice for Lack of Standing, While the Dissent Found That Restriction is a Prior Restraint Subject to Strict Scrutiny ..........................................................................6

D. After a Willing OCRA Subscriber Declined to Provide Information on OCRA Due to the Dissemination Restriction, CNS and Lee Sued and, as in *Hade I*, the Court Below Denied Appellants' Motions to Dismiss ..........................................................................7

SUMMARY OF ARGUMENT .........................................................................10

I. THE COMPLAINT PLAUSIBLY ALLEGES APPELLANTS FALL WITHIN *EX PARTE YOUNG*, AND IF THIS COURT THINKS OTHERWISE, LEAVE TO AMEND SHOULD BE GRANTED .................12

A. The Complaint and Exhibits More Than Plausibly Allege Hade Falls Within *Ex Parte Young*, Which *Hade I* and the RJNs Confirm.................13

1. A "Special Relation" Does Not Require Hade's Involvement in the Ultimate Act of Granting or Revoking OCRA Access ...............15

2. The VITA Stipulations Do Not Contradict the Complaint ...................18

3. Hade I Is Not Necessary to Affirm But Is Relevant .............................20

B. The Complaint Plausibly Alleges Enforcement By The Clerks.................21

II. AS THE SUPREME COURT RECENTLY CONFIRMED, THE COURT BELOW CORRECTLY HELD CNS AND LEE PLAUSIBLY ALLEGED STANDING UNDER CONTROLLING PRECEDENT ..........................................................................25

A. CNS and Lee Have Been Injured by the Dissemination Restriction, Which Impedes, and Often Precludes, Newsgathering About New Cases ..........................................................................26

B. CNS and Lee Alleged Its Own Newsgathering Standing and Injury to a Willing Speaker's Rights to Speak from the Dissemination Restriction.....30

1. CNS and Lee Allege a Willing Subscriber Would Provide News About Complaints on OCRA but for the Dissemination Restriction.....31

2. Willing Speaker Cases Are "Derivative" Only in That Restrictions on Speakers Must be Unconstitutional, Which CNS and Lee Allege.....32

C. Media Newsgathering Standing Does Not Require a Willing Speaker.....34

III. BY FORBIDDING SPEECH ABOUT PUBLIC COURT RECORDS, THE DISSEMINATION RESTRICTION IS A PRIOR RESTRAINT AND MUST SATISFY THE FIRST AMENDMENT EVEN IF NOT.....37

A. A Restriction Prohibiting and Punishing Speech While Impeding Newsgathering Must Satisfy the Constitution for Any of Those Reasons.....37

1. Either Prohibiting or Punishing Speech is Subject to Strict Scrutiny.....38

2. The Complaint Does Not Depend on the Label Given the Restriction.....39

B. As a Bar on Speech, the Dissemination Restriction is a Prior Restraint.....42

1. Appellants' Subscriber Agreements Impose a Prior Restraint.....43

2. Governing Precedent Has Often Held Statutes to be Prior Restraints.....45

3. The Restriction is Subject to Strict Scrutiny for Multiple Reasons.....47

i. As *Soderberg* Held, Strict Scrutiny is Not Limited to Absolute Bans.....47

ii. Unbridled Discretion to Revoke Access Also Requires Strict Scrutiny.....49

4. Cases Involving Nonpublic Information Cannot Aid Appellants.....51

CONCLUSION.....52

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*281 Care Comm. v. Arneson*,
638 F.3d 621 (8th Cir. 2011) ....................16

*360 Virtual Drone Servs. v. Ritter*,
102 F.4th 263 (4th Cir. 2024) ....................50

*8fig, Inc. v. Stepup Funny, LLC*,
135 F.4th 285 (5th Cir. 2025) ....................34

*Air Evac EMS, Inc., v. Texas, Dep't of Ins.*,
851 F.3d 507 (5th Cir. 2017) ....................17

*Albert v. Lierman*,
152 F.4th 554 (4th Cir. 2025) ....................22

*Alexander v. United States*,
509 U.S. 544 (1993).................... *passim*

*Amandola v. Town of Babylon*,
251 F.3d 339 (2d Cir. 2001) ....................50

*American Civil Liberties Union v. Holder*,
673 F.3d 245 (4th Cir. 2011) ....................33

*In re Baltimore Sun Co.*,
841 F.2d 74 (4th Cir. 1988) ....................28

*Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*,
800 F.2d 339 (3d Cir. 1986) ....................51

*Billups v. City of Charleston*,
961 F.3d 673 (4th Cir. 2020) ....................49

*Buzdum v. Vill. of Germantown*,
2008 WL 65414 (E.D. Wis. Jan. 3, 2008) ....................46

*Cal. First Amend. Coal. v. Woodford*,
299 F.3d 868 (9th Cir. 2002) ........................................................................51

*CBS Inc. v. Young*,
522 F.2d 234 (6th Cir. 1975) ...................................................................36, 39

*Cent. S.C. Chapter, Soc'y of Prof. Journalists v. Martin*,
556 F.2d 706 (4th Cir. 1977) ........................................................................28

*City of Lakewood v. Plain Dealer Publ'g Co.*,
486 U.S. 750 (1988).........................................................................................49, 50

*Conn. Mag. v. Moraghan*,
676 F. Supp. 38 (D. Conn. 1987)......................................................................36

*Cooksey v. Futrell*,
721 F.3d 226 (4th Cir. 2013) ...........................................................25, 26, 27

*Courthouse News Serv. v. Hade*,
580 F. Supp. 3d 289 (E.D. Va. 2022) ..........................................................*passim*

*Courthouse News Serv. v. Hade*,
631 F. Supp. 3d 349 (E.D. Va. 2022) ..........................................................*passim*

*Courthouse News Serv. v. Planet*,
750 F.3d 776 (9th Cir. 2014) ..........................................................................4

*Courthouse News Serv. v. Planet*,
947 F.3d 581 (9th Cir. 2020) ..........................................................................4

*Courthouse News Serv. v. Schaefer*,
2 F.4th 318 (4th Cir. 2021) ...........................................................................50

*Courthouse News Serv. v. Smith*,
126 F.4th 899 (4th Cir. 2025) ......................................................................*passim*

*Cox Broad. Corp. v. Cohn*,
420 U.S. 469 (1975).........................................................................................38, 39

*Davis v. E. Baton Rouge Par. Sch. Bd.*,
78 F.3d 920 (5th Cir. 1996) ..............................................................34, 35, 36, 39

*Doe by & through Next Friend Doe v. Mast*,
173 F.4th 524 (4th Cir. 2026) ........................................................................39

*Doe v. Mast*,
2024 WL 3371122 (W.D. Va. July 10, 2024) ..................................................52

*Doe v. Univ. of Carolina Sys.*,
133 F.4th 305 (4th Cir. 2025) ...................................................................18, 22

*In re Dow Jones & Co.*,
842 F.2d 603 (2d Cir. 1988) .....................................................................*passim*

*Doyle v. Hogan*,
1 F.4th 249 (4th Cir. 2021) ..............................................................16, 17, 18, 23

*Durstein v. Alexander*,
629 F. Supp. 3d 408 (S.D. W. Va. 2022)..........................................................45

*E.W. Smith Pub. Co. v. Town of New Windsor*,
386 F. Supp. 2d 374 (S.D.N.Y. 2005),
*modified*, 2005 WL 8179308 (S.D.N.Y. Oct. 4, 2005)......................................36

*Edgar v. Haines*,
2 F.4th 298 (4th Cir. 2021) .......................................................................25, 33

*First Choice Women's Res. Centers v. Davenport*,
608 US. 174 (2026)..........................................................................11, 26, 29, 35

*G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*,
23 F.3d 1071 (6th Cir. 1994) ........................................................................50

*Grosjean v. American Press Co.*,
297 U.S. 233 (1936)...................................................................................44, 45

*In re Halkin*,
598 F.2d 176 (D.C. Cir. 1979)........................................................................44

*Hunt v. Nuth*,
57 F.3d 1327 (4th Cir. 1995) .........................................................................50

*John Doe No. 1 v. Reed*,
561 U.S. 186 (2010)........................................................................................37

*Johnson v. City of Shelby*,
574 U.S. 10 (2014) (per curiam)....................................................................40

*Journal Pub. Co. v. Mechem*,
801 F.2d 1233 (10th Cir. 1986) ..............................................................27, 34, 35

*King v. Youngkin*,
122 F.4th 539 (4th Cir. 2024) ........................................................................24

*Kunz v. People*,
340 U.S. 290 (1951).........................................................................................50

*Laufer v. Naranda Hotels, LLC*,
60 F.4th 156 (4th Cir. 2023) ..........................................................................33

*Liverman v. City of Petersburg*,
844 F.3d 400 (4th Cir. 2016) ...................................................................37, 43, 45

*Lytle v. Griffith*,
240 F.3d 404 (4th Cir. 2001) ..........................................................................19

*Matsumoto v. Labrador*,
122 F.4th 787 (9th Cir. 2024) ........................................................................16

*Mayhew v. Town of Smyrna*,
856 F.3d 456 (6th Cir. 2017) ...................................................................42, 49, 53

*McBurney v. Cuccinelli*,
616 F.3d 393 (4th Cir. 2010) ......................................................................*passim*

*McDaniel v. Precythe*,
897 F.3d 946 (8th Cir. 2018) ..........................................................................23

*Menders v. Loudoun Cnty. Sch. Bd.*,
65 F.4th 157 (4th Cir. 2023) ..........................................................................25

*In re Murphy Brown, LLC*,
907 F.3d 788 (4th Cir. 2018) ......................................................................39, 43

*Nat'l Fed'n of the Blind of Ar., Inc. v. Pryor*,
258 F.3d 851 (8th Cir. 2001) ..........................................................................46

*Near v. Minnesota*,
283 U.S. 697 (1931)....................44, 45

*Nebraska Press Ass'n v. Stuart*,
427 U.S. 539 (1976)....................39

*Nelson v. Middlesex Dep't of Soc. Servs.*,
820 S.E.2d 400 (Va. Ct. App. 2018)....................52

*Novak v. City of Parma*,
932 F.3d 421 (6th Cir. 2019)....................44

*U.S. ex rel. Oberg v. Nelnet, Inc.*,
105 F.4th 161 (4th Cir. 2024)....................51

*Ostergren v. Frick*,
856 F. App'x 562 (6th Cir. 2021)....................43, 46

*Overbey v. Mayor of Baltimore*,
930 F.3d 215 (4th Cir. 2019)....................*passim*

*Papania v. United States*,
715 F. Supp. 3d 789 (E.D. Va. 2024)....................41

*Payne v. Taslimi*,
998 F.3d 648 (4th Cir. 2021)....................35

*Pell v. Procunier*,
417 U.S. 817 (1974)....................51

*Pinkley, Inc. v. City of Frederick*,
191 F.3d 394 (4th Cir. 1999)....................41

*Price v. Saugerties Cent. Sch. Dist.*,
305 F. App'x 715 (2d Cir. 2009)....................36

*Reprod. Health Servs. v. Nixon*,
428 F.3d 1139 (8th Cir. 2005)....................53

*Reynolds v. Middleton*,
779 F.3d 222 (4th Cir. 2015)....................49

*Rossignol v. Voorhaar*,
316 F.3d 516 (4th Cir. 2003) ....................................................................37

*Rushford v. New Yorker Mag., Inc.*,
846 F.2d 249 (4th Cir. 1988) ...............................................................27, 51

*S.C. Elec. & Gas Co. v. Randall*,
331 F. Supp. 3d 485 (D.S.C. 2018) ........................................................23

*S.C. Wildlife Fed'n v. Limehouse*,
549 F.3d 324 (4th Cir. 2008) .......................................................16, 17, 18

*In re Sealed Case*,
77 F.4th 815 (D.C. Cir. 2023)....................................................................44

*Seattle Times Co. v. Rhinehart*,
467 U.S. 20 (1984), Doc. 41 ...............................................................27, 51

*Smith v. Acevedo*,
2010 WL 11512363 (W.D. Tex. Sept. 20, 2010) .........................................46

*Smith v. Daily Mail Publ'g Co.*,
443 U.S. 97 ....................................................................................38, 39

*Soderberg v. Carrion*,
999 F.3d 962 (4th Cir. 2021) ..........................................................*passim*

*Soderberg v. Pierson*,
2020 WL 206619 (D. Md. Jan. 14, 2020)..................................................39

*Springs v. Ally Fin. Inc.*,
684 F. App'x 336 (4th Cir. 2017) .............................................................51

*Stanley v. Georgia*,
394 U.S. 557 (1969).................................................................................34

*Stanton v. Elliott*,
25 F.4th 227 (4th Cir. 2022) .....................................................37, 40, 53

*State Farm Fire & Cas. Co. v. Hood*,
266 F.R.D. 135 (S.D. Miss. 2010) .............................................................36

*Stephens v. Cnty. of Albemarle*,
524 F.3d 485 (4th Cir. 2008) ....................................................................35

*Stockton v. Brown*,
152 F.4th 1124 (9th Cir. 2025) ................................................................33

*Tederick v. LoanCare, LLC*,
168 F.4th 154 (4th Cir. 2026) ..................................................................34

*In re Under Seal*,
749 F.3d 276 (4th Cir. 2014) ............................................................19, 50

*United States v. Aldawsari*,
683 F.3d 660 (5th Cir. 2012) ....................................................................35

*United States v. Berke*,
170 F.3d 882 (9th Cir. 1999) ....................................................................46

*United States v. Blankenship*,
79 F. Supp. 3d 613 (S.D. W. Va. 2015)..........................................28, 39

*United States v. Dinwiddie*,
885 F. Supp. 1286 (W.D. Mo. 1995)..........................................................43

*United States v. Norman*,
935 F.3d 232 (4th Cir. 2019) ....................................................................35

*United States v. Wecht*,
484 F.3d 194 (3d Cir. 2007) ..............................................................27, 31

*Va. St. Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
425 U.S. 748 (1976).....................................................................34, 36

*Van Wagner Bos., LLC v. Davey*,
770 F.3d 33 (1st Cir. 2014).......................................................................50

*Vaughn v. Perea*,
2021 WL 5879176 (4th Cir. Dec. 13, 2021)................................................14

*In re Wall St. J.*,
601 F. App’x 215 (4th Cir. 2015) (per curiam) ..................................35, 39

*Waste Mgmt. Holdings, Inc. v. Gilmore*,
252 F.3d 316 (4th Cir. 2001) ....................................................................18

*In re Wiencko*,
99 F. App'x 466 (4th Cir. 2004) ................................................................49

*In re Willon*,
47 Cal. App. 4th 1080 (1996) ....................................................................39

*Young v. Hawaii*,
992 F.3d 765 (9th Cir. 2021) ....................................................................46

*Ex parte Young*,
209 U.S. 123 (1908)............................................................................*passim*

*Zak v. Chelsea Therapeutics Int'l*,
780 F.3d 597 (4th Cir. 2015) ....................................................................20

**Statutes**

Va. Code § 8.01-420.8 ..............................................................................5

Va. Code § 16.1-305 ...............................................................................52

Va. Code § 17.1-293 .......................................................................5, 15, 43

Va. Code § 17.1-294 ...............................................................................20

Va. Code § 17.1-502(A)............................................................................14

Va. Code § 19.2-389(A)............................................................................52

Va. Code § 32.1-127.1:03 .........................................................................52

Va. Code § 52-48 .....................................................................................52

**Rules and Regulations**

Fed. R. Civ. P. 8(a)(2)........................................................................40, 49

Federal Rule of Evidence 201(d) ..............................................................12

**Other Authorities**

5 Wright & Miller, *Fed. Prac. & Proc.* § 1219 .......................................................40

5 Wright & Miller, *Fed. Prac. & Proc.* § 1224 .......................................................14

## STATEMENT OF ISSUES

The issues presented for review are whether the district court correctly held the Complaint plausibly alleges that:

1. Appellant Karl Hade, Executive Secretary of the Office of the Executive Secretary of the Virginia Supreme Court ("OES"), and Appellant Clerks[1] have a special relation with, and threatened enforcement of, the statute governing Officer of the Court Remote Access ("OCRA") within the meaning of *Ex parte Young*, 209 U.S. 123 (1908), where the Complaint alleges OES controls OCRA and directs enforcement of its Dissemination Restriction, which the statute authorizes the Clerks to enforce and they do enforce in agreements required to access OCRA.

2. Appellees Courthouse News Service ("CNS") and Lee Enterprises ("Lee") have standing to protect their First Amendment "right to gather news" under *Overbey v. Mayor of Baltimore*, 930 F.3d 215 (4th Cir. 2019), where the Dissemination Restriction precludes reporting on new civil cases filed in courts reporters cannot reach by deadline, or at all, by prohibiting an OCRA subscriber from providing copies of or information from complaints (and, if not, whether their right to gather news provides standing without a willing speaker, *id.* at 228 n.13).

[1] Edward Jewett, Brenda Hamilton and Kelly Flannagan, Clerks of Richmond, Roanoke and Bristol City Circuit Courts, respectively.

3. The Dissemination Restriction, which prohibits those with OCRA access from redistributing "any" information in records from OCRA "to any third party" who could "ma[k]e [it] available to the general public" – and authorizes clerks to punish violations – constitutes a prior restraint on OCRA subscribers' speech (and, if not, whether the claim survives because, *inter alia*, it is "'not dispositive'" whether OCRA is "'view[ed] as a prior restraint or as a penal sanction'" as both receive "'the most exacting scrutiny,'" even where the information can be obtained another way, *Soderberg v. Carrion*, 999 F.3d 962, 968-69 & n.3 (4th Cir. 2021)).

## **STATEMENT OF THE CASE**

In May 2024, a reporter for Lee's *Richmond Times-Dispatch*, Luca Powell, learned of a pleading filed on a Friday afternoon in Dinwiddie County. Powell wanted to report on it to his readers, but Dinwiddie's court is more than 50 miles away and would close before he could get there. So, he reached out to the newspaper's attorney, David Lacy, to ask about obtaining a copy from OCRA. Lacy said the Dissemination Restriction prevents him from providing anything from OCRA even if he had a subscription for Dinwiddie. Jt. App. ("JA") 53-54.

This past June, after this appeal was filed, former Virginia Tech Board of Visitors Rector John Rocovich filed a complaint in Montgomery County alleging Gov. Abigail Spanberger unlawfully removed him from the board. Doc. 29-1 at 2.[2] Due to the Dissemination Restriction, CNS, Lee and other journalists in Richmond were unable to inform readers about the allegations in the case for two days because it took 3½ hours to drive 196 miles to the Montgomery Courthouse to obtain a copy of the complaint. *Id.*

These examples illustrate how the Dissemination Restriction impairs the media's First Amendment right to gather news about litigation in Virginia.

[2] Citations are to ECF pagination atop the page, not filer pagination at the bottom.

### A. CNS and Lee Cannot Access Many Courts Across Virginia

Lee is the fourth largest newspaper publisher in the country, with 12 papers and 100,000 subscribers in Virginia. JA35, JA43. CNS is a national news service that reports on civil litigation in federal and state courts in all 50 states. JA38. CNS' more than 2,200 subscribers, JA38, "includ[e] lawyers, law firms, news organizations, other media outlets, and entertainment and watchdog groups." *Courthouse News Serv. v. Planet*, 947 F.3d 581, 585 (9th Cir. 2020) ("*Planet III*"). CNS serves "as a 'pool reporter' for national media, which disseminate CNS's litigation news to the broader public." *Id.* If CNS cannot report on litigation in remote courts, "the expression of the newspapers, lawyers, libraries, and others who rely on CNS for information will also be stifled." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 788 (9th Cir. 2014) ("*Planet I*").

CNS and Lee gather news about civil cases by reviewing court records, often via PACER in federal courts and similar online systems in at least 37 states. JA40. But this is impossible in Virginia, turning many counties into "news deserts" without "'access to reporting on court proceedings of local importance.'" JA52. Records theoretically available at the courthouse are not realistically available when courts are far from where reporters are based or the trip takes time they do not have on deadline, and Virginia prevents journalists from using online access to report on those cases. JA41-42, JA43-47, JA51-52, JA101-111.

## B. Appellants Bar Subscribers from Giving the Press Material Off OCRA

At least 112 of Virginia's 120 circuit courts make nonconfidential civil court records available online via OCRA, which OES created and controls. JA35, JA45-47, JA50. Although records on OCRA are public, the public cannot access OCRA.

By statute, Virginia clerks may not allow remote public access to public court records that contain certain personal information ("PI"), like social security numbers, Va. Code § 17.1-293(B), the most sensitive of which must be redacted before filing. Va. Code § 8.01-420.8. Because other PI, like "an actual signature" or DOBs, need not be redacted, the statute restricts remote access to attorneys and government agencies. *Id.* § 17.1-293(E)(7) ("Access Restriction").[3] The Dissemination Restriction prohibits those with access from "redistribut[ing] to any third party" information from OCRA; they may include OCRA content "in products or services … to a third party," but not if it could be "made available to the general public." *Id.* § 17.1-293(H).

Appellants enforce these restrictions. Hade's "OES 'created, provides, supports and maintains OCRA for Virginia court clerks,' [and] requires circuit court clerks include the Dissemination Restriction in OCRA subscription agreements." JA8. Clerks control access to court records, JA8, and require that, to access OCRA, attorneys sign those agreements, which contain a stricter version of

[3] Attorneys can access all records on OCRA, not just in their own cases. JA50.

the Restriction. JA47-48, JA81-99. Both versions empower the Clerks to enforce the Dissemination Restriction, in their "discretion," by denying OCRA access to violators. JA47-48, JA81-99. The Attorney General's Office said violating attorneys can be disciplined or disbarred. JA49 & n.1.

### C. *Smith* Ordered CNS' Claim Over the Dissemination Restriction to be Dismissed Without Prejudice for Lack of Standing, While the Dissent Found That Restriction is a Prior Restraint Subject to Strict Scrutiny

In 2021, CNS sued Hade and Prince William County's Circuit Court Clerk over the Access and Dissemination Restrictions. The district court denied Hade's motion to dismiss on sovereign immunity grounds and both defendants' motions to dismiss CNS' First Amendment claims. *Courthouse News Serv. v. Hade*, 580 F. Supp. 3d 289, 294-96 (E.D. Va. 2022) ("*Hade I*").

After CNS dismissed Hade without prejudice and the Commonwealth intervened, defendants obtained summary judgment on both Restrictions. *Courthouse News Serv. v. Hade,* 631 F. Supp. 3d 349, 367-70 (E.D. Va. 2022) ("*Hade II*"). A split appellate panel affirmed as to the Access Restriction, applying intermediate scrutiny and finding it "narrowly tailored" because "attorneys and their staff do not pose the same threat to sensitive [PI] as the public." *Courthouse News Serv. v. Smith*, 126 F.4th 899, 914-15 (4th Cir. 2025). The panel reversed on the Dissemination Restriction without reaching the merits because CNS had not identified an OCRA subscriber willing to speak but for the Restriction. *Id.* at 917.

The dissent would have reversed and remanded to apply strict scrutiny to both. *Id.* at 918-25 (Gregory, J., dissenting). By "flatly prohibit[ing] … anyone … from 'in any way redistribut[ing] to any third party' any data" in public court records "accessed via OCRA," the dissent found the Dissemination Restriction "a blatant form of prior restraint" under controlling precedent. *Id.* at 925

After mandate issued, the district court dismissed CNS' Dissemination Restriction claim without prejudice.

### D. After a Willing OCRA Subscriber Declined to Provide Information on OCRA Due to the Dissemination Restriction, CNS and Lee Sued and, as in *Hade I*, the Court Below Denied Appellants' Motions to Dismiss

Later in 2025, CNS and Lee were prevented on multiple attempts from gathering news from OCRA Subscriber Lacy about new civil complaints available on OCRA when reporters were unable to get to court. JA42, JA53-57. Lacy said he was willing to provide information about filings he could access on OCRA, but the Dissemination Restriction prohibited him from doing so. JA53-57.

CNS and Lee then sued Hade and the Clerks of the Richmond, Roanoke and Bristol City Circuit Courts in their official capacities. The Complaint alleges that, "[b]y prohibiting those with access to OCRA from disseminating information" from public court records "on OCRA to members of the general public, including the press, and punishing those who do, Defendants have imposed a prior restraint on protected speech" of OCRA subscribers, which "infringe[s] Plaintiffs' First

Amendment rights … to gather, disseminate and read about newsworthy information" in records "to which a constitutional right of access exists." JA49.

In February 2026, Appellants filed kitchen-sink motions to dismiss on sovereign immunity, standing, ripeness and the merits. As in *Hade I*, the district court denied the motions. On the issues raised in this appeal, it found:

> (1) All Appellants fell within the exception to sovereign immunity in *Ex parte Young* because they have a special relationship with the Dissemination Restriction and acted or threatened to enforce it;
>
> (2) CNS and Lee have standing because they allege Lacy is "a speaker willing to convey speech to them" who, "on several occasions … informed them that the Dissemination Restriction prevents him from doing so;" and
>
> (3) By "prohibiting the dissemination" of information in "'official court records open to public inspection'" lawfully obtained on OCRA, CNS and Lee have "plausibly alleged that the Dissemination Restriction constitutes a prior restraint on speech" that would not survive strict scrutiny.

JA10-15 (quoting *Smith*, 126 F.4th at 925 (Gregory, J., dissenting)) (citing, e.g., *Soderberg*, 999 F.3d at 966-67). Because it denied the motions to dismiss, the court denied as moot a Request for Judicial Notice ("RJN") and Motion for Leave to Amend ("MLA") CNS and Lee filed in case it found the complaint insufficient, both of which set forth further facts addressing Appellants' arguments. JA731 n.7.

All Appellants appealed the sovereign immunity ruling, and their appeals were consolidated (Doc. 3). The district court then granted the Clerks' petition to certify the standing and prior restraint rulings for interlocutory appeal, JA682-693, which this Court permitted and consolidated with the prior appeals (Docs. 18, 37).

## SUMMARY OF ARGUMENT

No state or commonwealth in the country, save Virginia, chooses to require mandatory filer redaction only of some "sensitive" PI while protecting the rest not through redaction, but by imposing a statutory Dissemination Restriction, Clerks' AOB 17 (Doc. 41); JA40, JA74 – which Appellant Clerks enforce in Subscriber Agreements provided by Appellant Hade's office – that prohibits giving the press or public ***any*** information in civil complaints obtained via remote access.

As this Court has held, "***strict scrutiny*** … is clearly required" whether the Restriction is "'view[ed] as a prior restraint or as a penal sanction'" that punishes speech after it happens, or as a "partial ban" because the information can be disseminated if obtained elsewhere. *Soderberg* 999 F.3d at 968-69 & n.3.[4] And CNS and Lee have standing because the Dissemination Restriction injured their "right to gather news" from a willing OCRA subscriber. *Overbey*, 930 F.3d at 227.

It is therefore not surprising the court below denied motions to dismiss on sovereign immunity, standing and the merits. Nor is it surprising Appellants must grasp at straws, and straw men, to appeal – essentially asserting no one can be sued over the Restriction – to try to forestall discovery into any justifications for it.

Appellant Hade only appeals from denial of his bid for sovereign immunity, which has been twice rejected because his OES created and controls OCRA,

[4] All emphases in ***bold italics*** are added, those in *italics* were in the original, and citations for quotations within quotations are omitted except where noted.

including enforcement of its Dissemination Restriction. The Clerks also appeal on this ground even though OCRA authorizes them to enforce it and their subscriber agreements threaten to do so. They say they never have cut off OCRA access, but the "'value of a sword of Damocles is that it hangs – not that it drops.'" *First Choice Women's Res. Centers v. Davenport*, 608 US. 174, 192 (2026).

Appellant Clerks were also permitted to appeal standing and the prior restraint ruling. On the former, they say CNS and Lee are not injured if they can get complaints at the court. But that is often impossible and "[t]his argument misapprehends the Article III standing inquiry. A government that takes three limbs but spares the last imposes an injury all the same. So too here." *Id.* at 197.

On the latter, the Clerks spill much ink arguing the Restriction is not a prior restraint, and that the First Amendment claim fails if it is not, under archaic views long rejected, including by *Soderberg*. They say vacating the Dissemination Restriction could evade the Access Restriction upheld in *Smith*, but overlook that, because access is limited to attorneys, the purpose behind these Restrictions can be protected through the "less restrictive alternatives" of preventing attorneys from disseminating PI and disciplining any who do, 126 F.4th at 913-15, rather than banning all speech about public records lawfully obtained on OCRA.

Under well-settled precedent, the rulings below should be affirmed.

## I. THE COMPLAINT PLAUSIBLY ALLEGES APPELLANTS FALL WITHIN *EX PARTE YOUNG,* AND IF THIS COURT THINKS OTHERWISE, LEAVE TO AMEND SHOULD BE GRANTED

*Ex parte Young* "creates an expansive exception to sovereign immunity where state officers may be sued in their official capacity when the plaintiff is only seeking prospective injunctive relief to remedy the enforcement of an unconstitutional statute." *Hade I*, 580 F. Supp. 3d at 294. "'To fit within the exception, the officer must have a "special relation" to the challenged policy or statute; and (2) the officer must have "acted or threatened" to enforce the policy or statute.'" *Id.* (quoting *McBurney v. Cuccinelli*, 616 F.3d 393, 402 (4th Cir. 2010)).

Hoping to avoid justifying Virginia's unusual choice to restrain speech about civil complaints and other nonconfidential court records obtained remotely – despite readily available less restrictive alternatives (like banning dissemination of PI) – Appellants do their best to twist these requirements into something they are not. But the special relation and enforcement prongs do not require what Appellants claim, and the record is not as they describe.

To the extent the Court has any doubt on its de novo review, it can take judicial notice under Federal Rule of Evidence 201(d) of the facts and documents that were before the district court on the RJN below, JA304-358, and – to the extent the Court considers Hade's previously unraised argument about the role of the Virginia Information Technology Agency ("VITA") – the Conditional Request

for Judicial Notice filed herewith ("Conditional RJN"). If doubt lingers, it should instruct the court below to grant the MLA. JA256-303. Like ripping the curtain open on the Wizard of Oz – the analogy one clerk used to describe OES' control over OCRA and its restrictions – these submissions lay bare the full extent of Hade's involvement and reveal his "no special relation" defense for what it is.[5]

### A. <u>The Complaint and Exhibits More Than Plausibly Allege Hade Falls Within *Ex Parte Young*, Which *Hade I* and the RJNs Confirm</u>

Hade sought dismissal on sovereign immunity grounds in *Hade I*, claiming "he has no special relation to [the Access and Dissemination Restrictions] and never acted or threatened to enforce them." 580 F. Supp. 3d at 294. Judge Hudson denied Hade's motion, citing "many factual allegations to the contrary." *Id.*

After CNS voluntarily dismissed Hade from that case without prejudice, it learned from court clerks that Hade's OES exerts almost total control over OCRA and its restrictions. JA100-111. When CNS, joined by Lee, brought this case, they thus named Hade along with clerks of three courts where the Dissemination Restriction prevented Lacy from sharing information about civil complaints.

The Complaint alleges many facts showing Hade and OES' enforcement of OCRA and the Dissemination Restriction. *McBurney*, 616 F.3d at 399 (court must find "'special relation' between the officer being sued and the challenged statute").

---

[5] Hade does not raise the "'acted or threatened' to enforce" part of *McBurney*, but this is also satisfied by OES requiring the Dissemination Restriction's inclusion in the OCRA Subscription Agreements and OCRA interface, among other actions.

As OES' Executive Secretary, Hade is "administrator of the circuit court system." Va. Code § 17.1-502(A). JA35. "OES 'created, provides, supports and maintains OCRA for Virginia court clerks,' [and] requires circuit court clerks [to] include the Dissemination Restriction in OCRA subscription agreements." JA35, JA48.[6] OES "provides and maintains" the OCRA login page, which warns users against unauthorized use. JA50, JA71.[7] Clerks told CNS "rules made by the Executive Secretary" control OCRA. JA102. One clerk compared OES' OCRA software to "the Wizard of Oz" because "it controls everything" about OCRA. JA108.[8]

When Hade renewed his sovereign immunity argument notwithstanding these allegations and *Hade I*, CNS and Lee found further evidence of OES' involvement with enforcing the Dissemination Restriction in documents produced

---

[6] The allegation was on information and belief, which *Iqbal* and *Twombly* permit as "'a desirable and essential expedient when matters … are not within the knowledge of the plaintiff but he has sufficient data to justify interposing an allegation on the subject.'" *Vaughn v. Perea*, 2021 WL 5879176, *2 (4th Cir. Dec. 13, 2021) (quoting 5 Wright & Miller, *Fed. Prac. & Proc.* § 1224). If unqualified allegations are required, the MLA confirms CNS and Lee could add them. JA258-259, JA262-264, JA268, JA296-303.

[7] When the Lee County Circuit Court Clerk "tentatively agree to allow [CNS Bureau Chief Ryan] Abbott to sign up for OCRA online," OES' OCRA subscriber interface required Abbott to certify he was "a member of the Virginia bar or a government official, in order to proceed to a review of court records. Abbott was neither and could not make the certification." JA106.

[8] "[A]n OES employee, in response to a deposition question, stated that it has "always been [OES'] stance that the [Va. Code] does not support providing [OCRA] to anyone other than members of the bar," *Hade I,* 580 F. Supp. 3d at 295, and that the rule that OCRA users "[m]ust be a member in good standing of the Virginia State Bar" was "***an OES-imposed requirement***." JA304, JA322 (RJN).

in discovery in the prior case (where no depositions were taken). It includes four email strings attached to the MLA below. JA257-303. One contains exchanges between Appellant Jewett and OES about an OCRA subscriber inquiry regarding enforcement of the Dissemination Restriction confirming OES' role in including it in OCRA's Terms and Conditions. JA262 (MLA Exh. 1), JA354 (RJN Exh. 4). Another shows OES prepared a "disclaimer" that includes the Dissemination Restriction, JA296-303 (MLA Exh. 4), apparently referring to a certification required ***after*** logging into OCRA – and a topic of anticipated discovery.

In the face of all of this, Hade still insists he lacks the requisite enforcement authority for *Ex parte Young* "special relation" purposes. His arguments all fail, because (1) Hade does not need to be able to turn off OCRA access (or turn it on) to have *Ex parte Young* enforcement authority; (2) contrary to Hade's claims, the joint stipulations from the prior case ("Joint Stipulations") do not conflict with the Complaint; and (3) the district court's ruling in *Hade I* went to both the Access and Dissemination Restrictions and is relevant here. The record is also more than sufficient to plausibly claim Hade falls within *Ex parte Young* even without *Hade I*.

#### 1. A "Special Relation" Does Not Require Hade's Involvement in the Ultimate Act of Granting or Revoking OCRA Access

Hade says he lacks a "special relation" to the statute because § 17.1-293(H) specifies "the ***clerk*** … may deny secure remote access to ensure compliance with" the Dissemination Restriction; the Joint Stipulations say clerks decide who gets

OCRA access; and clerks are the sole custodians of records in their courts. Hade AOB (Doc. 40) at 5-7, 10-18. Even assuming the truth of all this, Hade's argument depends on a false premise – unsupported by Fourth Circuit authority – that only those who pull the trigger on OCRA access count for *Ex parte Young* "special relation" purposes. That is not the law.

It is black-letter law that a "special relation" does not require an officer to be charged with enforcement by the challenged statute itself. *Young*, 209 U.S. at 157. An official's "connection with the enforcement of the act," can be "specially created by the act itself" or "***by virtue of his office***." *Id.*; *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 333 (4th Cir. 2008) ("As the administrative head of the agency with responsibility for carrying out its policies …, the Director possesses a sufficient connection to the alleged violation of federal law."); *Doyle v. Hogan*, 1 F.4th 249, 255 (4th Cir. 2021). Hade's broad administrative powers as "administrator of the circuit court system" provides the threshold authority.

Nor must Hade be the ***only*** official with an enforcement role, *Matsumoto v. Labrador*, 122 F.4th 787, 803 (9th Cir. 2024), ***or even its primary enforcer***. *281 Care Comm. v. Arneson*, 638 F.3d 621, 632-33 (8th Cir. 2011) (special relation found where defendant was not the "primary authority to enforce the challenged law" and did not have "full power" to redress injuries).

While an official's enforcement role must go beyond "'[g]eneral authority to enforce the laws of the state,'" *McBurney*, 616 F.3d at 400, this only requires "*proximity to* and *responsibility for* the challenged state action." *Limehouse*, 549 F.3d at 333. "Primarily, the requirement has been a bar … where the relationship between the state official sought to be enjoined and the enforcement of the state statute is *significantly attenuated*." *McBurney*, 616 F.3d at 400.

Hade's relationship to OCRA and the Dissemination Restriction is hardly attenuated, let alone "significantly" so. Hade thus claims the question is whether he or OES has "authority to revoke access," Doc. 40 at 17, but that is not true. An enforcement connection can arise where agency directors are "deeply involved" in enforcement action. *Limehouse*, 549 F.3d at 333; *see Air Evac EMS, Inc., v. Texas, Dep't of Ins.*, 851 F.3d 507, 518 (5th Cir. 2017) (enforcement analysis is fact-specific and "can turn on subtle distinctions").

A special relation can also arise from directing another official to take enforcement action, or from participating in enforcement decisionmaking. *Doyle*, 1 F.4th at 256 ("we could find the required connection if the Governor is able to *direct* Maryland's Secretary of Health to enforce the Act"); *McBurney*, 616 F.3d at 401-02 (attorney general not within *Ex parte Young* where he had "not issued any advisory opinions specifically directing state agencies to" enforce the challenged law, nor "participated in the decisionmaking process of" agencies that enforced it).

The Complaint alleges, and the RJN confirms, OES' deep involvement in enforcing OCRA's restrictions, including the Dissemination Restriction. Among other things, they quote clerks describing OES's Oz-like control over OCRA, allege OES "requires that clerks" include the Restriction in Subscriber Agreements, and identify other OES efforts to enforce it. Discovery will likely yield further evidence. "[T]ak[ing] as true the facts alleged in [the] complaint and draw[ing] all reasonable interferences in [its] favor," *Doe v. Univ. of Carolina Sys.*, 133 F.4th 305, 310 (4th Cir. 2025), this is more than enough to allege Hade is "able to enforce, if he so chooses," the Dissemination Restriction. *Doyle*, 1 F.4th at 255.[9]

**2. <u>The VITA Stipulations Do Not Contradict the Complaint</u>**

Hade claims the Joint Stipulations "counter[] the claim that OES requires any particular terms in the user agreements," Doc. 40 at 18, because, he claims, the Stipulations say "[VITA] provides the model user agreements the clerks may use to create their own user agreements." *Id.* 7, 18, 20. Hade did not raise this argument

[9] OES' "deep[] involve[ment]" in enforcing OCRA's restrictions, *Limehouse*, 549 F.3d at 333, illustrates why naming Hade in his official capacity is necessary to effectively "enjoin … enforcement of [the] unconstitutional statute." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001). Even if the Clerks are enjoined, Hade's OES still controls OCRA, including not just the OCRA interface, but any "certification" or "disclaimer" required once inside OCRA, which prior discovery suggests exists. JA354-356 (RJN); JA263-265 (MLA). This will be a topic of further discovery.

below, JA 112-142, JA359-388, and it is waived.[10] If the Court considers it, the Joint Stipulations ***do not*** say what Hade suggests – i.e., that VITA, not OES, provided the Dissemination Restriction language in OCRA subscriber agreements.

The page of the Joint Stipulations Hade cites, JA69, contains three paragraphs relating to VITA and Standard SEC503-02.2. Paragraph 34, which Hade specifically references, states:

> VITA Standard SEC503-02.2 included a model Application for Internet Access to Records Management System. This Standard also includes a model Subscriber Agreement For Internet Access to Circuit Court Documents.

JA69. On its face, this stipulation says nothing about OCRA or the Dissemination Restriction, or whether clerks are required to use the "model agreement." But the contents of Standard SEC503-02.2 itself, which this Court should judicially notice, Conditional RJN, Exh. 2, are more illuminating. They show that while SEC503-02.2 sets forth standards for restricted remote access to documents on court-controlled websites under several Virginia statutes, its focus is on secure remote access to ***land records*** pursuant to ***Virginia Code § 17.1-294***. Similarly, the

[10] While sovereign immunity can be raised for the first time on appeal, *Lytle v. Griffith*, 240 F.3d 404, 408 (4th Cir. 2001), Hade asserts a new argument ***about*** immunity requiring factual development – review of VITA Standard SEC503-02.2. In this context, the ordinary waiver rules should apply. "'The matter of what questions may be taken up and resolved for the first time on appeal is one left to the discretion of the courts of appeals … we exercise that discretion sparingly." *In re Under Seal*, 749 F.3d 276, 285-86 (4th Cir. 2014) (reasons include "'respect for [integrity of the] lower court, [avoiding] unfair surprise to the other party'" and ensuring "the parties develop the necessary evidence below").

"example" subscriber agreement it contains (what Hade calls the "model") cites to ***§ 17.1-294,*** indicating it is for ***land records***. And ***neither the standards nor the example agreement say anything about the Dissemination Restriction***.[11]

Hade fails to mention any of this. He also overlooks that the preface to SEC503-02.2 says it was "***developed in consultation with the …. Executive Secretary of the Supreme Court***" – Karl Hade. Perhaps discovery will show VITA model language was included in the OCRA Subscriber Agreements, JA262, JA354, but nothing in the Joint Stipulations contradicts the Complaint's allegations.

### 3. ***Hade I* is Not Necessary to Affirm But is Relevant**

In his motion to dismiss, Hade did not even mention *Hade I*. JA112-142. On appeal, Hade says Judge Jones "should not have relied" on Judge Hudson's "finding that Hade had a special relationship with a different provision of the statute at issue – the Access Restriction – to determine Hade's relationship to enforcement of the Dissemination Restriction." Doc. 40 at 5; *see id*. at 19.

Hade misstates both rulings. Judge Hudson's "special relationship" finding and sovereign immunity ruling were not limited to the Access Restriction but also applied to the Dissemination Restriction. *Hade I*, 580 F. Supp. 3d at 292

[11] VITA Standard SEC503-03 has since replaced SEC503-02.2. Conditional RJN Exh. 1. They are similar and all statements about version 02.2 apply equally to 03. Both are also public records and "when a court considers relevant facts from the public record at the pleading stage, the court must construe such facts in the light most favorable to the plaintiffs." *Zak v. Chelsea Therapeutics Int'l*, 780 F.3d 597, 607 (4th Cir. 2015).

(discussing "two important statutory limitation"), 294 ("Hade argues that he has no special relation to the challenged ***statutes*** here and never acted or threatened to enforce ***them***."). And Judge Jones' ruling did not "rely" on *Hade I*. While noting Hade "made the same argument" in *Hade I*, he conducted his own analysis to find the Complaint "plausibly allege[s] that defendant Hade has a special relationship to the Dissemination Restriction." JA8. If *Hade I* did not exist, the result would be the same. The emails that are the subject of the RJN and MLA confirm Hade not only belongs in this case, but that discovery will likely show he is central to it.

Hade also minimizes the evidence before Judge Hudson, noting the "warning on the [OCRA] log-in screen that requires a bar number to use." Doc. 40 at 19. In fact, Judge Hudson's focus was on the log-in screen language that OCRA is "solely for the use of authorized Officer of the Court personnel …. All other use is expressly prohibited," *Hade I*, 580 F. Supp at 295, also alleged here (JA50, JA71; *see* JA305, JA312 (RJN)). At the pleading stage, this plausibly goes to ***both*** restrictions, which Judge Hudson referred to as separate "statutes," *id.* at 294, but are, in fact, related subparts of the same statutory scheme.

## B. <u>The Complaint Plausibly Alleges Enforcement by the Clerks</u>

Although "sovereign immunity is a 'threshold … issue,'" *Albert v. Lierman*, 152 F.4th 554, 564 (4th Cir. 2025), Appellant Clerks address it last, which indicates what they think about their argument. Unable to dispute their special relation to

the Dissemination Restriction, they do not even try. Doc. 41 at 49. Instead, they claim the Complaint does not adequately allege they "acted or threatened" to "enforce" it. *McBurney*, 616 F.3d at 402. At bottom, they, like Hade, contend *McBurney* and *Ex parte Young* require something they do not.

On its face, Appellants' argument seems absurd.[12] The Complaint alleges, and their own documents confirm, all three enforce the Restriction by including a stricter version in Subscriber Agreements that allows them to revoke OCRA access and terminate agreements for violations. JA47-48, JA82-83 ¶¶ 8(e), 15(b); JA88-90 ¶¶ 6(e), 14; JA 96-98 ¶¶ 6(e), 14. "[P]otential OCRA users ***must*** submit a … notarized OCRA Subscriber Agreement … for each individual circuit court for which they wish OCRA access." JA47. The Complaint alleges Lacy is an OCRA user in Richmond and Roanoke, and infers the same for Bristol. JA53, JA55-57. Taking these allegations as true and drawing all reasonable interferences from them, *Doe*, 133 F.4th at 310, the Complaint plausibly alleges "these Clerks, specifically, have … threatened to revoke OCRA access of" any OCRA users who violate the Dissemination Restriction, ***including*** Lacy. *Cf* Doc. 41 at 45, 48.[13]

---

[12] As only Appellant Clerks raised standing and the merits, references here and in Sections II-III to "Appellants" are to the Appellant Clerks unless otherwise noted.

[13] Appellants take issue with the Complaint for not "attach[ing] any subscription agreement between Mr. Lacy and the Clerks." Doc. 41 at 48. But the Complaint need not ***prove*** Lacy was a subscriber, just plausibly allege it.

Appellants claim this is insufficient for "fail[ing] to allege that these Clerks, specifically, have … revoked [OCRA] access of any person in the past." *Id.* at 48. But "'[f]or the *Ex parte Young* exception to apply,'" they only need "'some connection with the enforcement or implementation of the challenged statute.'" *S.C. Elec. & Gas Co. v. Randall*, 331 F. Supp. 3d 485, 498 (D.S.C. 2018). "'There need not be an enforcement proceeding.'" *Id.* (quoting *McDaniel v. Precythe*, 897 F.3d 946, 952 (8th Cir. 2018)). "So long as a state official is giving effect to a state statute in a manner that allegedly injures a plaintiff and violates his constitutional rights, an action to enjoin implementation of the statute or for declaratory relief is available against the state official." *McDaniel*, 897 F.3d at 952.

Appellants do not dispute OCRA and their Subscriber Agreements give them "enforcement authority." *Doyle*, 1 F.4th at 255. And the requirement that they "'threaten and [be] about to commence proceedings,'" *id.*, "is 'satisfied when a state officer's enforcement of an allegedly unconstitutional state law is threatened, even if the threat is not yet imminent." *Id*. This "Court has repeatedly rejected … claims that the *Ex parte Young* doctrine contains its own imminency requirement. Rather, '[t]he requirement that the violation of federal law be ongoing is satisfied when a state officer's enforcement of an allegedly unconstitutional state law is threatened, *even if the threat is not yet imminent*.'" *King v. Youngkin*, 122 F.4th 539, 544-45 (4th Cir. 2024) (quoting *McBurney*, 616 F.3d at 399).

## II. AS THE SUPREME COURT RECENTLY CONFIRMED, THE COURT BELOW CORRECTLY HELD CNS AND LEE PLAUSIBLY ALLEGED STANDING UNDER CONTROLLING PRECEDENT

"The Supreme Court … has explained that ***standing requirements*** are somewhat ***relaxed in First Amendment cases***." *Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013); *Menders v. Loudoun Cnty. Sch. Bd.*, 65 F.4th 157, 164 (4th Cir. 2023) ("Establishing standing in First Amendment claims alleging the chilling of free speech … is ***not that demanding***."); *Edgar v. Haines*, 2 F.4th 298, 310 (4th Cir. 2021) (standing "requirements are … 'somewhat relaxed in First Amendment cases,' given that even the *risk* of punishment could 'chill[ ]' speech").

Appellants overlook this mandate and ask the Court to do the opposite by tightening standing in First Amendment cases. Appellants argue the media lack an injury in fact unless their right to gather news has been completely extinguished. Doc. 41 at 38. Appellants' new theory fares no better than those rejected below.

Although the Complaint alleges facts showing that, in Appellants' words, CNS and Lee were "unable to hear the speech at issue," *id.* – i.e., unable to gather the news they sought "at all," JA50-57 – Appellants turn a deaf ear. They contend the theoretical availability of complaints, even at remote courts, eliminates any possible newsgathering injury. "This argument misapprehends the Article III standing injury. … "The question before us isn't how badly the [Dissemination Restriction] has burdened [Plaintiff's newsgathering] rights; the question is

whether [it] has burdened those rights at all." *First Choice*, 608 U.S. at 197.

As *Overbey* held – a case Appellants tellingly omit – the media's rights are burdened, and they have standing, where a restriction "has interfered with [their] right to receive newsworthy information from willing speakers," even where they could "use public records to obtain information." 930 F.3d at 228-29.

Appellants also misunderstand willing speaker standing. If a willing speaker is even required in media cases, *see* subsection C below, the injury for which the speaker provides standing is "derivative," Doc. 41 at 42, only to the extent a court must ultimately find the restriction on the speaker is invalid. "Success ***on the merits*** for the news agencies is entirely derivative of the rights of the [willing speaker] to speak." *In re Dow Jones & Co.*, 842 F.2d 603, 608 (2d Cir. 1988).

**A. CNS and Lee Have Been Injured by the Dissemination Restriction, Which Impedes, and Often Precludes, Newsgathering About New Cases**

Standing has "three elements: 'injury in fact, causation, and redressability.'" *First Choice*, 608 U.S. at 183. As "'First Amendment cases raise unique standing considerations that tilt dramatically toward a finding of standing,'" the "'Supreme Court has dispensed with rigid standing requirements.'" *Cooksey*, 721 F.3d at 235. It is particularly "forgiving" at the pleading stage. *Overbey*, 930 F.3d at 230.

In willing speaker cases, "[t]he crux of this issue is whether the [media] has alleged an injury in fact" – "'invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical.'" *Id*. at

217. The "leniency of First Amendment standing manifests itself most commonly in the doctrine's first element: injury-in-fact." *Cooksey*, 721 F.3d at 235. "The legally protected interest at stake here is the … right to gather news," *Overbey*, 930 F.3d at 227, so CNS and Lee need only "plausibly allege[]" their "legally protected interest in newsgathering has, at some point, been invaded." *Id.* at 229.

Appellants nonetheless assert CNS' and Lee's right to gather news is not injured if they can theoretically "access the court records." Doc. 41 at 40-41. They cite ***no authority*** for this constricted view of standing,[14] which conflicts with precedent and which the Supreme Court repudiated this year.

Because "***any inhibitions*** against news coverage … carry a heavy presumption of an unconstitutional prior restraint," *Journal Pub. Co. v. Mechem*, 801 F.2d 1233, 1236 (10th Cir. 1986), courts have long held the press "alleged an injury in fact" where a restriction "***impeded*** its ability to gather news." *Id.* at 1235; *United States v. Wecht*, 484 F.3d 194, 202-03 (3d Cir. 2007) ("media outlets have 'standing …' as long as they can demonstrate that the [restriction] ***is an obstacle to their attempt to obtain access***").

This broad view of newsgathering injury goes back even further in this Circuit. In 1977, the Court found media plaintiffs had standing to challenge a gag

[14] They cite only *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32-34 (1984), Doc. 41 at 41, which (1) did not address standing and (2) applies only to "limiting disclosure … of pretrial discovery," not information in public court records. *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 252 (4th Cir. 1988).

order – that did ***not*** include matters of public record – because “the relationship between the district court’s order and the plaintiffs’ ***difficulties in seeking to perform their reportorial functions***” was “not … wholly speculative.” *Cent. S.C. Chapter, Soc’y of Prof. Journalists v. Martin*, 556 F.2d 706, 708 (4th Cir. 1977).

Since then, media standing has often been assumed without discussion ***even where the media could obtain the information another way***. *In re Baltimore Sun Co.*, 841 F.2d 74, 76 (4th Cir. 1988) (ordering disclosure where “it may well be true, and probably is, that the *Sun* was not diligent in its duty to get the names of the people on the venire list in the *voir dire* proceedings … open to the public”).

In willing speaker cases, this Court has found media standing where the restriction did “not prohibit the press from publishing news articles about the case” based on public records and interviews. *United States v. Blankenship*, 79 F. Supp. 3d 613, 619 (S.D. W. Va.), *vacated sub nom. In re Wall St. J.*, 601 F. App’x 215 (4th Cir. 2015). And it rejected the argument that media “suffer[] nothing more than a mild inconvenience in its reporting” from a “‘gag’” on sources where they “can, and do[], use public records to obtain information” to report. *Overbey*, 930 F.3d at 228-29. “[T]he mere fact that a significant amount of information about most claimants’ lawsuits is available in the public record does not mean that some claimants’ refusal to talk … could not have a ***significant and deleterious effect on***

***the [media's] reporting***." *Id.*[15]

Astonishingly, Appellants claim the Dissemination Restriction does not injure CNS' and Lee's right to gather news because they "can and do obtain [complaints] already at Virginia's courthouses." Doc. 41 at 41. The whole reason for this lawsuit is that they cannot. "The 112 Virginia circuit courts on OCRA cover an area of over 30,000 square miles," which renders it "impossible" for reporters to reach most courts. JA 51. CNS and Lee have "been forced to forego coverage of newsworthy cases in remote courts," JA52, due to the Dissemination Restriction, JA41-45, JA51-52, JA56-56, and closer courts, as well. JA42, JA53.

In the end, Appellants' analogy that "Plaintiffs cannot claim an injury to their right to listen to speech that they already 'listen' to," Doc. 41 at 41, fails because the Dissemination Restriction often prevents them from listening "at all." JA44. Nor is it "consistent with our Constitution, which prohibits 'subtle ... interference' with protected liberties no less than it does heavy-handed frontal attack[s].'" *First Choice*, 608 U.S. at 197.

---

[15] Perhaps because the *Overbey* claimants provided information beyond the public record, Appellants assert CNS and Lee only seek "to receive the bare record[s]" from Lacy, not obtain his input about them. Doc. 41 at 38. But they misread the Complaint, which alleges CNS and Lee often sought his thoughts – "to summarize … key allegations" in, or information about, new filings – which the Dissemination Restriction does not allow. JA55-57; JA33, JA52-54.

### B. CNS and Lee Alleged Its Own Newsgathering Standing and Injury to a Willing Speaker's Rights to Speak from the Dissemination Restriction

All that was required for standing was what the district court correctly found: CNS and Lee have "sufficiently alleged" the Dissemination Restriction "interfere[s] with [their] right to receive newsworthy information from willing speakers." *Overbey*, 930 F.3d at 228-29. That "ongoing" interference with CNS' and Lee's right to gather news is sufficient to establish an injury in fact "that is both traceable to the [Restriction] and redressable by the court." *Id.* at 230.

Appellants contend the court erred because CNS' and Lee's "rights are 'entirely derivative' of a speaker's rights," Doc. 41 at 43 (quoting *Dow Jones*, 842 F.2d at 608), and, they say, CNS and Lee "disclaimed any rights – and thus any injury – that derived from Mr. Lacy" and "disavowed 'that [their] standing is derivative of' the attorneys with online access." *Id.* at 43-44.

The short answer to this theory is that this Court has already rejected it. As *Overbey* explained, in a willing speaker case by the media, "[t]he legally protected interest at stake here is the [media's] right to gather news." 930 F.3d at 227. "For this reason, we see ***no merit*** in the … argument that the [media] … "'seeks to assert the free speech rights of third parties.'" *Id.* at 227 n.11.[16]

[16] The slightly longer version is that "prudential standing" requires plaintiffs to assert their own rights, not those of "'third parties,'" and willing speaker standing does not violate this rule, *Overbey*, 930 F.3d at 227 n.11, as recipients assert their ***own*** First Amendment "'right to receive'" speech. *Dow Jones*, 842 F.2d at 607.

What Appellants do not realize is that willing speaker claims involve two components: (1) standing, which is not derivative, and (2) the merits, which are. As the district court correctly found, CNS and Lee plausibly alleged both.

### 1. CNS and Lee Allege a Willing Subscriber Would Provide News About Complaints on OCRA but for the Dissemination Restriction

"The "purpose of the 'willing speaker' rule" is to show a restriction "'caused [plaintiffs'] injury in fact and that their injury is likely to be redressed by a favorable decision.'" *Wecht*, 484 F.3d at 202. A willing speaker ensures a ruling vacating the Dissemination Restriction will result in actual relief because, freed from the restriction, the speaker will provide information from OCRA. *Id.*

At the pleading stage, it requires only that CNS and Lee "plausibly alleged" a willing speaker exists. *Overbey*, 930 F.3d at 228-29. "[A] person qualifies as a willing speaker if she would be willing to provide information on a matter of public significance to the news media but ***chooses not to*** because she does not want to violate [the restraint]." *Id.* at 228 (media have standing "'as long as [they] can demonstrate that an individual subject to the [restraint] ***would speak more freely*** if the [restraint] is lifted or modified'") (quoting *Wecht*, 484 F.3d at 203).

As the district court found, CNS and Lee alleged that "on several occasions" Lacy declined to provide information from OCRA records because "the Dissemination Restriction prevents him from doing so." JA12.

They also alleged the harm to their newsgathering is "ongoing or imminent."

*Overbey*, 930 F.3d at 230. They allege the "inability of news outlets" to obtain information from OCRA subscribers about new cases in distant courts precludes or at least "greatly restricts their ability to cover local news in remote areas, creating news deserts – i.e., communities in which there is no "'access to reporting on court proceedings of local importance.'" JA51-52. And they allege the Dissemination Restriction "curtails Plaintiffs' ability to report on pleadings filed in courts close to their newsrooms" because, among other things, "[p]leadings submitted in the late afternoon may be filed without sufficient time for Plaintiffs' reporters to go to the courthouse and copy each newsworthy complaint or pleading." JA53-57.

These allegations are more extensive than the lone "general" allegation in *Overbey*, 930 F.3d at 230. But *Overbey* held that alone "sufficiently pleaded an ongoing or imminent injury in fact that is both traceable to the [restriction] and redressable by the court" because, "when we evaluate standing based on the pleadings … we presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Id*. Nothing more is required. *See id.*

**2. Willing Speaker Cases Are "Derivative" Only in That Restrictions on Speakers Must be Unconstitutional, Which CNS and Lee Allege**

Appellants nonetheless contend CNS and Lee "lack standing" because their rights are "derivative" of the speaker's so they must allege "their willing speaker's rights to speak have been injured," and they somehow think CNS and Lee failed to do so. Doc. 41 at 43 (quoting *Dow Jones*, 842 F.2d at 608).

But when *Dow Jones* spoke of the "derivative" nature of a willing speaker case, it had ***already*** "h[e]ld that the news agencies have standing as recipients of speech," and had turned to "considering the merits." 842 F.3d at 608; *Stockton v. Brown*, 152 F.4th 1124, 1147 (9th Cir. 2025) (success on merits in willing speaker cases "depends on there actually being an injury to [the speaker's] right to speak").

The merits of whether the Dissemination Restriction injured Lacy is ***not*** part of the standing analysis. "'[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal.'" *Overbey*, 930 F.3d at 229 n.14. Indeed, "[w]hen assessing whether a plaintiff possesses Article III standing to sue, a court 'accept[s] as valid the merits of [the plaintiff's] legal claims.'" *Laufer v. Naranda Hotels, LLC*, 60 F.4th 156, 161 (4th Cir. 2023).

Appellants also err in asserting CNS and Lee did not allege "any injury" to willing speaker Lacy. Doc. 41 at 44. CNS and Lee allege Lacy repeatedly censored himself, declining to provide CNS and Lee copies of, or information from, records obtained via OCRA he would have provided but for the Restriction. JA42, JA53-57.[17] And, as the district court held, they plausibly alleged the

[17] As far as CNS and Lee are aware, no court has held plaintiffs must also show the speaker himself has standing, no doubt because someone who "qualifies as a willing speaker," *Overbey*, 930 F.3d at 228, has standing virtually by definition. The other phrase to describe "a willing speaker who, ***but for the restriction***, ***would convey information***," *American Civil Liberties Union v. Holder*, 673 F.3d 245, 255 (4th Cir. 2011), is "self-censorship." And, as this Court has held, "[s]uch self-censorship is enough 'for an injury-in-fact to lie.'" *Edgar*, 2 F.4th at 310.

Restriction "is a prior restraint that would not survive strict scrutiny" and thus unconstitutional. JA741. But that is a matter for the merits, not standing.

### C. Media Newsgathering Standing Does Not Require a Willing Speaker

Even if Appellants' contentions could sow doubts about the ruling below, the Court should affirm because "many circuits have found ***media standing*** to challenge confidentiality orders ***without expressly finding the existence of a willing speaker***." *Davis v. E. Baton Rouge Par. Sch. Bd.*, 78 F.3d 920, 927 (5th Cir. 1996). Those courts held the "'[a]lleged violations'" of a "journalist's right to gather news" are "'cognizable injuries-in-fact sufficient to establish standing'" without more. *8fig, Inc. v. Stepup Funny, LLC*, 135 F.4th 285, 292-93 (5th Cir. 2025); *Mechem*, 801 F.2d at 1235. So should this Court. *Tederick v. LoanCare, LLC*, 168 F.4th 154, 162-63 (4th Cir. 2026) ("we can affirm … on alternative grounds appearing in the record").

The first cases recognizing the "now well established [rule] that the Constitution protects the right to receive information and ideas" rested on the fundamental principle that "'freedom (of speech and press) … necessarily protects the right to receive.'" *Stanley v. Georgia*, 394 U.S. 557, 564 (1969). These cases did not mention or require a willing speaker. The "right to receive information and ideas" – without more – was sufficiently "fundamental to our free society." *Id.*

The willing speaker rule first appeared in a commercial speech case, *Va. St.*

*Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748 (1976), which did not implicate "news agencies … standing by virtue of their independent First Amendment right to gather the news." *Davis*, 78 F.3d at 926-27. Since then, courts – including this Court – have recognized media standing in these cases rests on ***two*** injuries: "their right under the First Amendment to gather news … and to receive speech from willing speakers." *Wall St. J.*, 601 F. App'x at 218.

Of course, standing only requires a single injury. *First Choice*, 608 U.S. at 197. Several courts – again including this Court – have declined "to decide whether the news media's interest in newsgathering can be invaded when no willing speaker exists." *Overbey*, 930 F.3d at 229 n.13;[18] *Davis*, 78 F.3d at 927. They found standing even absent an identified speaker because "[i]t is hard … to imagine that there are no willing speakers. Without them there would be no need for [the restriction]; it would be superfluous." *Dow Jones*, 842 F.2d at 607-08.

Other courts found the media "alleged an injury in fact" solely because a restriction "impeded [their] ability to gather news." *Mechem*, 801 F.2d at 1235; *United States v. Aldawsari*, 683 F.3d 660, 664-65 (5th Cir. 2012) (journalist argued

---

[18] *Smith* also did not decide this issue. It did not cite *Overbey* or any media case, did not note *Overbey* left the question open and assumed the willing speaker standard from a non-media case (*Stephens v. Cnty. of Albemarle*, 524 F.3d 485 (4th Cir. 2008)) applied. It is axiomatic that "where we 'assum[e] without deciding the validity of antecedent propositions' those assumptions 'are not binding in future cases that directly raise the questions.'" *Payne v. Taslimi*, 998 F.3d 648, 654 (4th Cir. 2021) (quoting *United States v. Norman*, 935 F.3d 232, 241 (4th Cir. 2019)).

he "does not have to prove the existence of a particular willing speaker," and court "agree[d] … the gag order affected his right to gather news"); *CBS Inc. v. Young*, 522 F.2d 234 (6th Cir. 1975); *E.W. Smith Pub. Co. v. Town of New Windsor*, 386 F. Supp. 2d 374, 377 (S.D.N.Y. 2005) (although "[t]ypically, a plaintiff must establish there are willing speakers," in media case "restraint on potential speech is sufficient"), *modified*, 2005 WL 8179308 (S.D.N.Y. Oct. 4, 2005); *State Farm Fire & Cas. Co. v. Hood*, 266 F.R.D. 135, 142 (S.D. Miss. 2010) (media "not required to find a willing speaker to establish standing"); *Conn. Mag. v. Moraghan*, 676 F. Supp. 38, 40 (D. Conn. 1987) (press "has standing to challenge a gag order that impinges on its independent right to gather news").

Like *Overbey*, this Court need not decide the issue. In the words the Supreme Court used to strike down another Virginia statute, "a [willing] speaker exists" where, "[i]n the absence of [the Commonwealth's restriction] some [OCRA subscriber] in Virginia would [provide] information regarding [records on OCRA]." *Va. St. Bd. of Pharmacy*, 425 U.S. at 756 & n.14. As the district court held, CNS and Lee plausibly alleged such a speaker. If there is any doubt, the Court should affirm on the ground of "a 'media exception' to the willing speaker requirement." *Price v. Saugerties Cent. Sch. Dist.*, 305 F. App'x 715, 717 (2d Cir. 2009) (citing *Davis*, 78 F.3d at 927).

## III. BY FORBIDDING SPEECH ABOUT PUBLIC COURT RECORDS, THE DISSEMINATION RESTRICTION IS A PRIOR RESTRAINT AND MUST SATISFY THE FIRST AMENDMENT EVEN IF NOT

Appellants tie themselves into knots trying to argue the Dissemination Restriction is not a prior restraint on the notion it is not a "classic prior restraint." Doc. 41 at 25. But they elevate form over substance. "'Governmental restraint on publishing need not fall into familiar or traditional patterns to be subject to constitutional limitations.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 522 (4th Cir. 2003) ("organized efforts to suppress the distribution of" newspaper by collecting all copies before they "reached the eyes of readers … met the ***classic definition of a prior restraint***"); *Liverman v. City of Petersburg*, 844 F.3d 400, 404, 407 (4th Cir. 2016) (social media policy and "***statute*** … operate[] as a prior restraint").

Moreover, it does not matter because CNS' and Lee's First Amendment newsgathering claim survives regardless. *Soderberg*, 999 F.3d at 964-68 & n.3; *Stanton v. Elliott*, 25 F.4th 227, 237 (4th Cir. 2022) (reversing dismissal for not properly pleading legal theory because "complaints do not have to be so precise").

### A. A Restriction Prohibiting and Punishing Speech While Impeding Newsgathering Must Satisfy the Constitution for Any of Those Reasons

CNS and Lee alleged, and the district court held, the "Dissemination Restriction constitutes a prior restraint." JA15. But as in many First Amendment contexts, "[t]he label is not what matters." *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010) (focusing on "plaintiffs' claim and the relief that would follow"), and

its designation "'[i]s not dispositive.'" *Soderberg*, 999 F.3d at 968 n.3.

### 1. Either Prohibiting or Punishing Speech is Subject to Strict Scrutiny

This Court could not have been clearer that it does not matter if a law like OCRA, which "prohibits and punishes" speech, is analyzed "'as a prior restraint,'" *Soderberg*, 999 F.3d at 964, 968 n.3 (quoting *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 101(1979), or as "'impos[ing] sanctions on the publication of truthful information" from "'court records.'" *Id.* at 967 (quoting *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 495 (1975)). Both require strict scrutiny. *Id.* at 968 n.3.

That conclusion was mandated by *Daily Mail*, in which the West Virginia court treated "as a prior restraint" a statute that prohibited publishing the name of alleged juvenile offenders without court approval and punished violations as a misdemeanor. 443 U.S. at 98-100. Although "not in the classic mold of prior restraint," the state did "not dispute that the statute amounts to a prior restraint." *Id.* at 101. The Supreme Court held it "need not decide whether … it operated as a prior restraint" because "even when a state attempts to punish publication" it must satisfy the "exacting scrutiny" accorded prior restraints. *Id.* at 101-02.[19]

---

[19] *Soderberg* and *Daily Mail* did not involve "a subsequent punishment claim." Doc. 41 at 37. They involved laws that "prohibit[] and punish[]" protected speech. *Soderberg*, 999 F.3d at 964. The "subsequent punishment" rule does not apply here because it is limited to laws that "punish speech or expression ***only after it has** … **been found unlawful***." *Alexander v. United States*, 509 U.S. 544, 566 (1993) (Kennedy, J., dissenting). Those laws – like RICO in *Alexander* – only target speech "***of unprotected character***." *Id.* at 560 (Souter, J., concurring)

Appellants attempt to distinguish *Daily Mail* and *Soderberg* as involving statutes that "restrained the speech of the plaintiff news media and criminalized publication of public information." Doc. 41 at 36 & n.1. But *Soderberg* did not entail "criminal contempt," *id.*,[20] and both relied on *Cox Broad.*, which involved "civil liability." 420 U.S. at 497. Prior restraints against non-media that may be enforced via "civil contempt" are no less "subject to strict scrutiny," *Doe by & through Next Friend Doe v. Mast*, 173 F.4th 524, 530-32 (4th Cir. 2026); *In re Murphy Brown, LLC*, 907 F.3d 788, 787 (4th Cir. 2018), including on challenges by the media. *Wall St. J.*, 601 F. App'x at 218-19 (citing, e.g., *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 562 (1976)); *CBS*, 522 F.2d at 238.[21]

**2. The Complaint Does Not Depend on the Label Given the Restriction**

Appellants' entire theory – that if "the Dissemination Restriction is not a prior restraint, the Complaint fails and should be dismissed," Doc. 41 at 20-21 –

[20] *Soderberg v. Pierson*, 2020 WL 206619, *6 (D. Md. Jan. 14, 2020) ("civil-contempt proceedings"), *vacated sub nom. by Soderberg*, 999 F.3d at 964.

[21] *Dow Jones* conceded the conclusion Appellants cite – that a gag order was not a prior restraint, Doc. 41 at 28, if the media "cannot be haled into court for violating its terms," 842 F.2d at 608 – was at odds with *CBS*, a civil case it did not follow because criminal defendants had "requested the order and urge[d] its affirmance." *Id.* at 609. But the media ***can*** and have been haled into court to identify who violated a gag order and held in contempt for refusing, *In re Willon*, 47 Cal. App. 4th 1080 (1996), and the Dissemination Restriction is not limited to or requested by counsel in criminal cases. This Court vacated a gag order in *Blankenship*, 79 F. Supp. 3d at 619-20, that declined to follow *CBS*. *Wall St. J.*, 601 F. App'x at 218. And even if the Restriction "is not a prior restraint, its effect on the news agencies' First Amendment rights must still be justified" by an "important governmental interest or countervailing individual right." *Davis*, 78 F.3d at 928-30.

has not been the law for 90 years. "The Federal Rules of Civil Procedure 'do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.'" *Stanton*, 25 F.4th at 237-38 (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam) ("summarily revers[ing]" dismissal based "on a punctiliously stated 'theory of the pleadings'" test).

Before the Federal Rules' adoption in 1938, common law and code pleading "adhered to the 'theory of the pleadings' doctrine." 5 Wright & Miller, *Fed. Prac. & Proc.* § 1219. That is the doctrine on which Appellants rely, as it – like their claim – requires "'that a complaint must proceed upon some definite theory, and on that theory the plaintiff must succeed, or not succeed at all.'" *Id.*

But "'[t]he federal rules effectively abolish[ed] the restrictive theory of the pleadings doctrine, making it clear that it is unnecessary to set out a legal theory for the plaintiff's claim for relief.'" *Johnson*, 574 U.S. at 12. "'[T]o avoid civil cases turning on technicalities,'" *id.*, "pleading rules" now call only "for 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id*. at 11 (quoting Fed. R. Civ. P. 8(a)(2)). "Plaintiffs need not put a claim under a special heading, quote the statute, or use magic words to make out a claim. Courts should focus on the substance of the allegations to avoid making pleading a formalistic headache." *Stanton*, 25 F.4th at 238.

Appellants' authorities prove the point. A complaint need only provide fair "'notice to the defendant of the allegations to be proven.'" *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 400-01 (4th Cir. 1999) (federal "constitutional claims … failed … to give the defendants fair notice that they might be facing a [state-law] conversion claim"). "Fair notice does not require specific or detailed factual allegations, but it does require some factual allegations that would allow a reasonable inference of both the claim and the ground for relief." *Papania v. United States*, 715 F. Supp. 3d 789, 801-02 (E.D. Va. 2024) (complaint did "not contain sufficient allegations to put the defendant on notice of medical negligence claim" where it did "not include *any* facts outlining the care he received").

The Complaint here is chock-a-block full of factual allegations showing the Dissemination Restriction prevented an OCRA subscriber from providing CNS and Lee copies of or information about public court records lawfully obtained from OCRA and authorizes punishment for violations. JA 31, JA49 & n.1. It alleges the Restriction thus violates the First Amendment, JA57 (quoting *Soderberg*), and hence violates CNS' and Lee's First Amendment right to gather news. JA49.

Appellants do not argue the Complaint fails to provide fair notice that the First Amendment claim could proceed even if a court agreed with Appellants that the Restriction only "operates as a 'penal sanction'" under *Soderberg*, Doc. 41 at 27 (quoting 999 F.3d at 964), because it "punish[es] speech *after* it occurs." *Id.* at

23, 32. Nor do they lack notice the Restriction must survive constitutional scrutiny even if treated as a time, place or manner regulation, as in the vacated *Hade II*, 631 F. Supp. 3d at 968; JA32; *see Hade I*, 580 F. Supp. 3d at 296 (denying motion to dismiss after finding Restrictions subject to "relaxed scrutiny").

Appellants thus err in asserting the Complaint must be dismissed if the Dissemination Restriction is not a prior restraint. *Mayhew v. Town of Smyrna*, 856 F.3d 456, 461, 466 (6th Cir. 2017) (plaintiff alleged single "First Amendment retaliation claim" that failed as to report of misconduct, but Sixth Circuit reversed dismissal because allegations "put defendants on notice of a First Amendment claim … that plaintiff was retaliated against for complaining about the city's hiring practices"); *Overbey*, 930 F.3d at 221-22, 227-28 (reversing dismissal of First Amendment claim alleging restraint on sources was a "'gag order'"– a prior restraint – but finding provision an unenforceable waiver of constitutional rights). Even if the Restriction "lacks the requisite features of prior restraints," Doc. 41 at 21, that "is not to say that [it] need not be justified." *Dow Jones*, 842 F.2d at 609.

**B. As a Bar on Speech, the Dissemination Restriction is a Prior Restraint**

Appellants do not explain how the Dissemination Restriction could be read "not [to] prohibit[s] speech *before* it occurs." Doc. 41 at 21. It bans "any" information in records obtained on OCRA from "be[ing] sold or posted on any other website or ***in any way redistributed to any third party***" that could be "made

available to the general public." Va. Code § 17.1-293(H). It is similar to gag orders that also restrain statements that could "'be communicated to a public communications media." *Murphy-Brown*, 907 F.3d at 792-93. Such "gag orders are prior restraints" because they "'actually forbid speech activities.'" *Id.* at 797; *Liverman*, 844 F.3d at 404-07 (social media policy against "dissemination of any information" critical of police and city "operates as a prior restraint").

Because the Dissemination Restriction plainly does "prevent … speech from occurring in the first place," Doc. 41 at 31, Appellants try to limit prior restraints to certain "historical[]" categories, *id.* at 24, but overlook not only that the Restriction falls into at least two such categories but that "[p]rior restraints can exist in many forms." *Ostergren v. Frick*, 856 F. App'x 562, 568 (6th Cir. 2021). "A prior restraint is generally any governmental action that would prevent a communication from reaching the public." *United States v. Dinwiddie*, 885 F. Supp. 1286, 1298 (W.D. Mo. 1995), *aff'd and remanded*, 76 F.3d 913 (8th Cir. 1996).

**1. Appellants' Subscriber Agreements Impose a Prior Restraint**

Appellants claim prior restraints are limited "to two kinds of regulations: the statutory licensing of speech, and court "gag orders" of certain court proceedings," Doc. 41 at 24-25, but later add "statutes that specifically authorize injunctive orders against publications." *Id.* at 29. Their view that prior restraints are confined to those categories is as outmoded as their restrictive notion of pleading.

“The term ‘prior restraint,’ at common law, referred to a system of unreviewable administrative censorship or licensing. But the concept has ***not been so confined***. … [B]eginning with *Near v. Minnesota*, 283 U.S. 697 (1931), the Supreme Court has extended the meaning of prior restraints to include judicial orders having an impact analogous to administrative censorship.” *In re Halkin*, 598 F.2d 176, 183 (D.C. Cir. 1979). Five years later, it found a ***statute*** levying a tax on newspapers based on circulation was an unconstitutional prior restraint. *Grosjean v. American Press Co*., 297 U.S. 233 (1936). As these cases show, the “First Amendment is a rule of substantive protection, not an artifice of categories.” *Alexander*, 509 U.S. at 565 (Kennedy, J., dissenting). While “[p]rior restraints ***include*** ‘court orders that actually forbid speech activities,’” *In re Sealed Case*, 77 F.4th 815, 829 (D.C. Cir. 2023), they are not so limited. *Novak v. City of Parma*, 932 F.3d 421, 432-33 (6th Cir. 2019) (“formality of these classic cases should be a sufficient condition for prior restraint, not a necessary one”).

Appellants also overlook that the Dissemination Restriction included in their Subscriber Agreements is “an ‘administrative … order[]’ that forbids protected speech in advance.” *Novak*, 932 F.3d at 432-33 (“letter and an email” demanding web “page be taken down” and “press release threatening to prosecute” were administrative restraint because “***in light of our long history of guarding against prior restraints … we should not be overly formalistic in defining what counts as***

***an administrative order***”). Such “***administrative*** … orders’” that “forbid speech activities … are classic examples of prior restraints.” *Alexander*, 509 U.S. at 550.

**2. Governing Precedent Has Often Held Statutes to be Prior Restraints**

Not only do Appellants ignore their administrative restraints, their views about statutory restraints were incorrect even in *Near*’s time and remains so today.

Appellants argue the Dissemination Restriction is not prior restraint on the theory “neither the Supreme Court nor … courts of appeal have ever held that a mere statutory prohibition of speech, alone, constitutes a prior restraint. Instead, a statutory scheme ***only*** becomes a prior restraint if it authorizes ‘enjoining publication’ that subjects the speaker to 'contempt of court by fine or imprisonment.’” Doc. 41 at 31 (quoting *Near*, 283 U.S. at 712).

In *Grosjean*, however, the Supreme Court held a statute that did ***not*** authorize an injunction was a prior restraint. It also unanimously explained that, because “the object of” the First Amendment right of free speech was “to prevent previous restraints on publication … the court [in *Near*] was careful ***not to limit the protection*** of the right ***to any particular way of abridging it***.” 297 U.S. at 249.

Since then, “as recognized by the Fourth Circuit,” it has been clear that “a generally applicable ***statute or regulation***” can “constitute a prior restraint.” *Durstein v. Alexander*, 629 F. Supp. 3d 408, 432 (S.D. W. Va. 2022) (citing *Liverman*, 844 F.3d at 407 (addressing “when generally applicable ***statute*** or

regulation (as opposed to a post-hoc disciplinary action) ***operates as a prior restraint*** on speech" of public employees). Other courts agree. *Young v. Hawaii*, 992 F.3d 765, 827 (9th Cir. 2021) ("'prior restraint' is any law or judicial order that preemptively forbids certain speech before the speech occurs");[22] *Nat'l Fed'n of the Blind of Ar., Inc. v. Pryor*, 258 F.3d 851, 856 (8th Cir. 2001) ("prior restraint is government action forbidding communication before [it] … is to occur"); *Ostergren*, 856 F. App'x at 568 ("prior restraint is any law, administrative order, or judicial order that forbids protected speech in advance"); *Buzdum v. Vill. of Germantown*, 2008 WL 65414, *2 (E.D. Wis. Jan. 3, 2008) ("ordinance is a prior restraint if it restricts expression before it takes place").

In sum, "[a] prior restraint on speech prohibits or censors speech before it can take place," *Smith v. Acevedo*, 2010 WL 11512363, *5 (W.D. Tex. Sept. 20, 2010), *aff'd*, 478 F. App'x 116 (5th Cir. 2012), which the Dissemination Restriction does. It cannot evade strict scrutiny because it was enacted by the legislature. No branch of government is immune from the presumption against prior restraints. *United States v. Berke*, 170 F.3d 882, 886 (9th Cir. 1999) ("[a]lthough most cases involving prior restraints have involved actions by the judicial and legislative branches …, it has been well-established that these standards apply equally to the executive branch") (Wallach, J., dissenting).

---

[22] *Young* was vacated on Second Amendment grounds, 142 S. Ct. 2895 (2022).

### 3. The Restriction is Subject to Strict Scrutiny for Multiple Reasons

The district court found the Dissemination Restriction was subject to strict scrutiny as a prior restraint on OCRA subscribers' speech under *Alexander*, 509 U.S. at 550, because it "prohibit[s] the dissemination of certain information to the public," citing *Soderberg* and Judge Gregory's dissent in *Smith*, 126 F.4th at 925. JA14-15. It did not address CNS and Lee's alternate point that the Restriction is also a prior restraint because it grants Appellants' discretion to revoke or refuse to renew licenses to access OCRA based on subscribers' speech.

Appellants argue the district court erred in citing *Soderberg* and Judge Gregory's dissent, Doc. 41 at 36-38, but misunderstand the import of both. They contend the Court "cannot consider" the unbridled discretion the Restriction grants Appellants to revoke access to public court records on the ground CNS and Lee allegedly did not raise it below, *id.* at 34, but misstate the law and the record.

#### i. As *Soderberg* Held, Strict Scrutiny is Not Limited to Absolute Bans

Although Judges Jones and Gregory explained *Soderberg*'s relevance, Appellants never mention it. Simply put, *Soderberg* explains why *Hade II* "'was wrong to apply intermediate scrutiny, rather than strict scrutiny.'" 999 F.3d at 970.

In *Hade II*, the Commonwealth contended "that because Courthouse News could get this same information a different way and then disseminate it, the Dissemination Restriction is not a form of prior restraint." *Smith*, 126 F.4th at 925

(Gregory, J., dissenting). *Hade II* thus declined to apply strict scrutiny because the information could be redistributed from "records obtained at the courthouse." 631 F. Supp. 3d at 368. But the Fourth Circuit had "already considered and rejected a similar argument." *Smith*, 126 F.4th at 925 (Gregory, J., dissenting).

*Soderberg* involved a ban on disseminating "official court recordings" of criminal proceeding while information about those proceedings could be obtained and redistributed another way, "such as [by] publishing transcripts." 999 F.3d at 966. The Court rejected the argument "that because there was not an 'absolute prohibition[] on the publication of information in any form' and there were 'other means of disseminating the same information,' the broadcasting ban only constituted a time, place, and manner restriction." *Smith*, 126 F.4th at 925 (Gregory, J., dissenting). Because that law prohibited dissemination of information in public court records lawfully obtained, *Soderberg* held the district court "erred in refusing to apply strict scrutiny on the premise … that *Cox Broadcasting* and *Daily Mail* demand such scrutiny only where there is an absolute prohibition on the publication of information in any form." 999 F.3d at 969.

*Hade II* made the same mistake without mentioning or addressing *Soderberg*. The court below correctly cited the *Smith* dissent to explain why "the Dissemination Restriction constitute[s] a prior restraint subject to scrutiny," 126 F.4th at 925 (Gregory, J., dissenting), and *Soderberg*, 999 F.3d at 966-67, for why

"strict scrutiny was the proper standard of review." JA14-15.[23]

**ii. Unbridled Discretion to Revoke Access Also Requires Strict Scrutiny**

Appellants do not dispute OCRA gives them discretion to revoke or refuse to renew a subscriber's use of remote access or that a "statute placing unbridled discretion in the hands of a government official … constitutes a prior restraint." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757 (1988).

Instead, they claim the Court cannot reach this issue on the mistaken theory CNS and Lee did not present it below. Doc. 41 at 34. Not only may "an appellate court … affirm on alternate grounds – including grounds not raised by the parties – where a sufficient basis appears on the record," *In re Wiencko*, 99 F. App'x 466, 469 (4th Cir. 2004), CNS and Lee ***did*** raise it below. JA233, JA237-238, JA245[24]

On the merits, Appellants contend their unbridled discretion is irrelevant, and does not make the Dissemination Restriction a prior restraint, because it "does not require "prior approval of a government … censor" to access OCRA. Doc. 41 at 35 (quoting *Alexander*, 509 U.S. at 553 n.2). But *Lakewood*'s condemnation of

---

[23] Even if *Hade II* applied, it would only change the level of scrutiny from strict to intermediate. 631 F. Supp. 3d at 368. As in *Hade I*, that would not support reversing denial of the motion below, 580 F. Supp. 3d at 295-96, not least because intermediate scrutiny requires "'actual evidence,'" *Billups v. City of Charleston*, 961 F.3d 673, 688 (4th Cir. 2020) (quoting *Reynolds v. Middleton*, 779 F.3d 222, 299 (4th Cir. 2015)), which Appellants could not present on a motion to dismiss.

[24] The Complaint cites Appellants' "'discretion'" to deny OCRA access and ability to "punish[]" violations to support treating the Dissemination Restriction as a prior restraint, JA47-49, JA57, which satisfies Rule 8(a). *Mayhew*, 856 F.3d at 466.

"unbridled discretion" as a prior restraint applies equally "to the nonrenewal or revocation of … licenses." *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1075 (6th Cir. 1994).

An ordinance like OCRA that allows "discretion" to "revoke[]" permission for First Amendment activity "is clearly invalid as a prior restraint." *Kunz v. People*, 340 U.S. 290, 293 (1951); *Amandola v. Town of Babylon*, 251 F.3d 339, 344 (2d Cir. 2001) ("unfettered discretion" resulting in "revocation of plaintiffs' permit … violated plaintiffs' First Amendment right").[25] OCRA also "requires" subscribers "apply annually" to "renew" their license to access OCRA, *Lakewood*, 486 U.S. at 759, and a "periodic licensing requirement is sufficiently threatening to invite judicial concern." *Id.* at 760; *Van Wagner Bos., LLC v. Davey*, 770 F.3d 33, 39 (1st Cir. 2014) ("standardless renewal provisions give rise to a well-founded fear that speakers may feel pressure to self-censor").[26]

---

[25] First Amendment-protected activity includes contemporaneous access to civil complaints. *Courthouse News Serv. v. Schaefer*, 2 F.4th 318 (4th Cir. 2021).

[26] Appellants do not contend the "professional conduct" doctrine applies, Doc 41 at 22, for good reason. The Clerks did not raise it below, Hade only raised it on reply and it is waived either way. *Under Seal*, 749 F.3d at 285; *Hunt v. Nuth*, 57 F.3d 1327, 1338 (4th Cir. 1995). And the Dissemination Restriction falls "outside the context of 'professional conduct'" because it regulates "'speech as speech'" and "'applie[s] to all interactions" between an OCRA subscriber and anyone – not just between counsel and clients – who might dissemination that information, "regardless of whether [legal advice] [was] ever sought, offered, or performed.'" *360 Virtual Drone Servs. v. Ritter*, 102 F.4th 263, 271-72, 278 (4th Cir. 2024)).

### 4. Cases Involving Nonpublic Information Cannot Aid Appellants

Appellants' remaining arguments fail because they require the Court to treat the public civil court filings on OCRA as "nonpublic information." Doc. 41 at 28.

First, Appellants assert the Dissemination Restriction should not be treated as a prior restraint pursuant to *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), which upheld a protective order on dissemination of raw discovery. Doc. 41 at 27.

But the Court should "find [Appellants'] reliance on *Seattle Times* … unpersuasive" because "a protective order limiting disclosure of the products of pretrial discovery" – which is not public – "stands on a wholly different footing than does a … fil[ing] by a party," which is. *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 252 (4th Cir. 1988); *U.S. ex rel. Oberg v. Nelnet, Inc.*, 105 F.4th 161, 171-72 (4th Cir. 2024); *Springs v. Ally Fin. Inc.*, 684 F. App'x 336, 337-38 (4th Cir. 2017). As records on ORA are public court records that contain no unfiled private discovery, *Seattle Times* "is inapposite." *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 343 (3d Cir. 1986).[27]

---

[27] Appellants' reliance on a case restricting media access to ***nonpublic*** information (inmates) is also misplaced. Doc. 41 at 28-25 (citing *Pell v. Procunier*, 417 U.S. 817, 834-35 (1974)). In *Pell* and other prison cases, "'the Supreme Court has never flatly held that the press has no First Amendment right to view events inside prison walls; only that such a right is co-extensive with the public's right to the same information.'" *Cal. First Amend. Coal. v. Woodford*, 299 F.3d 868, 874-75 (9th Cir. 2002). In this case, CNS and Lee stand in the same shoes as members of the public, to whom the Dissemination Restriction prohibits those with OCRA access from providing any information from ***public*** records on OCRA.

Appellants' fear that, if the Dissemination Restriction falls, "countless statutes" would be subject to strict scrutiny, Doc. 41 at 11, is also unfounded. The statutes they cite, *id.* at 34, involve records required by law "'to be kept confidential.'" *Doe v. Mast*, 2024 WL 3371122, *13 (W.D. Va. July 10, 2024) (quoting *Nelson v. Middlesex Dep't of Soc. Servs.*, 820 S.E.2d 400, 411 (Va. Ct. App. 2018) (Va. Code § 16.1-305 "***protects the confidentiality***" of "juvenile court records")); Va. Code § 52-48 ("records … or information relative to criminal intelligence or any terrorism investigation … ***shall be confidential***"); Va. Code § 32.1-127.1:03 ("recogniz[ing] … ***right of privacy*** in … health records"); Va. Code § 19.2-389(A) (treating criminal history records as confidential with exceptions).

## CONCLUSION

In upholding the Access Restriction, *Smith* highlighted both the serious harm to the media's First Amendment right to gather news wrought by the Dissemination Restriction and the less restrictive means that render it invalid. Unable to access OCRA, journalists cannot cover new pleadings in remote courts – or nearby courts on deadline – unless they can contact an attorney with OCRA access. Restricting access to attorneys means a simple ban on disseminating PI and "data mining" by those attorneys would be "effective," which in turn means the Dissemination Restriction is not "narrowly tailored." 126 F.4th at 911, 916.

To avoid that, Appellants treat the standards for pleading *Ex parte Young*, standing and a First Amendment claim – and a prior restraint itself – as far more onerous than the law allows. "At this stage of the proceedings," the question is whether Appellants are "a *potentially* proper party for injunctive relief, in which case [they] would be within the scope of the *Ex parte Young* exception." *Reprod. Health Servs. v. Nixon*, 428 F.3d 1139, 1145 (8th Cir. 2005). They clearly are, just as CNS' and Lee's allegations clearly "suffice to establish [their] standing," *Overbey*, 930 F.3d at 226, and assert a First Amendment claim. *Id.*; *Stanton*, 25 F.4th at 237-38; *Soderberg*, 999 F.3d at 968 n.3; *Mayhew*, 856 F.3d at 461.

Plaintiffs-Appellees Courthouse News Service and Lee Enterprises therefore respectfully request that the Court affirm the rulings below in full.

Date: October 21, 2026

Respectfully submitted,

/s/ Dabney J. Carr, IV

Roger Myers
Rachel Matteo-Boehm
**BRYAN CAVE LEIGHTON PAISNER LLP**
3 Embarcadero Center, 7th Floor
San Francisco, California 94111
Tel: (415) 675-3400
Fax: (415) 675-3434
roger.myers@bclplaw.com
rachel.matteo-boehm@bclplaw.com

Dabney J. Carr IV
Lauren H. Miller
**TROUTMAN PEPPER LOCKE LLP**
Post Office Box 1122
Richmond, Virginia 23218
Tel: (804) 697-1200
Fax: (804) 697-1339
dabney.carr@troutman.com
lauren.h.miller@troutman.com

*Counsel for Plaintiffs-Appellees Courthouse News Service,*
*Lee Enterprises, Incorporated and Lee BHM LLC*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g), this document complies with (1) the word limits of Federal Rule of Appellate Procedure 32(a)(7)(B), because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 12,995 words; and (2) the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because this document has been prepared in a proportionally spaced typeface (14 point, Times New Roman font) using Microsoft Word.

*/s/ Dabney J. Carr, IV*
Dabney J. Carr